**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JANE DOE, for herself and the class,<br><br>Plaintiff,<br><br>v.<br><br>THE CHILDREN'S HOSPITAL CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 1: 25-cv-10343-PBS |

**DEFENDANT THE CHILDREN'S HOSPITAL CORPORATION'S MEMORANDUM <u>OF LAW IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT</u>**

Lisa Oliver White, BBO# 666841
**SHOOK, HARDY & BACON L.L.P.**
One Federal Street, Suite 2620
Boston, MA 02110
Tel: (617) 531-1411
lowhite@shb.com

Tammy B. Webb (*pro hac vice forthcoming*)
**SHOOK, HARDY & BACON L.L.P.**
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900
twebb@shb.com

Jad Sheikali (*pro hac vice*)
Tara D. Kennedy (*pro hac vice*)
Avery Epstein (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
111 South Wacker Drive
Chicago, IL 60606
Tel: (312) 704-7700
jsheikali@shb.com
tkennedy@shb.com
aepstein@shb.com

***Attorneys for Defendant***

# TABLE OF CONTENTS


**Page**

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

SUMMARY OF ALLEGATIONS ........ 2

LEGAL STANDARD ........ 3

ARGUMENT ........ 3

I. All Of Plaintiff's Claims Should Be Dismissed Because She Has Not Adequately Alleged That Any Of Her Private Information Was Disclosed. ........ 3

A. Plaintiff's Allegations Regarding the Public Website Do Not Plausibly Implicate PHI. ........ 3

B. Plaintiff's Allegations Regarding the Patient Portal are Wholly Conclusory and Therefore Insufficient to Support Any of Her Claims. ........ 6

II. The Complaint Fails To State A Claim Under The ECPA. ........ 7

A. Plaintiff Has Not Alleged An Unlawful Interception. ........ 7

B. Plaintiff Has Not Plausibly Alleged A Criminal Or Tortious Purpose. ........ 7

1. Plaintiff does not plausibly allege *intent* to commit a crime or tort ........ 8

2. Plaintiff does not plausibly allege an *independent* crime or tort. ........ 10

C. Plaintiff Has Not Alleged That BCH Intercepted "Contents." ........ 11

III. Plaintiff Fails To State A Claim Under The Massachusetts Right To Privacy Law ........ 12

IV. The Complaint Fails To State A Claim For Breach Of Fiduciary Duty. ........ 14

V. The Complaint Fails To State A Claim For Breach Of Confidence. ........ 16

VI. The Complaint Fails To State A Claim For Negligence. ........ 17

VII. The Complaint Fails To State A Claim For Breach Of Contract. ........ 18

VIII. The Unjust Enrichment Claim Fails Because An Adequate Remedy At Law Exists. ........ 20

CONCLUSION ........ 20

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alberts v. Devine*,
479 N.E.2d 113 (Mass. 1985) ....16

*Alves v. BJ's Wholesale Club, Inc*,
2023 WL 4456956 (Mass. Super. June 21, 2023)....13

*Am. Hosp. Ass'n v. Becerra*,
No. 24-10775 (5th Cir. Sept. 4, 2024) ....4

*American Hosp. Ass'n. v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ....1, 4, 5, 13

*Amorim Holding Financeria, S.G.P.S., S.A. v. C.P. Baker & Co.*,
53 F. Supp. 3d 279 (D. Mass. 2014)....14

*ARE-Tech Square, LLC v. Galenea Corp.*,
2017 WL 634771, at *3 (Mass. App. Ct. Feb. 16, 2017)....20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....3

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ....6, 14, 18

*Bailey v. Hosp. of the Univ. of Pa.*,
266 A.3d 654 (Pa. Super. Ct. 2021)....17

*Beauregard v. Meldon*,
2019 WL 6877185 (D. Mass. Dec. 17, 2019)....19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....3

*Boddie v. ABC*,
881 F.2d 267 (6th Cir. 1989) ....8

*Bonewit v. New-Indy Containerboard LLC*,
2024 WL 4932186 (D. Mass. Dec. 2, 2024)....18

*Branyan v. Sw. Airlines Co.*,
105 F. Supp. 3d 120 (D. Mass. 2015)....12

*Brush v. Miami Beach Healthcare Grp. Ltd.*,
238 F. Supp. 3d 1359 (S.D. Fla. 2017) ....20

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)....................8, 10

*Clark v. Zwicker & Assocs., P.C.*,
2024 WL 2025568 (D. Mass. May 7, 2024)....................14

*Doe v. Boston Medical Center Corp.*,
2023 WL 7105628 (Mass. Super. Sep. 14, 2023)....................13

*Doe v. Emerson Hospital*,
2023 WL 8869624 (Mass. Super. Nov. 22, 2023)....................13

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024)....................9, 13

*Doe v. Tenet Healthcare Corp.*,
731 F. Supp. 3d 142 (D. Mass. 2024)....................5, 13

*Doe v. Upperline Health, Inc.*,
2024 WL 4953503 (S.D. Ind. Sept. 24, 2024)....................5

*Doe v. Village Podiatry Grp., LLC*,
2024 WL 5187261 (Ga. Super. Nov. 20, 2024)....................18

*Fernandes v. Havkin*,
731 F. Supp. 2d 103 (D. Mass. 2010)....................20

*Goldstein v. Luxottica of Am., Inc.*,
2021 WL 4093295 (S.D. Fla. Aug. 23, 2021)....................12

*Grocela v. Gen. Hosp. Corp.*,
2012 WL 3205616 (Mass. Super. July 18, 2012)....................17

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. Jul. 1, 2024)....................13

*In re Banner Health Data Breach Litig.*,
2017 WL 6763548 (D. Ariz. Dec. 20, 2017)....................20

*In re Boston Univ. COVID-19 Refund Litig.*,
511 F. Supp. 3d 20 (D. Mass. 2021)....................19

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)....................8

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
806 F.3d 125 (3d Cir. 2015)....................8, 10

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)....................7

*In re Pharmatrak, Inc.*,
329 F.3d 9 (1st Cir. 2003)....................9, 11

*In re Shields Health Care Grp.*,
721 F. Supp. 3d 152 (D. Mass. 2024)....................16, 19

*K.L. v. Legacy Health*,
2024 WL 4794657 (D. Or. Nov. 14, 2024)....................5

*Katz v. Pershing, LLC*,
806 F. Supp. 2d 452 (D. Mass. 2011)....................19

*Katz-Lacabe v. Oracle Am.*,
2023 WL 2838118 (N.D. Cal. Apr. 6, 2023)....................9

*Kelley v. CVS Pharm., Inc.*,
2007 WL 2781163 (Mass. Super. Aug. 24, 2007)....................15, 16

*Koppel v. Moses*,
2020 WL 6292871 (D. Mass. Oct. 27, 2020)....................14

*Korper v. Weinstein*,
783 N.E.2d 877 (Mass. App. Ct. 2003)....................15, 16

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023)....................13

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023)....................9

*Leocal v. Ashcroft*,
543 U.S. 1 (2004)....................11

*Lucas v. Fox News Network, LLC*,
248 F.3d 1180 (11th Cir. 2001)....................9

*Nienaber v. Overlake Hosp. Med. Ctr.*,
2025 WL 692097 (W.D. Wash. Mar. 4, 2025)....................6, 10, 11

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)....................6, 10, 13, 18

*Okash v. Essentia Health*,
2024 WL 1285779 (D. Minn. Mar. 26, 2024)....................10, 13

*One Wheeler Rd. Assocs. v. Foxboro Co.*,
843 F. Supp. 792 (D. Mass. 1994) ....................20

*Pershouse v. L.L. Bean, Inc.*,
368 F. Supp. 3d 185 (D. Mass. 2019) ....................20

*Reidy v. Umass Mem. Med. Ctr., Inc.*,
2021 WL 6777622 (Mass. Super. June 17, 2021)....................18

*Roberts v. Charlotte Mecklenburg Hosp. Auth.*,
Case No. 3:24-cv-00382 (W.D.N.C. Mar. 20, 2025) ....................9

*Rodriguez v. FastMed Urgent Care, P.C.*,
741 F. Supp. 3d 352 (E.D.N.C. 2024)....................9

*Roe No. 1 v. Children's Hosp. Med. Ctr.*,
16 N.E.3d 1044 (Mass. 2014) ....................17

*Shaulis v. Nordstrom, Inc.*,
865 F.3d 1 (1st Cir. 2017)....................20

*Squeri v. Mount Ida Coll.*,
954 F.3d 56 (1st Cir. 2020)....................14

*Sussman v. ABC*,
186 F.3d 1200 (9th Cir. 1999) ....................8

*T.D. v. Piedmont Healthcare, Inc.*,
2024 WL 3972984 (N.D. Ga. Aug. 28, 2024) ....................7, 13, 14, 18

*Tashjian v. CVS Pharm., Inc.*,
2020 WL 1931859 (D. Mass. Mar. 13, 2020)....................16

*United States v. Bowen*,
127 F.3d 9 (1st Cir. 1997)....................11

*United States v. Kovolas*,
1998 WL 452218 (D. Mass. July 27, 1998)....................8

*United States v. McHugh*,
57 F. Supp. 3d 95 (D. Mass. 2014) ....................8, 11

*Williams v. TMC Health*,
2024 WL 4364150 (D. Ariz. Sept. 30, 2024).................... *passim*

*Willitts v. Engie N.A. Inc.*,
2021 WL 2322833 (D. Mass. June 7, 2021)....................17

*Wofse v. Horn*,
523 F. Supp. 3d 122 (D. Mass. 2021) ....................12

*Wood v. City of Haverhill*,
2024 WL 4189932 (D. Mass. Sept. 13, 2024) ....................7

*Zoll Med. Corp. v. Barracuda Networks, Inc.*,
565 F. Supp. 3d 101 (D. Mass. 2021) ....................17

**Statutes**

18 U.S.C. § 2510 ....................11

18 U.S.C. § 2511(2)(d) ....................7

M.G.L. c. 111 § 70E ....................17

M.G.L. c. 214 § 1B ....................12

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ....................2, 3

RESTATEMENT (SECOND) OF TORTS § 874 cmt. a (1979) ....................15

## INTRODUCTION

Throughout the country, including in Massachusetts, numerous plaintiffs have been attempting to collect massive damages awards from non-profit and charitable healthcare providers that use "pixel" technologies on their public websites. When a user visits a website that contains a pixel, limited information about the visit is allegedly sent to the entity that created the pixel—here, Meta and Google—which then uses the data to assist with advertising. These technologies are ubiquitous; they are used by countless businesses, healthcare entities, and government agencies to improve the functionality and advertising on their websites.

Defendant The Children's Hospital Corporation, doing business as Boston Children's Hospital ("BCH" or "Boston Children's"), is a charitable not-for-profit organization that provides pediatric healthcare services in Boston, Massachusetts. It operates a public website that is available to patients and non-patients alike, and a patient portal, which provides patients secure web-based access to medical records. The Plaintiff here, Jane Doe, alleges that when she visited BCH's website, pixels on that website caused her browser to send "protected health information" (PHI) to Meta and Google.[1] She bases that allegation on the definition of PHI in the Health Insurance Portability and Accountability Act (HIPAA). Plaintiff apparently believes PHI is disclosed during *every* visit to BCH's public website, because she seeks to represent a class of all Massachusetts residents who "accessed any portion" of the website in the three years leading up to this lawsuit.

The Complaint suffers from a variety of defects, but two cut across all of Plaintiff's claims. First, it is now well established that information available on a healthcare provider's public website does not qualify as PHI under HIPAA. *See, e.g.*, *American Hosp. Ass'n. v. Becerra*, 738 F. Supp.

---

[1] The Amended Complaint uses the terms "personal health information," "Protected Health Information" (PHI), "Private Information," and "Individually Identifiable Health Information" (IIHI) interchangeably. *See, e.g.*, Am. Compl. ¶¶ 1, 122, 126, 132, 139, 146. BCH refers to these terms collectively as "PHI."

3d 780, 802, 807 (N.D. Tex. 2024) (vacating a 2022 Bulletin issued by the Department of Health and Human Services, and holding that browsing activity on a public website "does not and cannot identify an individual or the individual's PHI"). Second, Plaintiff's Complaint is devoid of basic factual support. She does not identify what specific actions she took on BCH's website, let alone identify specific symptoms, conditions, or medical treatment that she actually disclosed to BCH via their website. Plaintiff's allegations are purely generic and she says nothing of substance about her individual claims. The Court should dismiss the Complaint under Rule 12(b)(6).

## SUMMARY OF ALLEGATIONS

BCH is a charitable non-profit Massachusetts healthcare system that maintains a public website at https://www.childrenshospital.org. Am. Compl. ¶ 17. BCH's website provides "information about doctors, services, and treatments provided by Boston Children's for particular medical conditions." *Id.* Plaintiff alleges that BCH "injected hidden code" (like pixels) into its public website, which is accessible by anyone in the world, regardless of their patient status. *Id.* ¶ 45. Plaintiff also alleges that BCH embeds tracking technology on its patient portal, which allows patients to obtain medical records. *Id.* ¶ 12.

The bulk of Plaintiff's Complaint provides a general description of pixel technology along with hypothetical scenarios about how an individual *could* interact with BCH's website. *See, e.g.*, *Id.* ¶¶ 65–112. But when it comes to her *own* interactions with BCH's website, Plaintiff has very little to say. Specifically, all Plaintiff alleges is that her "children are patients at Boston Children's" and that she "regularly used the Boston Children's Website to (i) obtain information about Boston Children's doctors (including their credentials and backgrounds); (ii) search for information on particular symptoms, conditions, and medical procedures, both for herself and her children; and (iii) obtain and review her children's medical records through the website's patient portal." *Id.* ¶ 11. Plaintiff does not describe the "information" or "records" that she reviewed on the website

or identify any specific information transmitted to third parties. Nor does she allege her website use was connected to any specific targeted advertisements, or that she has a Facebook account.

Plaintiff brings seven causes of action on behalf of herself and a putative class of Massachusetts residents: (1) violation of the Electronic Communications Privacy Act; (2) violation of the Massachusetts Right to Privacy Law; (3) breach of fiduciary duty; (4) negligence; (5) breach of confidence; (6) breach of contract; and (7) unjust enrichment. *Id.* ¶¶ 162–238.

## LEGAL STANDARD

A court must dismiss a complaint under Rule 12(b)(6) if it fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard demands more than "labels and conclusions" or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[2]

## ARGUMENT

### I. All Of Plaintiff's Claims Should Be Dismissed Because She Has Not Adequately Alleged That Any Of Her Private Information Was Disclosed.

#### A. Plaintiff's Allegations Regarding the Public Website Do Not Plausibly Implicate PHI.

Each of Plaintiff's claims is based on a false premise: that when people visit BCH's public website, their private information, in the form of "protected health information," "individually identifiable health information," or otherwise, is disclosed to third parties. Am. Compl. ¶¶ 1–3. This categorical assertion—which is not supported by any specific factual allegations—is wrong as a matter of law. Plaintiff bases it in large part on a December 2022 Bulletin issued by the Department of Health and Human Services ("HHS"). *Id.* ¶¶ 127–31. But the relevant portions of the Bulletin were vacated in an action against the HHS in the Northern District of Texas.

[2] Unless otherwise noted, all emphases in citations have been added, and internal quotation marks and citations have been removed.

In *American Hospital Association v. Becerra*, the court explained that mere browsing activity on a public hospital website "*does not* and *cannot* identify an individual or the individual's PHI." 738 F. Supp. 3d at 802.[3] That is because the website operator has no way of knowing why any particular user visits a particular webpage, or clicks a particular button. *See id.* at 795 ("A user's intent in visiting [an unauthenticated public webpage] is unknowable."). For example, a user might visit a healthcare website to find information for a family member (the case here), a friend, or for a school research project. *See id.* at 801. Or a user could visit the website to find non-medical information, like whether parking is available at a hospital. But whether or not the browsing relates to healthcare, it is not PHI if it takes place on a public website and subjective motive is required to link it to healthcare. *See id.* at 801–04 ("Without knowing information that's never received—i.e., the visitor's subjective motive—the resulting metadata could never identify that individual's PHI. Simply put, **Identity** (Person A) + **Query** (Condition B) ≠ **IIHI** [or PHI] (Person A has Condition B).").

Thus, although Plaintiff alleges that her children are patients of BCH and that she searched for information on symptoms, conditions, and medical procedures for herself (notably, Plaintiff does not allege that she is a BCH patient) and her children (Am. Compl. ¶ 11), BCH would have no way of knowing that it was Plaintiff running the search or her reason for doing so; it could have been any member of the public. This type of generic browsing data does not reveal patient status.

Although *Becerra* addresses PHI under HIPAA, its common-sense holding undermines each of Plaintiff's claims, as they are all premised on the assertion that PHI, or at a minimum private information, was disclosed via public browsing, which is simply not the case. For these reasons and others, numerous federal courts have granted motions to dismiss claims similar to

[3] HHS dismissed its appeal in *Am. Hosp. Ass'n v. Becerra*, No. 24-10775 (5th Cir. Sept. 4, 2024).

Plaintiff's after *Becerra*. *See Williams v. TMC Health*, 2024 WL 4364150, at *4 (D. Ariz. Sept. 30, 2024) (dismissing complaint because "disclosure of data regarding what healthcare information someone searches for and whether someone clicks on the patient portal link does not *necessarily* implicate HIPAA") (emphasis in original); *Doe v. Upperline Health, Inc.*, 2024 WL 4953503, at *2–3 (S.D. Ind. Sept. 24, 2024) (dismissing common-law claims because "principal theory" underlying all claims was defendant transmitted PHI inputted into its website, but nothing about plaintiff's browsing "relate[d] specifically to *her* health or relationship with [defendant]") (emphasis in original); *K.L. v. Legacy Health*, 2024 WL 4794657, at *4 (D. Or. Nov. 14, 2024) ("generic search queries" for burn specialists and burn treatments did not "constitute PHI").

BCH is aware that this honorable Court issued a ruling in *Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142 (D. Mass. 2024), denying in part a defendant's motion to dismiss a pixel suit (that did not include an ECPA claim) and accepting the plaintiff's allegation that PHI was disclosed. BCH respectfully asserts that *Tenet* should not apply here for two reasons. First, *Tenet* pre-dated *Becerra*'s finding as a matter of law that public website browsing does not identify an individual or their PHI, and the other numerous federal court decisions reaching similar decisions. BCH respectfully submits that *Becerra* and other recent cases provide new contextualization for Plaintiff's claims. Second, the plaintiff's allegations in *Tenet* were more specific than the allegations here. There, the plaintiff alleged specific health conditions she suffered from, that after using the defendant's website she began receiving targeted advertisements related to her specific conditions (weight loss and diabetes), and that specific details like requests for treatment and her appointment times and locations were disclosed. *Tenet*, 731 F. Supp. 3d at 147–48. As discussed above, Plaintiff's sparse allegations in this matter offer no specific details whatsoever about Plaintiff's actual interaction with the BCH website. Without more, Plaintiff's allegations are

nothing but labels and conclusions, which are insufficient at this stage. *See, e.g.*, *Nienaber v. Overlake Hosp. Med. Ctr.*, 2025 WL 692097, at *5 (W.D. Wash. Mar. 4, 2025) (*Nienaber II*) (even where plaintiff set forth her actual medical conditions, searches about that condition, and particular doctors searched for and obtained to treat condition, her allegations "just barely" passed muster).

**B. Plaintiff's Allegations Regarding the Patient Portal are Wholly Conclusory and Therefore Insufficient to Support Any of Her Claims.**

To the extent Plaintiff intends to rely on allegations relating to BCH's patient portal, the allegations in the Complaint are too conclusory to support any of her claims. Plaintiff alleges that information regarding activity inside the portal is considered PHI because of its relation to patient status. Am. Compl. ¶ 125. Even assuming this is true, several courts have found allegations like Plaintiff's insufficient to support claims premised on disclosure of PHI. For example, in one case the court found plaintiff's "two sentences" describing plaintiff's "actual engagement with [d]efendant's websites" insufficient to support any claim premised on disclosure of PHI from the portal. *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1082 (W.D. Wash. 2024) (*Nienaber I*). Plaintiff's allegations here similarly say nothing "as to the type of information she provided to Defendant through MyChart or that Defendant transmitted Private Information *of hers* to third parties through the Private Patient Portal." *Id.* at 1083; *see also B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064 (C.D. Cal. 2024). Here, Plaintiff's bald assertions about her portal use—contained in a single sentence—are not enough to allege that PHI was disclosed.

In sum, because every one of Plaintiff's claims is premised on the alleged disclosure of PHI or "private information" (*see, e.g.*, Am. Compl. ¶¶ 175–77, 185–86, 200, 203–07, 215–16, 224, 233), and because her Complaint contains only general allegations, and does not actually allege disclosure of specific medical or treatment information, her claims should all be dismissed.

## II. The Complaint Fails To State A Claim Under The ECPA.

Plaintiff alleges that BCH unlawfully "intercepted" her communications with its website, in violation of the Electronic Communications Privacy Act ("ECPA"). Am. Compl. ¶¶ 162–82. To state an ECPA claim, Plaintiff must allege facts demonstrating that BCH "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device, and (6) that the communication was intercepted contemporaneously." *Wood v. City of Haverhill*, 2024 WL 4189932, at *16 (D. Mass. Sept. 13, 2024). Plaintiff's ECPA claim should be dismissed because she has not shown any unlawful "interception," or that any "contents" were intercepted.

### A. Plaintiff Has Not Alleged An Unlawful Interception.

The ECPA is a one-party consent statute. The law expressly provides that "[i]t shall not be unlawful under this chapter for a person . . . to intercept a . . . communication where such person is a *party to the communication*." 18 U.S.C. § 2511(2)(d). And it is undisputed that BCH was a party to Plaintiff's communications with BCH's website; the communications were sent directly to that website. *See* Am. Compl. ¶¶ 1, 3, 4, 14, 17, 166; *see also In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 275 (3d Cir. 2016) (affirming dismissal of ECPA claim where defendant was party to the communications); *T.D. v. Piedmont Healthcare, Inc.*, 2024 WL 3972984, at *4 (N.D. Ga. Aug. 28, 2024) (dismissing ECPA claim and noting "weight of persuasive authority in similar pixel tracking cases" supported finding no interception by defendant party to the communication).

### B. Plaintiff Has Not Plausibly Alleged A Criminal Or Tortious Purpose.

Plaintiff alleges, however, that BCH is nonetheless liable under the "crime-tort exception" to the one-party consent rule. Am. Compl. ¶¶ 9, 172–73, 177. This exception applies when a "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States." 18 U.S.C. § 2511(2)(d). To invoke the

crime-tort exception, Plaintiff must plausibly allege that BCH (1) had the intent to commit (2) an independent crime or tort, separate from the interception itself. *See Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010). Plaintiff fails to allege either element here.

### 1. Plaintiff does not plausibly allege *intent* to commit a crime or tort.

To prove the requisite intent "[Plaintiff] must establish that either the primary motivation or a determinative factor in" BCH's decision to use tracking technology "was the intent to commit a criminal or tortious act." *United States v. McHugh*, 57 F. Supp. 3d 95, 99–100 (D. Mass. 2014). "[I]t is the *use* of the interception with *intent to harm* rather than the fact of interception that is critical to liability." *Boddie v. ABC*, 881 F.2d 267, 270 (6th Cir. 1989). The mere allegation that an interception resulted in a criminal or tortious act does not suffice. *Caro*, 618 F.3d at 100. "Where the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere." *Sussman v. ABC*, 186 F.3d 1200, 1202–03 (9th Cir. 1999); *see also In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 145 (3d Cir. 2015) (holding crime-tort exception did not apply to similar technology).

Plaintiff breezily alleges that BCH intercepted her communications "for the purpose of committing a . . . . violation of HIPAA and the FTC Act, as well as the other causes of action set forth in this complaint." Am. Compl. ¶ 173. She offers no support for this claim. And even if BCH's conduct violated one of these laws or common law theories (which it did not), Plaintiff has not alleged that BCH had an unlawful *purpose* beyond what was accomplished by the collection of her data—and that is what matters under the crime-tort exception. *See United States v. Kovolas*, 1998 WL 452218, at *4 (D. Mass. July 27, 1998) (rejecting plaintiff's "superficial logic" that "because the recording itself was made in violation of state law, it was made for the purpose of violating state law"); *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 516 (S.D.N.Y. 2001) ("[T]he commission of a tortious act [does] not prove a tortious purpose."); *id.* at 518 (finding

"plaintiffs clearly allege that DoubleClick has committed a number of torts" but "nowhere have they alleged that DoubleClick's primary motivation or a determining factor in its actions has been to injure plaintiffs tortiously"); *Lucas v. Fox News Network, LLC*, 248 F.3d 1180 (11th Cir. 2001) ("Because the complaint does not allege that defendants intercepted a communication for the *purpose* of committing any criminal or tortious act, it fails to state a claim").

Plaintiff's apparent theory—that BCH, a nonprofit hospital, collected her basic browsing data for the *purpose of harming her*—is implausible on its face. In fact, it is contradicted by other parts of her own Complaint, which say that BCH used the pixel technology to "optimize" its website or "marketing or advertising," to "improve the website," and be used for "commercial advantage to increase revenue" or "financial gain." Am. Compl. ¶¶ 116, 44, 178. As many courts have recognized (including in similar pixel cases), there is nothing unlawful about these objectives. *See, e.g.*, *Roberts v. Charlotte Mecklenburg Hosp. Auth.*, No. 3:24-cv-00382, Dkt. 50 at p. 6 (W.D.N.C. Mar. 20, 2025) (dismissing ECPA claim that did not plausibly allege "purpose for sharing IIHI was to breach HIPAA"); *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (collection for marketing was solely to assist defendant "in better reaching and serving its patients," not to commit a tort); *Rodriguez v. FastMed Urgent Care, P.C.*, 741 F. Supp. 3d 352, 364 (E.D.N.C. 2024) (interception "for commercial use or gain" not for criminal or tortious purpose); *TMC Health*, 2024 WL 4364150, at *4 (use of technology to increase profits and improve website analytics not for tortious purpose); *Katz-Lacabe v. Oracle Am.*, 2023 WL 2838118, at *16 (N.D. Cal. Apr. 6, 2023) (purpose was plainly not "to perpetuate torts on millions of Internet users, but to make money"); *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 939 (N.D. Ill. 2023) (dismissing ECPA claim; distinguishing *In re Pharmatrak, Inc.*, 329 F.3d 9 (1st Cir. 2003), because it did not consider party exception and involved third-party).

### 2. Plaintiff does not plausibly allege an *independent* crime or tort.

Nor does Plaintiff identify any *independent* "tortious conduct" beyond "the alleged wiretapping itself" that would violate HIPAA, the FTC Act, or Plaintiff's common law theories. *See Caro*, 618 F.3d at 100. As numerous courts have held, including in similar cases related to a healthcare provider's use of tracking technology, the crime-tort exception is not triggered when the tortious conduct "is the alleged wiretapping itself." *In re Google Cookie*, 806 F.3d at 145; *see also TMC Health*, 2024 WL 4364150, at *3 ("[The] criminal or tortious purpose must be separate and independent from the act of the recording."). Put differently, the interception alleged to be an ECPA violation cannot also be the same act that underlies the alleged crime or tort.

Where, as here, the alleged interception and disclosure of communications to a third party are accomplished through the same act, the alleged disclosure does not constitute an independent crime or tort. Just weeks ago, a federal court in Washington dismissed an ECPA claim in a similar healthcare pixel lawsuit on this basis. *See Nienaber II*, 2025 WL 692097, at *13. There, the court addressed the plaintiff's amended ECPA claim, and concluded the "amended pleadings still allege that the technologies installed by Defendant contemporaneously transmit Plaintiff's communications to third parties," which demonstrated that "the alleged tortious or criminal use of the acquired communications is the disclosure itself." *Id.* As a result, the court found that the crime-tort exception did not apply. The court also went a step further—noting the decisions cited by plaintiff that applied the crime-tort exception in similar cases were unpersuasive because they did not grapple with the statutory text or evaluate the "distinction between the interception and the transmission of data." *Id.*; *see also Nienaber I*, 733 F. Supp. 3d at 1095–96; *Okash v. Essentia Health*, 2024 WL 1285779, at *4 (D. Minn. Mar. 26, 2024) (crime-tort exception did not apply "because neither the alleged HIPAA nor privacy violations were independent of the interception"). The decision in *Nienaber II* applies equally here. Plaintiff alleges contemporaneous interception

and transmission (Am. Compl. ¶ 46), which means the "alleged tortious or criminal use of the acquired communications is the disclosure itself." *Nienaber II*, 2025 WL 692097, at *13. Thus, she has failed to invoke the crime-tort exception, and her ECPA claim fails as a matter of law.

Moreover, the First Circuit has made clear that courts should construe the crime-tort exception "narrowly." *McHugh*, 57 F. Supp. 3d at 100; *In re Pharmatrak, Inc.*, 329 F.3d at 23 ("As used in [ECPA], the term 'intentional' is narrower than the dictionary definition of 'intentional.'"). Additionally, because the ECPA imposes criminal penalties, the rule of lenity applies—so any ambiguities in the statute must be resolved in BCH's favor. *See United States v. Bowen*, 127 F.3d 9, 13–14 (1st Cir. 1997) ("[T]he rule of lenity means that 'the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.'"); *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) (explaining rule of lenity also pertains to civil claims arising out of statutes with criminal applications). For further discussion on the application of the rule of lenity, BCH directs the Court to the amicus brief filed by The Chamber of Commerce of the United States of America, recently filed in a similar healthcare pixel matter, attached as Exhibit A.

**C. Plaintiff Has Not Alleged That BCH Intercepted "Contents."**

Plaintiff's ECPA claim fails for another reason: she does not allege that BCH intercepted the "contents" of any communication. 18 U.S.C. § 2510(4). "Contents" is defined as information "concerning the substance, purport, or meaning of th[e] communication," including "personally identifiable information such as a party's name, date of birth, and medical condition." *Id.* § 2510(8); *see also In re Pharmatrak*, 329 F.3d at 18. Plaintiff does not claim that BCH received any such information from her. At most, Plaintiff generally claims that BCH received information about her webpage views (including URLs and page titles), search term queries, drop down selections, and button clicks. *See, e.g.*, Am. Compl. ¶¶ 56, 84, 166. But "search terms, information

inputted by Plaintiff, and pages and content viewed by Plaintiff" are "precisely the type of non-record information that courts consistently find do not constitute 'contents' under the [ECPA]" because they do "not convey the substance or meaning of any message." *Goldstein v. Luxottica of Am., Inc.*, 2021 WL 4093295, at *2 (S.D. Fla. Aug. 23, 2021). Even Plaintiff's generic portal allegations merely allege tracking of button clicks or webpage views; for example, the Complaint alleges that she visited the medical records page within the portal, but does not allege that action would reveal the substance of any communication she viewed there. And regardless, Plaintiff does not meaningfully *describe* the particular information that she shared with BCH or any specific activity she engaged in on the website or portal. *See TMC Health*, 2024 WL 4364150, at *5 (claims are "insufficient" where plaintiff did not make clear what content was disclosed). Since Plaintiff has not allege any "contents" were disclosed, her ECPA claim should be dismissed.

**III. Plaintiff Fails To State A Claim Under The Massachusetts Right To Privacy Law.**

Plaintiff alleges that BCH violated the Massachusetts Right to Privacy Act, G.L. c. 214 § 1B, by "distributing" her PHI to third parties without her consent and that such disclosure constituted an intrusion upon her seclusion. Am. Compl. ¶¶ 188–89. Plaintiff pursues a claim based upon a theory of public disclosure of private facts and intrusion upon seclusion. But for either theory Plaintiff must allege the facts gathered or disseminated were of a "highly personal or intimate" nature and that the invasion resulted in *both* an "unreasonable" *and* "substantial or serious interference" with her privacy. *Branyan v. Sw. Airlines Co.*, 105 F. Supp. 3d 120, 126 (D. Mass. 2015); *Wofse v. Horn*, 523 F. Supp. 3d 122, 137 (D. Mass. 2021). Plaintiff fails to do so.

Plaintiff has not alleged that BCH gathered or disseminated any "highly personal or intimate" facts, nor that the alleged invasion was unreasonable and substantial and serious. Again, her Complaint does not identify any specific information that she provided to BCH or that BCH collected *about her or her children*. *See* pp. 3–6 *supra*. To the contrary, she acknowledges that she

"does not describe in this complaint the specific pages she visited" and provides solely vague descriptions of her activities. Am. Compl. ¶¶ 84, 11. Plaintiff suggests that these omissions were necessary to "maintain her medical privacy" (*id.*), but that is nonsensical. Plaintiff may not need "to provide specific medical details, [but] she must allege more than she has," which is a single paragraph in a 68 page complaint. *Nienaber I*, 733 F. Supp. 3d at 1082; *see also Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 843 (N.D. Ill. 2023) (plaintiff cannot "reasonably expect to bring a lawsuit related to the invasion of her medical privacy and completely evade revealing what … [was] disclosed to third parties"). Courts addressing similar claims have not hesitated to dismiss such deficient allegations. *See Kaiser Found. Health Plan*, 2024 WL 1589982, at *4; *Piedmont*, 2024 WL 3972984, at *2; *TMC Health*, 2024 WL 4364150, at *4.[4]

But even Plaintiff's more generalized allegations do not plausibly suggest that BCH disclosed anyone's sensitive information to third parties. As discussed above, Plaintiff does not adequately allege facts to support a claim based on the patient portal. *See* p. 6 *supra*. And no one has a reasonable expectation of privacy in information entered on a public website. "Contemporary internet browsing involves the collection of users' data . . . *and a reasonable user should expect as much*." *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. Jul. 1, 2024) (emphasis in original) (collecting cases); *see also Okash*, 2024 WL 1285779, at *7 & n.9 (collecting cases and noting courts "generally agree that when a plaintiff voluntarily browses a healthcare website,

[4] BCH acknowledges that this Court and a handful of Massachusetts Superior court decisions have declined to dismiss claims for violation of the Massachusetts Right to Privacy Law, as well as negligence, breach of implied contract, and unjust enrichment. *See Tenet Healthcare*, 731 F. Supp. 3d 142; *Doe v. Emerson Hospital*, 2023 WL 8869624 (Mass. Super. Nov. 22, 2023); *Doe v. Boston Medical Center Corp.*, 2023 WL 7105628, (Mass. Super. Sep. 14, 2023); *Alves v. BJ's Wholesale Club, Inc.*, 2023 WL 4456956 (Mass. Super. June 21, 2023). As discussed above, these decisions pre-dated *Becerra*, as well as much of the case law in this developing area, and therefore lack the benefit of the most recent analysis for these types of claims. Further, as to the state court decisions, BCH respectfully submits that discussion of the issues in those rulings is perfunctory, turns on specific allegations in each case, and that more thorough decisions from federal courts finding allegations similar to Plaintiff's insufficient to state a claim are more persuasive.

there is no intrusion when the Pixel transmits the information to Meta"); *Piedmont*, 2024 WL 3972984, at *2 ("There is no intrusion upon privacy when a patient voluntarily provides [PII or PHI] to his or her healthcare provider."); *Koppel v. Moses*, 2020 WL 6292871, at *9 (D. Mass. Oct. 27, 2020) (dismissing invasion of privacy claim that did not allege "disclosure of any private facts"). What's more Plaintiff does not allege information was published to any *person*; she merely alleges non-specific data like browser settings was provided to Google and Facebook, where those companies *might* combine it with other data they already have about Plaintiff. Such allegations fall short of establishing an unreasonable, substantial, and serious invasion of privacy.

Last, in assessing whether an invasion of privacy was both "unreasonable" and "substantial or serious" courts "balance the extent to which the defendant violated the plaintiff's privacy interests against any legitimate purpose the defendant may have had for the intrusion." *Clark v. Zwicker & Assocs., P.C.*, 2024 WL 2025568, at *7 (D. Mass. May 7, 2024). Even if Plaintiff had a reasonable expectation of privacy in her routine browsing activities, she does not claim that BCH *used* her information for an improper purpose. Instead, she alleges that BCH used the information "to market its services and increase profits." Am. Compl. ¶ 180. There is nothing invidious about those plainly legitimate business purposes. *See Squeri v. Mount Ida Coll.*, 954 F.3d 56, 69 (1st Cir. 2020) (invasion of privacy not unreasonable, serious, or substantial "if, among other things, it had a legitimate business purpose"); *see also Eisenhower*, 721 F. Supp. 3d at 1067 (disclosure of "routine medical searches and inquiries" not "highly offensive").

## IV. The Complaint Fails To State A Claim For Breach Of Fiduciary Duty.

To establish a claim for breach of fiduciary duty, "a plaintiff must show (1) the existence of a duty of a fiduciary nature, based upon the relationship of the parties; (2) breach of that duty; and (3) a causal connection between that breach and some resulting harm to the plaintiff." *Amorim*

*Holding Financeria, S.G.P.S., S.A. v. C.P. Baker & Co.*, 53 F. Supp. 3d 279, 295 (D. Mass. 2014). Plaintiff has not satisfied any of these elements.

Plaintiff appears to claim that BCH owed a duty to her because BCH is a healthcare provider and her children are its patients. Even assuming that is true, "the existence of a fiduciary relationship does not mean that all interaction between the parties to that relationship is measured by the standards applicable to fiduciaries." *Korper v. Weinstein*, 783 N.E.2d 877, 881 (Mass. App. Ct. 2003). The fiduciary duty applies "only as to matters within the scope of the fiduciary relationship." *Id.*; *see also* RESTATEMENT (SECOND) OF TORTS § 874 cmt. a (1979) (fiduciary relationship covers "matters within the scope of the relation"). And Massachusetts courts have expressly "declin[ed] . . . to expand the scope of the fiduciary duty a doctor owes a patient to include conduct beyond the context of medical treatment." *Korper*, 783 N.E.2d at 881 n.11.

When Plaintiff browsed BCH's public website—which is available to any person with access to the internet, regardless of patient status—she did so "beyond the context of medical treatment" and therefore outside the scope of any physician-patient relationship. *Id.*; *see also Kelley v. CVS Pharm., Inc.*, 2007 WL 2781163, at *6 (Mass. Super. Aug. 24, 2007). Browsing a public website is not "medical treatment," and BCH did not owe a fiduciary to every person who used its public website. As discussed above, BCH does not even have a way of knowing whether a website visitor *is* a patient. BCH could not have breached a fiduciary duty it was unaware of.

Furthermore, to the extent that Plaintiff alleges that her PHI was disclosed via BCH's patient portal, her allegations are insufficient to support a breach of fiduciary duty. Plaintiff does not allege what, if any, information from her own portal was disclosed beyond vaguely stating she has reviewed medical records for her children. And even her generic hypothetical allegations merely assert that button clicks and page views are disclosed—not that any substantive medical

information is shared. Am. Compl. ¶¶ 111–12. Courts in this district have held similar disclosures are insufficient to support a breach of fiduciary duty. *Kelley*, 2007 WL 2781163, at *6 (although disclosure of information suggested plaintiff was a customer of pharmacy "and therefore had been prescribed some medication by some physician at some point in time" that information was not "so private, standing alone, as to constitute a breach" of fiduciary duty).

Lastly, Plaintiff's claim also fails on the independent basis that her alleged damages fail as a matter of law as discussed below in § VI, *infra*.

## V. The Complaint Fails To State A Claim For Breach Of Confidence.

Plaintiff's claim for breach of confidence fares no better. For one thing, it is not clear whether Massachusetts recognizes a standalone cause of action for "breach of confidence." In the context of a physician-patient relationship, the Supreme Judicial Court has recognized a "fiduciary obligation to hold in trust confidential information." *Alberts v. Devine*, 479 N.E.2d 113, 118–20 (Mass. 1985). But Massachusetts courts have not recognized a duty of *confidence* beyond the *fiduciary* duty articulated in *Alberts*. *See, In re Shields Health Care Grp.*, 721 F. Supp. 3d 152, 165 (D. Mass. 2024) (citing *Alberts* and referring to breach of "fiduciary duty of confidentiality"); *Tashjian v. CVS Pharm., Inc.*, 2020 WL 1931859, at *6 (D. Mass. Mar. 13, 2020) (analyzing claim for "breach of fiduciary duty of confidentiality"); *Kelley*, 2007 WL 2781163, at *5 (analyzing breach of fiduciary duty *or* duty of confidentiality as one issue); *Korper*, 783 N.E.2d at 881 (a "physician has a fiduciary duty to maintain the confidentiality of a plaintiff's medical records").

In any event, Plaintiff does not distinguish the allegations supporting her two claims: both are based on the same alleged "duty" (the physician-patient relationship), and the same alleged conduct (disclosure of "nonpublic medical information"). *See* Am. Compl. ¶¶ 195–96, 212–13. The Court should therefore dismiss the breach of confidence claim, either as duplicative or for the

same reasons the fiduciary claim fails. *See* Part IV *supra*; *Willitts v. Engie N.A. Inc.*, 2021 WL 2322833, at *4 (D. Mass. June 7, 2021) (dismissing claim where no disclosure by a physician).

## VI. The Complaint Fails To State A Claim For Negligence.

Plaintiff alleges that BCH was negligent because it failed to "exercise reasonable care in safeguarding and protecting Plaintiff's . . . Private Information from unauthorized disclosure." Am. Compl. ¶¶ 202–10. To state a claim, Plaintiff must allege the "elements of duty, breach, causation and damages." *Zoll Med. Corp. v. Barracuda Networks, Inc.*, 565 F. Supp. 3d 101, 106 (D. Mass. 2021). Plaintiff has failed to allege each element.

First, Plaintiff fails to allege that BCH owed Plaintiff a duty of care. She claims that BCH had a "special relationship" with patients that is recognized by "statute, regulations, industry ethical rules . . . and the common law." Am. Compl. ¶ 206. By now our response will be familiar: When Plaintiff visited BCH's public website, she did so as a member of the general public, not as a patient—and neither her children's patient status nor the unidentified "statutes" and "regulations" transforms her otherwise-ordinary browsing activity into an interaction protected by a duty of care. *See TMC Health*, 2024 WL 4364150, at *7 (dismissing negligence claim because the "statutes cited by Plaintiffs do not support a duty between a healthcare provider and people visiting its free, public website"); *Roe No. 1 v. Children's Hosp. Med. Ctr.*, 16 N.E.3d 1044, 1052 (Mass. 2014) ("[T]he mere existence of a statute or regulation does not automatically give rise to a legal duty for the purpose of a negligence action.").[5] To the extent Plaintiff relies on patient portal allegations,

[5] The two laws Plaintiff does identify—M.G.L. c. 111 § 70E and HIPAA—are inapplicable to the public website for additional reasons. The first applies only to "records of *treatment*." And HIPAA is likewise "designed to protect the privacy of patients that receive *treatment*." *Grocela v. Gen. Hosp. Corp.*, 2012 WL 3205616, at *5 (Mass. Super. July 18, 2012). Regardless, neither statute has a private right of action. *See, e.g.*, *Bailey v. Hosp. of the Univ. of Pa.*, 266 A.3d 654 (Pa. Super. Ct. 2021) (dismissing negligence claim where plaintiff tried to base duty of care on HIPAA and state statutory law, but neither had a right of action).

our response is again familiar: She fails to allege more than a single vague sentence in support of her actual activities, which is insufficient to premise her claim on portal activity. *See* p. 6, *supra*.

Second, even if a duty existed, BCH did not breach it. Plaintiff's negligence claim is based on the alleged "unauthorized disclosure" of Plaintiff's "Private Information." Am. Compl. ¶¶ 202–10. But as discussed in Part I above, Plaintiff does not plausibly allege that any specific PHI or private information was disclosed. *See Nienaber I*, 733 F. Supp. 3d at 1087 (dismissing negligence claim for failure to establish breach where allegations about PHI, including in portal, were vague).

Third, Plaintiff has not alleged that she suffered cognizable harm as a result of BCH's alleged conduct. She vaguely claims her "[s]ensitive and confidential information" was disclosed, that she received "unwanted targeted advertisements." and that she lost her "property rights." Am. Compl. ¶¶ 6, 153. But as discussed above, Plaintiff provides no support for these allegations. She does not say what, if any, specific information she disclosed to BCH, or that any such information was disclosed to a third party. *See, e.g.*, *Bonewit v. New-Indy Containerboard LLC*, 2024 WL 4932186, at *2 (D. Mass. Dec. 2, 2024) (dismissing for no damages where "no actual misuse or disclosure" alleged); *Reidy v. Umass Mem. Med. Ctr., Inc.*, 2021 WL 6777622, at *2 (Mass. Super. June 17, 2021) (claims insufficient because "at best" were "abstract concerns about possible future impairments of his rights as a patient, without actual damages"); *Piedmont*, 2024 WL 3972984, at *3 (plaintiff did not explain how "targeted advertisements" caused harm; "[t]he better view from other courts around the country is that these types of damage claims are not actionable."); *Eisenhower Med.*, 721 F. Supp. 3d at 1064 (similar); *Doe v. Village Podiatry Grp., LLC*, 2024 WL 5187261, at *2 (Ga. Super. Nov. 20, 2024) ("speculative or theoretical injuries" insufficient).

**VII. The Complaint Fails To State A Claim For Breach Of Contract.**

To state a claim for breach of contract, Plaintiff must allege the existence of a valid contract between the parties, Plaintiff's willingness to perform, breach of the contract, and damages as a

result. *See In re Boston Univ. COVID-19 Refund Litig.*, 511 F. Supp. 3d 20, 23 (D. Mass. 2021). Plaintiff's breach of contract claim—which is premised on both express and implied contract theories, (Am. Compl. ¶ 225)—fails for two main reasons.

First, there was no mutual assent. To create an enforceable contract, "there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement." *Beauregard v. Meldon*, 2019 WL 6877185, at *3 (D. Mass. Dec. 17, 2019). Plaintiff claims that an express or implied contract was formed because she was required to disclose her "Private Information, including names, email addresses, phone numbers, computer IP addresses, [and] appointment information . . . to the [BCH] Website as a condition of receiving healthcare services." Am. Compl. ¶¶ 224–25. But the Complaint contains no allegations to support the theory that BCH's public website provides medical services. Indeed, there is no method on the public website for a user to provide their name, email address, phone number, or appointment information—none of which is "Private Information" to begin with. *See* Part I. Nor does the Complaint allege Plaintiff obtained medical services through the patient portal; she only alleges that she used the portal as a tool to *access* information. Am. Compl. ¶ 11. And to the extent Plaintiff attempts to allege an explicit contract based on BCH's privacy policy, she does not claim any reliance on that agreement. *See Shields*, 721 F. Supp. 3d at 162 (dismissing express contract claim for failing to allege reliance on the privacy policy); Am. Compl. ¶¶ 25–29.

Second, there was no consideration. A "promise to perform a pre-existing duty is not valid consideration." *Katz v. Pershing, LLC*, 806 F. Supp. 2d 452, 460 (D. Mass. 2011). If Plaintiff's information *did* qualify as PHI (*but see* Part I), BCH would have a preexisting legal obligation under HIPAA to protect that information. *See TMC Health*, 2024 WL 4364150, at *8 (dismissing implied contract claim where defendant "was already required under HIPAA to protect patients in

the ways" its policy promised); *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1367 (S.D. Fla. 2017) (HIPAA's provisions could not "create contractual obligations"); *In re Banner Health Data Breach Litig.*, 2017 WL 6763548, at *4 (D. Ariz. Dec. 20, 2017) (same).

Third, for the reasons discussed above, Plaintiff has not alleged any damages resulting from the alleged breach of contract. *See* pp. 18, *supra*.

## VIII. The Unjust Enrichment Claim Fails Because An Adequate Remedy At Law Exists.

Plaintiff asserts a claim for unjust enrichment on the ground that she "conferred a benefit upon Defendant in the form of monetizable Private Information that Defendant collected from [her] and disclosed to third parties . . . without authorization and proper compensation." Am. Compl. ¶ 233. This claim fails because "a party with an adequate remedy at law cannot claim unjust enrichment." *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017). Plaintiff has remedies at law available through her statutory and common law claims against BCH. The ultimate "disposition of those claims is irrelevant." *Fernandes v. Havkin*, 731 F. Supp. 2d 103, 114 (D. Mass. 2010). As the First Circuit and district courts within it have held, "[i]t is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment." *Shaulis*, 865 F.3d at 16 (affirming dismissal of unjust enrichment claim where adequate remedy at law existed); *see also Pershouse v. L.L. Bean, Inc.*, 368 F. Supp. 3d 185, 190 (D. Mass. 2019) (dismissing unjust enrichment claim because Plaintiff's breach of contract and statutory claims, while ultimately dismissed, were adequate remedies at law); *Fernandes*, 731 F. Supp. 2d at 114 (same); *One Wheeler Rd. Assocs. v. Foxboro Co.*, 843 F. Supp. 792, 799 (D. Mass. 1994) (same); *ARE-Tech Square, LLC v. Galenea Corp.*, 2017 WL 634771, at *3 (Mass. App. Ct. Feb. 16, 2017) (same). The unjust enrichment claim should be dismissed.

## CONCLUSION

The Court should dismiss the Amended Complaint with prejudice.

Dated: March 21, 2025

Respectfully submitted,

THE CHILDREN'S HOSPITAL CORPORATION

By: */s/ Lisa Oliver White*

Lisa Oliver White, BBO# 666841
**SHOOK, HARDY & BACON L.L.P.**
One Federal Street, Suite 2620
Boston, MA 02110
Tel: (617) 531-1411
lowhite@shb.com

Tammy B. Webb (*pro hac vice forthcoming*)
**SHOOK, HARDY & BACON L.L.P.**
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900
twebb@shb.com

Jad Sheikali (*pro hac vice*)
Tara D. Kennedy (*pro hac vice*)
Avery Epstein (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
111 South Wacker Drive
Chicago, IL 60606
Tel: (312) 704-7700
jsheikali@shb.com
tkennedy@shb.com
aepstein@shb.com

***Attorneys for Defendant***

**LOCAL RULE 7.1 CERTIFICATION**

The undersigned certifies that pursuant to Local Rule 7.1, counsel for Defendant conferred with counsel for Plaintiff by email on March 19, 2025 concerning this motion, and have not been able to narrow the issues in dispute.

*/s/ Lisa Oliver White*
Lisa Oliver White

**CERTIFICATE OF SERVICE**

I, Lisa Oliver White, do hereby certify that on March 21, 2025, a true and correct copy of the foregoing document was served upon all counsel of record via the CM/ECF system of the United States District Court for the District of Massachusetts.

*/s/ Lisa Oliver White*
Lisa Oliver White