**IN THE UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JANE DOE,<br><br>For herself and the Class,<br><br>v.<br><br>THE CHILDREN'S HOSPITAL CORPORATION,<br><br>Defendant. | **Case No. 1:25-cv-10343-PBS** |

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

SHAPIRO HABER & URMY LLP
Edward F. Haber (BBO #215620)
Michelle H. Blauner (BBO #549049)
Patrick J. Vallely (BBO #663866)
One Boston Place
Suite 2600
Boston, MA 02108
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
ehaber@shulaw.com
mblauner@shulaw.com
pvallely@shulaw.com

***Counsel for Plaintiff***

# Table of Contents

I. Introduction ..... 1

II. The Facts. ..... 2

A. BCH Implemented Tracking Technologies in a Manner that Disclosed Patient Status, the Substance of Patient Communications, and Patient Identities ..... 2

B. BCH Deceived Its Patients about Tracking Technologies. ..... 3

C. Plaintiff's Communications Intercepted on the BCH Website. ..... 4

III. Argument ..... 5

A. Plaintiff States a Claim for Violation of the ECPA. ..... 5

1. Plaintiff Adequately Alleges the Crime-Tort Exception to One-Party Consent. ..... 5

a. Plaintiff's ECPA Claim Does Not Depend upon a HIPAA Violation. ..... 5

b. Plaintiff Also Alleges a HIPAA Violation ..... 7

c. Plaintiff Alleges Criminal and Tortious Purpose. ..... 9

2. Plaintiff Alleges the Interception of the Contents of Her Communications ..... 12

B. Becerra Is Irrelevant to Plaintiff's Massachusetts Claims. ..... 12

C. Plaintiff States a Claim under the MRPA. ..... 13

D. Plaintiff States a Claim for Breach of Fiduciary Duty. ..... 16

E. Plaintiff States a Claim for Breach of Confidence. ..... 17

F. Plaintiff States a Claim for Negligence. ..... 18

G. Plaintiff States a Claim for Breach of Contract. ..... 18

H. Plaintiff Sufficiently Alleges Harm. ..... 19

I. Plaintiff States a Claim for Unjust Enrichment. ..... 20

IV. Conclusion ..... 20

# Table of Authorities

Pages

**Cases**

*A.J. v. LMND Med. Grp., Inc.*,
2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024) .......... 10, 17, 18, 20

*Adams v. Holder*,
692 F.3d 91 (2d Cir. 2012) .......... 11

*Alberts v. Devine*,
395 Mass. 59 (1985) .......... 17

*Alves v. BJ's Wholesale Club, Inc.*,
2023 Mass. Super. LEXIS 59 (Super. Ct. June 21, 2023) .......... 13, 14, 15

*Am. Hosp. Ass'n v. Becerra*,
2024 U.S. Dist. LEXIS 108847 (N.D. Tex. June 20, 2024) .......... 5, 8

*Bennett v. Eagle Brook County Store, Inc.*,
408 Mass. 355 (1990) .......... 18

*Brahm v. Hosp. Sisters Health Sys.,*
2024 U.S. Dist. LEXIS 114827 (W.D. Wis. June 28, 2024) .......... 10, 16, 17, 20

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 16

*Castillo v. Costco Wholesale Corp.*,
2024 U.S. Dist. LEXIS 207197 (W.D. Wash. Nov. 14, 2024) .......... 10, 12

*Clark v. Zwicker & Assocs., P.C.*,
2024 U.S. Dist. LEXIS 82882 (D. Mass. May 7, 2024) .......... 15

*Commonwealth v. McCarthy*,
484 Mass. 493 (2020) .......... 6

*Cooper v. Mt. Sinai Health Sys., Inc.*,
2024 U.S. Dist. LEXIS 134570 (S.D.N.Y. July 30, 2024) .......... 10, 17

*Doe v. Bayhealth Med. Ctr. Inc.*,
2025 Del. Super. LEXIS 154 (Super. Ct. Apr. 2, 2025) .......... 9

*Doe v. Bon Secours Mercy Health*,
2021 Ohio Misc. LEXIS 3985 (Ct. Com. Pl. Nov. 22, 2021) .......... 15, 19

*Doe v. Bos. Med. Ctr. Corp.*,
2023 Mass. Super. LEXIS 674 (Super. Ct. Sep. 14, 2023) ....................13, 14, 15

*Doe v. Emerson Hosp.*,
2023 Mass. Super. LEXIS 673 (Super. Ct. Nov. 22, 2023)....................passim

*Doe v. Medstar Health, Inc.*,
2020 Md. Cir. Ct. LEXIS 139 (Cir. Ct. Aug. 5, 2020) ....................16

*Doe v. Partners Healthcare*,
No. 1984CV01651-BLS1 (Mass. Super. Ct.).................... 13, 17

*Doe v. Post Acute Med., LLC*,
2025 U.S. Dist. LEXIS 26667 (M.D. Pa. Feb. 14, 2025) ....................12

*Doe v. Tenet Healthcare Corp.*,
731 F. Supp. 3d 142 (D. Mass. 2024)....................passim

*Elkins v. Bartholomew Cnty. Pub. Hosp.*,
2024 Ind. Super. LEXIS 340 (Super. Ct. Dec. 16, 2024) .................... 19, 20

*Gaige v. Exer Holdings Co., LLC*,
2025 U.S. Dist. LEXIS 17146 (C.D. Cal. Jan. 30, 2025) ....................9

*Gay v. Garnet Health*,
2024 U.S. Dist. LEXIS 168515 (S.D.N.Y. Sept. 16, 2024) .................... 11, 20

*Good v. Uber Techs., Inc.*,
494 Mass. 116 (2024)....................19

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) ....................16

*In re BetterHelp, Inc. Data Disclosures Cases*,
2024 U.S. Dist. LEXIS 124321 (N.D. Cal. July 15, 2024) ....................10

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................15

*In re Google, Inc.*,
806 F.3d 125 (3d Cir 2015).................... 12, 16

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022)....................passim

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024).................... 14, 20

*In re Pharmatrak, Inc. Privacy Litig.*,
329 F.3d 9 (1st Cir. 2003) ....................1

*In re TikTok, Inc. In-App Browser Priv. Litig.*,
2024 U.S. Dist. LEXIS 178597 (N.D. Ill. Oct. 21, 2024) ....................4

*James v. Walt Disney Co.*,
2023 U.S. Dist. LEXIS 200997 (N.D. Cal. Nov. 8, 2023) ....................12

*Jarrell v. Adena Health Sys.*,
2025 U.S. Dist. LEXIS 6169 (S.D. Ohio Jan. 13, 2015) ....................7, 11, 20

*Joffe v. Google, Inc.*,
746 F.3d 920 (9th Cir. 2013) ....................12

*Kelley v. CVS Pharmacy, Inc.*,
23 Mass. L. Rep. 87 (2007) .................... 6, 16

*Kurowski v. Rush Sys. for Health*,
2023 U.S. Dist. LEXIS 219895 (N.D. Ill. Dec. 11, 2023)....................15

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023)....................14

L*amarr v. Goshen Health Sys., Inc.*,
2024 Ind. Super. LEXIS 107 (Super. Ct. Oct. 3, 2024)....................passim

*Lee v. Conagra Brands, Inc.,*
958 F.3d 70 (1st Cir. 2020) ....................20

*Lugo v. Inova Health Care Servs.*,
2025 U.S. Dist. LEXIS 55590 (E.D. Va. Mar. 25, 2025) ....................10

*M.G. v. Therapymatch*,
2024 U.S. Dist. LEXIS 166534 (N.D. Cal. Sept. 16, 2024) ....................12

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024) ....................10

*Muscarello v. United States*,
524 U.S. 125 (1998) ....................11

*Peckham v. Bos. Herald, Inc.*,
48 Mass. App. Ct 282 (App. Ct. 1999)....................6

*Polay v. McMahon*,
468 Mass. 379 (2014).................... 13, 15

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ....................7, 10, 12, 16

*R.S. v. Prime Healthcare Servs.*,
2025 U.S. Dist. LEXIS 6338 (C.D. Cal. Jan. 13, 2025) ....................7, 10, 11

*Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
409 Mass. 514 (1991)....................13

*Squeri v. Mt. Ida Coll.*,
954 F.3d 56 (1st Cir. 2020) ....................16

*Stein v. Edward-Elmhurst Health,*
2025 U.S. Dist. LEXIS 31273 (N.D. Ill. Feb. 21, 2025) ....................9

*Sussman v. ABC*,
186 F.3d 1200 (9th Cir. 1999) ....................10

*Transamerica Ins. Co. v. KMS Patriots*,
52 Mass. App. Ct. 189 (App. Ct. 2001)....................6

*Vita v. New England Baptist Hosp.*,
494 Mass. 824 (2024)....................passim

*Yoon v. Meta Platforms, Inc.*,
2024 U.S. Dist. LEXIS 234457 (N.D. Cal. Dec. 30, 2024)....................12

*Zelby Holdings, Inc. v. VideogeniX, Inc.*,
92 Mass. App. Ct. 86 (App. Ct. 2017)....................20

**Statutes**

42 U.S.C. § 1320d....................7

M.G.L. c. 214 § 1B....................12

## I. INTRODUCTION

The Children's Hospital Corporation, d/b/a Boston Children's Hospital ("BCH"), aided third parties—including Google and Facebook—to secretly eavesdrop on Plaintiff Jane Doe's[1] ("Plaintiff") communications with BCH. BCH injected hidden code for tracking technologies into its website, including Google Analytics and Facebook's Meta Pixel, but did not disclose those technologies to consumers or their significance for patient privacy. Plaintiff's claims align with First Circuit precedent established twenty years ago, affirming federal wiretap claims for the surreptitious use of tracking technologies on medical websites. *In re Pharmatrak, Inc. Privacy Litig.*, 329 F.3d 9, 13-16 (1st Cir. 2003). BCH's arguments for dismissal each lack merit.

***First***, none of Plaintiff's claims require as an element that BCH violated HIPAA, no less a specific portion of regulatory guidance regarding HIPAA. Accordingly, a federal court decision regarding that guidance does not preclude any of her claims. In any event, Plaintiff adequately alleges a HIPAA violation, particularly given a core fact in this case that distinguishes it both from the cases BCH cites: BCH, unlike almost every other healthcare provider, used tracking technologies throughout its patient portal, including the pages patients can access only after logging in.

***Second***, Plaintiff adequately alleges a claim under the federal Electronic Communications Privacy Act ("ECPA"). Plaintiff alleges both a criminal and tortious purpose by alleging BCH's intentional decision to inject hidden code onto its website, including its patient portal, enabling third parties to eavesdrop on patient communications, which violated both federal and state law. Moreover, Plaintiff adequately alleges the contents of such communications, including the disclosure of patient status and descriptive URLs that revealed the substance of intercepted communications.

***Third***, Plaintiff adequately alleges each Massachusetts claim she asserts. BCH's challenges to particular elements of those claims lack merit, as do its challenges to the sufficiency of Plaintiff's

[1] "Jane Doe" is a pseudonym used to protect Plaintiff's privacy, given that this case involves private health information regarding Jane Doe's minor children. Prior to the removal of this case, the Massachusetts Superior Court approved Plaintiff's motion to proceed in pseudonym, and Ms. Doe's identity has been disclosed to counsel for Defendant per that order.

allegations regarding her own communications. Plaintiff alleges more than sufficient detail to put BCH on notice of the claims against it and the factual basis for those claims.

For the reasons detailed below, the Court should deny the motion to dismiss.

## II. THE FACTS.

### A. *BCH Implemented Tracking Technologies in a Manner that Disclosed Patient Status, the Substance of Patient Communications, and Patient Identities.*

BCH injected hidden code into its website that enabled third parties, including Google, Facebook, and others, to eavesdrop on communications between BCH and patients, including Plaintiff. ¶¶ 33–62, 113.[2] The code caused consumers' browsers to intercept information about the substance of the communications made through each webpage a patient visited and to disclose those intercepted communications to third parties, all without informing the consumer. *See* ¶¶ 55-60, 63-112. Nine months after it was sued, BCH substantially reduced its use of tracking technologies on its website. ¶¶ 62-63.

Distinguishing this case from others involving healthcare companies that only used tracking technologies on public pages of their websites, BCH deployed tracking technologies throughout its MyChildren's Patient Portal, including pages patients (or their parents and guardians) access only after logging in to obtain information about their healthcare. ¶¶ 103-12. By deploying the tracking technologies within the MyChildren's Patient Portal, BCH disclosed to third parties each action taken within the portal, including requests for medical records, prescriptions, billing, and insurance information. *Id.* Similarly, BCH also deployed tracking technologies on its appointment request form, disclosing those requests to Google, Facebook, and others. ¶¶ 97-101. By deploying tracking technologies within the patient portal and on other patient-specific pages, BCH revealed patient status to third parties.

The substance of communications intercepted also included URLs and titles of webpages. URLs serve as addresses for webpages but sometimes also reveal information about the substance of the communication—those URLs are called "descriptive URLs." ¶ 51. BCH used descriptive URLs. For

---

[2] "¶ __" refers to paragraphs of Plaintiff's Amended Complaint. Plaintiff filed the Amended Complaint in the Massachusetts Superior Court prior to BCH's removal of this case, *see* Doc. 1-1 at 84.

example, URLs for medical conditions contained within them the name of the condition; therefore, when communications between BCH and healthcare consumers through webpages about those conditions were intercepted, the tracking technologies disclosed the precise medical condition to third-party marketers. *See, e.g., id.* (https://www.**childrenshospital**.org/centers/**cancer-and-blood-disorders**-center) (emphasis added); ¶¶ 68-69, 81, 86, 91, 93, 95, 97, 101. The tracking technologies also disclosed the title of each page visited, which further described the substance of the information communicated through the page, such as "Emergency Psychiatry Service | Boston Children's Hospital." *E.g.,* ¶ 81.

The interceptions were designed to enable Google and Facebook to associate the intercepted communications with individuals known to those third parties to facilitate individualized, targeted advertising to those individuals (not just for BCH but also for other businesses that buy advertising through Google and Facebook). The information Google and Facebook used to identify individuals included IP addresses, ¶¶ 35, 50, 57, 71, 77; browser fingerprints (unique combinations of browser and computer settings that confirm the identity of an individual), ¶¶ 70, 72-73, 78, 121 & n.5; and persistent personal identifiers (numbers) assigned by Google or Facebook used to track a particular individual across the BCH Website and other websites. ¶¶ 35, 70, 79.

B. *BCH Deceived Its Patients about Tracking Technologies.*

By design, tracking technologies are invisible to consumers, implemented through hidden code injected by the website owner (BCH) that is not depicted visually in any part of the website observable to the website user. ¶¶ 53-54, 58, 64. BCH did not disclose that any technology used on the website shared communications with third parties such as Google or Facebook and instead promised the exact opposite, stating, among other things: (i) "We do not share voluntarily provided, personally identifiable information for any purpose other than its intended use" (false, given the tracking technologies are designed to identify individuals to Google and Facebook for advertising purposes not disclosed to consumers); (ii) server log information is used only "for site management and administration and to improve the overall performance and user experience on our site" (false because the server logs are used

for undisclosed third-party marketing); and (iii) "We do not sell visitors' personal information to third parties" (yet again false; this is the precise function of tracking technologies). ¶¶ 24-31.

C. *Plaintiff's Communications Intercepted on the BCH Website.*

Plaintiff is a resident of Massachusetts; her minor children are BCH patients. ¶ 11. She regularly used the BCH Website to obtain information about doctors, search for information on symptoms, conditions, and medical procedures, and obtain and review her children's medical records. *Id.* The pages on the BCH Website that Plaintiff visits are the pages on which BCH used the tracking technologies, and the substance of her communications was intercepted in the same manner as the examples Plaintiff presents in her complaint. ¶¶ 12, 85-89, 94-96, 103-12.

Woven throughout BCH's brief is its repeated refrain that Plaintiff alleges only "generic" and "hypothetical" allegations. MTD 2, 4, 5, 12, 15. This is not true. Plaintiff identifies several specific pages she visited, some by specific URL, including the "Find-a-Doctor" page (*see* ¶¶ 12, 95-96) (https://doctors.childrenshospital.org/search) and more critically, the BCH patient portal (*see* ¶¶ 12, 103-12). Plaintiff also alleges that she communicated with BCH about particular symptoms, conditions, and medical procedures, and that BCH intercepted those communications, too. ¶¶ 12, 85-89. She does not identify her children's symptoms, conditions, and procedures, but her communications were intercepted in the same fashion as the examples she presents, *id.*, and, as argued below, Plaintiff need not abdicate her children's privacy by disclosing to the world her children's "specific symptoms, conditions, [and] medical treatments" (MTD 2) in order to vindicate privacy rights, *see* § III-C, *infra*.[3]

Because of how BCH configured its website, BCH disclosed to Google, Facebook, and other third parties Plaintiff's (and her children's) status as a BCH patient, the identity of her children's doctors, information about her children's medical procedures, and her identity, confirmed through her IP address,

---

[3] If BCH means Plaintiff must allege the precise text BCH intercepted from her, similar to the examples she provides, *see. e.g.,* ¶ 86, BCH proposes an impossible standard, as those examples were created using special tools that record network traffic at the time of website browsing. ¶¶ 58, 67. Plaintiff had no reason to use those tools when she accessed the website because she was unaware of the interceptions. *In re TikTok, Inc. In-App Browser Priv. Litig.*, 2024 U.S. Dist. LEXIS 178597, at *21 (N.D. Ill. Oct. 1, 2024) (describing "'chicken and the egg' problem that frequently arises in data-privacy cases, in which plaintiffs often lack knowledge of when or how their data is being used by the defendant's platform and can find out only through discovery.").

browser fingerprints, and persistent identifiers assigned to her by Google and Facebook. ¶¶ 12, 85-89, 94-96, 103-12. Plaintiff neither knew of nor consented to the interceptions or disclosures. ¶ 13.

## III. ARGUMENT

### A. *Plaintiff States a Claim for Violation of the ECPA.*

BCH violated the ECPA by enabling third parties, including Google and Facebook, to eavesdrop on healthcare consumers' communications with BCH through the BCH website, without consumers' knowledge or consent. BCH makes two arguments for dismissal of the ECPA claim—first, that it was a party to the communications and therefore may assert a one-party consent defense (and that the crime-tort exception to that defense does not apply); and second, that the interceptions did not involve the "contents" of any communication. Both arguments lack merit.

#### 1. Plaintiff Adequately Alleges the Crime-Tort Exception to One-Party Consent.

Although the ECPA provides a defense if **either party** to a communication consents to its interception, the ECPA imposes a **two-party** consent requirement (thus requiring the consent of **both** BCH **and** Plaintiff) if a communication "is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any state." 18 U.S.C. § 2511(2)(d). BCH assumes Plaintiff's claims turn upon proof of a violation of a December 2022 Department of Health and Human Services Bulletin ("HHS Bulletin"). MTD 3-5. BCH argues such proof fails because "portions" of that Bulletin were vacated in *Am. Hosp. Ass'n v. Becerra*, 2024 U.S. Dist. LEXIS 108847 (N.D. Tex. June 20, 2024). BCH is wrong for several reasons.

##### a. Plaintiff's ECPA Claim Does Not Depend upon a HIPAA Violation.

***First***, Plaintiff does not rely on the HHS Bulletin, or even HIPAA more generally, to invoke the crime-tort exception. Instead, she also alleges that BCH acted with tortious intent based upon Massachusetts statutory and common law torts for which she asserts claims. ¶¶ 157-58, 168-86, 196-207.[4]

[4] ¶¶ 172-73 ("The party exception…does not permit a party…to escape liability if the communication is intercepted for the purpose of committing any tortious or criminal act…. Boston Children's intentionally intercepted the contents of Plaintiff's and Class Members' electronic communications for the purpose of committing a tortious act in violation of the Constitution

The torts include intrusion upon seclusion and disclosure of private facts (two torts codified by the Massachusetts Right to Privacy Act ("MRPA")),[5] breach of fiduciary duty, and breach of confidence. Although the precise elements of those torts vary, the tortious purpose Plaintiff alleges for each is the same—the intentional disclosure to third parties of communications in contradiction to BCH's own published policies and consumers' reasonable expectations of privacy. None of those claims requires a HIPAA violation to prove the claim. **Every** Massachusetts court to consider those claims in cases relating to tracking technologies has **affirmed** such claims without reference to HIPAA, even where healthcare wasn't involved. *See* §§ III-C, D, E, *infra*.

Those decisions include this Court's decision in *Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 152 (D. Mass. 2024). BCH attempts to distinguish *Tenet* (MTD 5-6) and other Massachusetts cases that are unfavorable to its arguments as predating *Becerra*. There is no suggestion in *Tenet* that its holdings construing Massachusetts law (or the holdings of the four Superior Court justices that have upheld similar claims, *see* §§ III-C, D, E, *infra*) were dependent upon the HHS Bulletin that *Becerra* concerned. Indeed, the notion that *Becerra* resulted in a sea change on the law relating to tracing technologies is undermined by the **well over a dozen** post-*Becerra* cases cited in this brief affirming claims like those Plaintiff asserts here, including several, described below, specifically holding that *Becerra* is irrelevant.

Similarly, the fact that Plaintiff declines to publicly disclose her children's private medical information provides no basis to distinguish *Tenet* and the other Massachusetts cases affirming similar claims. To repeat, the facts here, if anything, are substantially more egregious than in *Tenet*, given that BCH used tracking technologies throughout its patient portal. Notably, in the Superior Court prior to removal, BCH made the same factual challenges to Plaintiff's original complaint, arguing that Plaintiff

---

or laws of the United States or of any State—namely, violation of HIPAA and the FTC Act, **as well as the other causes of action set forth in this complaint**.") (emphasis added); ¶¶ 183-201, 211-22 (Massachusetts statutory and common law tort claims).

[5] The MRPA codifies common law torts and thus provides remedies for the "tort [for] invasion of privacy." *Transamerica Ins. Co. v. KMS Patriots*, 52 Mass. App. Ct. 189, 195-96 (App. Ct. 2001); *Kelley v. CVS Pharmacy, Inc.*, 23 Mass. L. Rep. 87, 4-5 (2007) (MRPA creates "statutory tort of invasion of privacy"); *Peckham v. Bos. Herald, Inc.*, 48 Mass. App. Ct 282, 283 (App. Ct. 1999) (MRPA creates a "tort claim of public disclosure of private facts"); *Commonwealth v. McCarthy*, 484 Mass. 493, 510 & n.18 (2020) (MRPA "creates a cause of action for tort liability").

failed to plead sufficient specifics about her interactions on the website.[6] The Superior Court expressly rejected those arguments, finding that Plaintiff's allegations were sufficient to put BCH on notice of the claims against it.[7] Plaintiff's Amended Complaint (the one now before the Court) adds more detail, including by clarifying that the pages Plaintiff visited were the same as those on which BCH deployed hidden tracking technologies and that her communications were intercepted in the same manner as the examples she presents. ¶ 12. Plaintiff's allegations are sufficient.

Plaintiff's well-pled allegations regarding intentional torts under Massachusetts law (including the **unchallenged** state of mind allegations for each tort[8]) satisfy the crime-tort exception for the ECPA's one-party consent rule. *See, e.g., In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) (holding "tort claims may lie against health care providers over their use of the Pixel," and "the crime-tort exception [may] appl[y]" based on such torts); *Jarrell v. Adena Health Sys.*, 2025 U.S. Dist. LEXIS 6169, at *6-13 (S.D. Ohio Jan. 13, 2015) (state law privacy claim satisfies crime-tort exception); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901-02 (C.D. Cal. , 2024) (same).

b. Plaintiff Also Alleges a HIPAA Violation

Plaintiff also alleges a HIPAA violation. BCH's argument on that issue (MTD 8-9) fails to grapple with a core fact—BCH deployed tracking technologies in its patient portals. Ignoring such allegations, BCH remarkably cites *Becerra*, arguing *Becerra* opened the door for all use of tracking technologies on healthcare provider websites, regardless of how the technologies are implemented, what communications they intercept, or businesses' disclosure to patients. *Becerra* is not so broad. Even as to the HHS Bulletin at issue in *Becerra*, *Becerra* didn't vacate it entirely. Instead, *Becerra* vacated only one part of *Becerra* relating to a so-called "Proscribed Combination" of an "IP address" and a public webpage "addressing specific

[6] *See* Memorandum in Support of Defendant the Children's Hospital Corporation's Motion to Dismiss Plaintiff's Complaint at 2-3, 13-14 (attached hereto as **Exhibit 1**).

[7] *See* Memorandum of Decision and Order on Defendant's Motion to Dismiss at 8-9 (attached hereto as **Exhibit 2**).

[8] BCH's challenges the adequacy of Plaintiff's allegations as to certain elements of each Massachusetts claim but not the element of state of mind. *See* MTD 12-17. The unchallenged allegations of tortious intent are all that matters under the crime-tort exception: "[T]he focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious." *R.S. v. Prime Healthcare Servs.*, 2025 U.S. Dist. LEXIS 6338, at *12 (C.D. Cal. Jan. 13, 2025) (quotation omitted).

health conditions or healthcare providers." It held that disclosure of those two facts, standing alone, is insufficient for a HIPAA violation. 2024 U.S. Dist. LEXIS 108847, at *6-7.

Plaintiff's allegations here do not focus on that "Proscribed Combination." Although the complaint describes how tracking technologies were used on some public-facing pages, Plaintiff also alleges that BCH deployed the tracking technologies within its patient portal, which Plaintiff visited. Those portal pages are **not** public-facing webpages like those at issue in *Becerra*. In a landmark decision against Facebook concerning Meta Pixel, the court held that "patient status is protected health information under HIPAA," and therefore, intercepted webpage communications "which show[] patient-status constitute[] protected health information." *Meta Pixel Healthcare*, 647 F. Supp. 3d at 792-93. Pages showing "a user is about to log in to a healthcare provider's website" reveal "patient status." *Id.* Plaintiff here alleges much more than that—BCH used tracking technologies not only on the login page for its portal but also within the portal itself, unambiguously disclosing patient status and making its conduct among the most offensive of the healthcare businesses that have been sued.[9]

Plaintiff also alleges more than identification by "IP address" (what *Becerra* addressed). She also describes browser fingerprints (which can confirm identity with 99.24% accuracy) and persistent identifiers assigned by Facebook and Google, and how combining those identifiers permits Google and Facebook to affirmatively identify individuals. ¶¶ ¶¶ 35-70, 72-73, 78-79, 121. This is the precise function of the tracking technologies' use of multiple forms of identifying information; the combination permits Google and Facebook to sufficiently confirm identity and to use the interceptions for individualized advertising. *Kurowski,* 2024 U.S. Dist. LEXIS 126837, at *17-19 (disclosure of IP addresses, with browser fingerprints and other identifiers, combined with health information, violates HIPAA).

[9] BCH cites cases (MTD 6) where the allegations were not clear on whether tracking technologies operated within the patient portals. To be clear, here, counsel's investigation, reflected in the complaint (¶¶ 103-12), reveals that BCH deployed tracking technologies within the portal, resulting in disclosures to Google that individuals accessed particular medical records such as "Diagnostic Tests" or acted to "renew…medications." *E.g.,* ¶¶ 110-11. Plaintiff also alleges that she accessed her children's medical records in the patient portal, resulting in similar unauthorized disclosures. ¶¶ 11-13. Plaintiff does not disclose the actual contents of her children's medical records, but her allegations are as clear as they can be, without abdicating her children's privacy, that the tracking technologies operated in the portal, resulting in authorized interceptions and disclosures.

To the degree *Becerra*, apart from its holding regarding the HHS Bulletin, also construes HIPAA directly, those statutory constructions do not bind this Court or require that it ignore other persuasive authority construing HIPAA more broadly. Consistent with *Becerra*'s limited reach, courts find HIPAA violations to support the crime-tort exception without considering the HHS Bulletin and its "Proscribed Combination." *Gaige v. Exer Holdings Co., LLC*, 2025 U.S. Dist. LEXIS 17146, at *10 (C.D. Cal. Jan. 30, 2025) (holding *Becerra* does **<u>not</u>** preclude invoking HIPAA under the ECPA's crime-tort exception, reasoning that "Plaintiff's claims are not premised on a violation of HHS guidance, but rather are based on violations of various statutes and common law"); *Doe v. Bayhealth Med. Ctr. Inc.*, 2025 Del. Super. LEXIS 154, at *16-17 (Super. Ct. Apr. 2, 2025) (affirming ECPA claim, reasoning "the HHS guidance vacated by *Becerra* has no impact on a plaintiff's disclosure allegations when the plaintiff's claims are based on statutory and common law violations"); *Kurowski*, 2024 U.S. Dist. LEXIS 126837, at *17-20 (finding HIPAA violation even though declining to rely on HHS Bulletin, given interceptions involved users' "patient statuses" and identifiers other than IP address).

c. Plaintiff Alleges Criminal and Tortious Purpose.

BCH argues (MTD 8) that Plaintiff fails to allege a criminal or tortious "purpose" because BCH did not operate with an "intent to harm."[10] The ECPA's crime-tort exception does not impose a specific intent requirement. As one court recently explained in a similar wiretap case against a healthcare provider:

> A party does not have to say, in effect, "I want to commit a crime," or "today is a great day to commit a tort." The text points to the "purpose of committing any criminal or tortious act." …. The purpose must be to commit an act, and that act must be criminal or tortious. If the purpose is to do X, and if X is a crime or a tort, then the crime-tort exception to the one-party consent rule applies. A desire to commit a crime *qua* crime, or a tort *qua* tort, isn't necessary.

*Stein v. Edward-Elmhurst Health,* 2025 U.S. Dist. LEXIS 31273, at *14 (N.D. Ill. Feb. 21, 2025). Put another way, "the phrase 'for the purpose of' does not require that a party act with knowledge that its intended use of the intercepted communication is illegal," that is, a "heightened willfulness requirement"; instead,

[10] The "intent to harm" standard BCH references (MTD 8) relates to a different ECPA provision (an exception to one-party consent where there is a purpose of committing an "injurious act"), as BCH's authority makes clear. *Boddie v. Am. Broad. Cos.*, 881 F.2d 267, 270 (6th Cir. 1989). That provision has since been removed from the ECPA, and Plaintiffs do not rely on it.

the ECPA simply requires the "*mens rea*…of the underlying torts or crimes." *Kurowski,* 2024 U.S. Dist. LEXIS 126837, at *12-13.[11] Here, that means BCH must have "actively chose[n] to employ the tracking technology on certain pages of its website that were likely to contain" personal information. *Id.* at 14. Plaintiff meets that requirement—she alleges BCH has the power to decide what tracking technologies it uses on its website and chose to implement them secretly. ¶¶ 54, 61-63.

BCH's financial motive (*see* MTD 9) does not immunize it from liability. "Many crimes and torts are motivated by a desire to make money, and it 'defies common sense that a clearly harmful act could escape liability as long as it was done for profit.'" *Kurowski*, 2024 U.S. Dist. LEXIS 126837, at *16 (quoting *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 928 n.4 (D. Minn. 2024)). "[N]othing in [the ECPA] requires that a party act with the *sole*[12] purpose of committing the underlying crime or tort"; accordingly, secretly deploying tracking technologies to improve "profit margins…does not mean [the defendant] didn't also 'consciously desire' to make unauthorized disclosures" of patient communications. *Id.; Lugo v. Inova Health Care Servs.*, 2025 U.S. Dist. LEXIS 55590, at *21 (E.D. Va. Mar. 25, 2025) ("Courts around the country…have upheld ECPA claims…where the alleged criminal purpose for the interception was a violation of HIPAA or a state health privacy law, despite the healthcare provider having an additional commercial, marketing, or advertising purpose"); *Cooper v. Mt. Sinai Health Sys., Inc.*, 2024 U.S. Dist. LEXIS 134570, at *26 (S.D.N.Y. July 30, 2024) ("Mount Sinai's broad theory that the presence of a primary financial motive inoculates a defendant from liability under the ECPA is wrong.").[13]

[11] *Brahm v. Hosp. Sisters Health Sys.,* 2024 U.S. Dist. LEXIS 114827, at *13-16 (W.D. Wis. June 28, 2024) (crime-tort exception satisfied where "plaintiff alleges that defendants intercepted patients' electronic communications *for the purposes* of making disclosures that violated HIPAA"); *R.S.*, 2025 U.S. Dist. LEXIS 6338, at *14 ("intent to disclose [the] information" sufficient for exception); *A.J. v. LMND Med. Grp., Inc.*, 2024 U.S. Dist. LEXIS 194480, at *3-4 (N.D. Cal. Oct. 25, 2024) (affirming ECPA claim based on purpose of disclosing communications that HIPAA protects).

[12] BCH's own authority confirms that "the existence of a lawful purpose does not mean that the interception is not also for a tortious or unlawful purpose." *Sussman v. ABC*, 186 F.3d 1200, 1202 (9th Cir. 1999).

[13] *R.S.*, 2025 U.S. Dist. LEXIS 6338, at 18-19 ("The Court joins those courts that have held a monetary purpose does not insulate a party from liability under the ECPA."); *In re BetterHelp, Inc. Data Disclosures Cases*, 2024 U.S. Dist. LEXIS 124321, at *15 (N.D. Cal. July 15, 2024) ("trying to make money" consistent with criminal purpose relating to HIPAA); *Castillo v. Costco Wholesale Corp.*, 2024 U.S. Dist. LEXIS 207197, at *18-19 (W.D. Wash. Nov. 14, 2024) (same); *R.C.,* 733 F. Supp. 3d at 901 ("[E]ven where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims.").

BCH is also wrong to argue (MTD 8) that Plaintiff fails to allege a tortious or criminal purpose "independent of" the interception. Plaintiff alleges that BCH injected hidden tracking technologies onto its website (the act giving rise to ECPA liability) to disclose confidential communication and facilitate the subsequent misuse by third parties, violating HIPAA and statutory and common law torts. ¶¶ 5-6, 23, 117, 123, 126, 135, 137, 166, 171, 175, 177-79, 181, 185, 187-89, 191, 197-98, 200, 215-19. Where, as here, there are clear allegations that a business (i) injects tracking technologies for (ii) the purpose of a tortious disclosure to third parties, the better-reasoned cases hold that tortious disclosure of the intercepted communications supports the crime-tort exception. *Stein*, 2025 U.S. Dist. LEXIS 31273, at *12-17 (finding independent upon careful analysis of ECPA statutory text, observing "[c]ourts from coast to coast have recognized that a violation of HIPAA can give rise to the crime-tort exception"); *Jarrell*, 2025 U.S. Dist. LEXIS 6169, at *7-8 (common law privacy claim is "an independent tort…that…arises not from the mere *interception* of Plaintiff's [communications], but from the *disclosure* of that…material to third parties," and observing that defendants' argument, if accepted, would mean that "tortfeasors under the ECPA would enjoy a bizarre defense to liability as a reward for their efficiency.").[14]

Finally, the rule of lenity (*see* MTD 11) applies only if "there is a grievous ambiguity or uncertainty in the statute." *Muscarello v. United States*, 524 U.S. 125, 138-39 (1998) (citation omitted). The rule is one "of last resort, [applied] only when none of the other canons of statutory interpretation is capable of resolving the statute's meaning[.]" *Adams v. Holder*, 692 F.3d 91, 107 (2d Cir. 2012) (citation omitted). Rejecting the application of lenity to tilt the scales in favor of businesses in construing wiretap law, the Ninth Circuit reasoned: "[W]e do not resort to the rule of lenity every time a difficult question of statutory interpretation arises. Rather, 'the rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a 'grievous ambiguity or uncertainty in the statute.''" *Joffe v. Google, Inc.*, 746

[14] *Gay v. Garnet Health*, 2024 U.S. Dist. LEXIS 168515, at *8 (S.D.N.Y. Sept. 16, 2024) (in carefully reasoned decision, holding "[t]he Complaint sufficiently alleges an independent action secondary to the interception"—the "use[]" of "the content of [the] communications… [by] Facebook [and] Google") (collecting and analyzing authorities); *R.S.*, 2025 U.S. Dist. LEXIS 6338, at *16 ("R.S. does not allege that Prime Healthcare's interception *itself* violated HIPAA…. Instead, R.S. asserts that the violation stems from Prime Healthcare's intentional *disclosure* of the collected Private Information, which constitutes a 'further impropriety' independent …[of] Prime Healthcare's *interception*.").

F.3d 920, 935-36 (9th Cir. 2013); *James v. Walt Disney Co.*, 2023 U.S. Dist. LEXIS 200997, at *40 (N.D. Cal. Nov. 8, 2023) (similar). BCH identifies no grievous ambiguity requiring resort to the rule of lenity.

2. Plaintiff Alleges the Interception of the Contents of Her Communications

BCH argues Plaintiff alleges no "contents" of any intercepted communication because no "substance" was revealed. MTD 11-12. Plaintiff alleges interceptions that revealed patient status, including through BCH's injection of hidden tracking technologies onto its MyChildren's Patient Portal. *See* § II-A, C. Interceptions that disclose patient status disclose "contents." *Meta Pixel Healthcare*, 647 F. Supp. 3d at 795-96 (website communications involve "contents" if they reveal patient status); *M.G.*, 2024 U.S. Dist. LEXIS 166534, at *12 (same); *Castillo,* 2024 U.S. Dist. LEXIS 207197, at *15 (same).

Plaintiff additionally details in her complaint how BCH configured its website to use descriptive URLs, which, when intercepted, reveal the substance of the information a consumer requests and BCH provides in response, including the precise actions taken within the MyChildren's Patient Portal, the identity of patients' doctors, and the specific names of patients' medical conditions and procedures. *See* §§ II-A, *supra*. Given these allegations, BCH's suggestion that navigating through webpages cannot involve "contents" "misses the mark" because "[o]ften, a location identifier [i.e., a URL]…comprises part of a communication's substance." *In re Google, Inc.*, 806 F.3d 125, 136 (3d Cir 2015). Where descriptive URLs are used, "the categories of content and non-content [record information] overlap and are not mutually exclusive." *Doe v. Post Acute Med., LLC*, 2025 U.S. Dist. LEXIS 26667, at *13 (M.D. Pa. Feb. 14, 2025); *Meta Pixel Healthcare*, 647 F. Supp. 3d at 795 ("descriptive URLs" are "'contents'").[15]

B. *Becerra Is Irrelevant to Plaintiff's Massachusetts Claims.*

BCH argues that "every one of Plaintiff's claims is premised on the alleged disclosure of PHI," and that the Court should disregard a "handful" of Massachusetts judges (including this Court) that have affirmed state law claims under similar facts because those decisions predated *Becerra*. MTD 6, 13 & n.4.

---

[15] *Castillo* 2024 U.S. Dist. LEXIS 207197, at *15 (URLs disclosing "underlying health conditions" are "contents"); *M.G. v. Therapymatch*, 2024 U.S. Dist. LEXIS 166534, at *12 (N.D. Cal. Sept. 16, 2024) (same); *R.C.*, 733 F. Supp. 3d at 902 ("descriptive URLs" are contents); *Yoon v. Meta Platforms, Inc.*, 2024 U.S. Dist. LEXIS 234457, at *13-15 (N.D. Cal. Dec. 30, 2024) (same).

To repeat: **<u>none</u>** of Plaintiff's claims depend on or even reference the HHS Bulletin that *Becerra* addresses. ¶¶ 162-238. Plaintiff's claims for negligence and breach of confidence reference HIPAA but only as one of several bases for a duty underlying those claims. ¶¶ 207, 213. BCH cites **<u>no</u>** authority holding any Massachusetts claim is limited to circumstances where a party violates the HHS Bulletin or HIPAA; *Becerra* has no role in construing Massachusetts law. *Doe v. Partners Healthcare Sys.*, No. 1984CV01651-BLS1 (Mass. Super. Ct. Nov. 20, 2020) at 39 (motion to dismiss decision and transcript attached as **Exhibit 3**) (Judge Davis: "I agree with you that I think HIPAA is a bit of a red herring…. I'm not persuaded that HIPAA really has much of a role to play in the analysis that I have to undertake.").

C. *Plaintiff States a Claim under the MRPA.*

The MRPA, M.G.L. c. 214 § 1B, codifies "in broad terms" certain common law privacy torts. *See Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 409 Mass. 514, 519 (1991). Plaintiff invokes two theories of tort liability under the MRPA—(i) intrusion upon seclusion and (ii) public disclosure of private facts, ¶¶ 170-74, two torts that the Massachusetts Supreme Judicial Court ("SJC") has expressly held are incorporated within the MRPA's "broad" terms, *Polay v. McMahon*, 468 Mass. 379, 382-84 (2014).

Applying these alternative tort theories, this Court and four Massachusetts Superior Court justices have each concluded that the surreptitious use of tracking technologies states a claim for violation of the MRPA. *Tenet*, 731 F. Supp. 3d at 152; *Doe v. Emerson Hosp.*, 2023 Mass. Super. LEXIS 673, at *11-12 (Super. Ct. Nov. 22, 2023); *Doe v. Bos. Med. Ctr. Corp.*, 2023 Mass. Super. LEXIS 674, at *11-12 (Super. Ct. Sep. 14, 2023); *Alves v. BJ's Wholesale Club, Inc.*, 2023 Mass. Super. LEXIS 59, at *13-17 (Super. Ct. June 21, 2023); *Partners Healthcare*, Ex. 3 (hereto) at 44 (plaintiff "states a viable claim for invasion of the right of privacy" under MRPA based on the same allegations as those here). The SJC has also "emphasize[d]" in a case similar to this one "that the Legislature has provided…statutory and common-law causes of action…directly applicable to misrepresentations or misuse of private medical information" that are likely "cognizable" under the facts alleged here, including the MRPA. *Vita v. New England Baptist Hosp.*, 494 Mass. 824, 849-50 (2024). **<u>There is no contrary authority</u>**.

BCH argues these decisions predated *Becerra*, but as argued above (§ III-A-1-a & III-B, *supra*), *Becerra* does not construe nor limit Massachusetts law. In fact, *Alves* affirmed such a claim against an ordinary retailer not involved in healthcare (BJ's Wholesale Club), underscoring that the MRPA applies broadly to surreptitious interceptions of communications, particularly where such interceptions contradict a company's promises made in published policies. 2023 Mass. Super. LEXIS 59, at *13-17.

BCH also attempts to distinguish these cases by arguing the Complaint lacks details on the interceptions Plaintiff experienced. Plaintiff, however, describes her use of the MyChildren's Patient Portal to access her children's medical records and how BCH designed its website to intercept those communications, revealing patient status. ¶¶ 11-12, 103-12. She also alleges that BCH intercepted the identity of her children's doctors and particular symptoms, conditions, and medical procedures. ¶¶ 11-13, 85-89, 94-96. She doesn't disclose those doctors by name or identify her children's conditions, but, if BCH means to argue that Plaintiff must, to vindicate privacy rights, identify in her complaint her children's precise medical conditions and procedures, that is wrong. *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1004 (N.D. Cal. 2024) ("Plaintiffs do not need to plead the specific and presumably highly sensitive contents of the communications they say were intercepted in order to plausibly allege that interception occurred"); *Emerson*, 2023 Mass. Super. LEXIS 673, at *11-12 (rejecting similar argument that complaint "reveals little about the information that Plaintiff entered on its website" in connection with MRPA claim) (citing *Bos. Med. Ctr.*, 2023 Mass. Super. LEXIS 674). Plaintiff provides sufficient detail to provide BCH notice of the claims against it. *See also* Ex. 2 at 8-9 (attached hereto) (motion to dismiss decision on Plaintiff's original complaint **<u>in this case,</u>** rejecting same argument).[16]

BCH's citation to *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 843 (N.D. Ill. 2023), for the suggestion that a plaintiff must disclose her medical condition or similar private information to be a plaintiff is negated by a later decision in that same case, where the court affirmed the sufficiency of

[16] The Superior Court allowed plaintiff to proceed in pseudonym, but BCH may well later challenge that *ex parte* ruling, a strategy that appears to be part of the defendants' playbook in these cases: to challenge the right to proceed in pseudonym in the hopes that plaintiffs will abandon their case rather than exacerbate the privacy violations by disclosing publicly their private medical information (or worse, here, Plaintiff's **<u>children's</u>** private information).

allegations very similar to those here, which described the types of information intercepted without disclosing the names of the plaintiff's doctors or her specific medical conditions. *Kurowski v. Rush Sys. for Health*, 2023 U.S. Dist. LEXIS 219895, at *7-8 (N.D. Ill. Dec. 11, 2023).

As to intrusion upon seclusion, allegations of "electronic surveillance" state an MRPA claim; whether such surveillance violates the statute in a particular case "presents a question of fact." *Polay*, 468 Mass. at 382-84 (2014). Because BCH deployed tracking technologies within its MyChildren's patient portal, its conduct is even more egregious than the several cases that have affirmed MRPA cases under *Polay* where interceptions only on public webpages were alleged. *Bos. Med. Ctr.*, 2023 Mass. Super. LEXIS 674, at *11-12; *Emerson*, 2023 Mass. Super. LEXIS 673, at *11-12; *Alves*, 2023 Mass. Super. LEXIS 59, at *13-17.[17] In any event, even without those allegations, Plaintiff states a claim because interceptions from a public webpage are within the MRPA's scope, given the MRPA is broader than the common law[18] and applies even where "an individual's conduct is observable by the public" if the "electronic surveillance" is contrary to an individual's "reasonable expectation of privacy." *Polay*, 468 Mass. at 384.

BCH's argument that Plaintiff "does not allege information was published to any *person*" (MTD 14) is inexplicable. Unless BCH means to argue that Google and Facebook are not "persons" (an argument it doesn't develop if that's the argument), BCH's argument disregards allegations that overflow from Plaintiff's complaint regarding tortious disclosures to Google, Facebook, and other third parties.

In addition to the particularly offensive deployment of tracking technologies on its patient portal, another fact is important—BCH lied to consumers about tracking technologies. ¶¶ 24-31. False promises bolster a claim for intrusion upon seclusion and distinguish this case from those BCH cites (MTD 10) to argue consumers should expect interceptions. *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 602 (9th Cir. 2020) (affirming intrusion upon seclusion claim where "tracking" contradicted "privacy

---

[17] Consistent with *Polay*, BCH's own authority confirms that "unwanted surveillance" states a claim. *Clark v. Zwicker & Assocs., P.C.*, 2024 U.S. Dist. LEXIS 82882, at *17-18 (D. Mass. May 7, 2024).

[18] For cases upholding such claims even under the common law rule, *see, e.g., M.R.*, 2024 U.S. Dist. LEXIS 155513, at *16-17 (affirming intrusion claim based on tracking technologies used on public parts of healthcare website); *Doe v. Bon Secours Mercy Health*, 2021 Ohio Misc. LEXIS 3985, at *12 (Ct. Com. Pl. Nov. 22, 2021) (same); *Lamarr v. Goshen Health Sys., Inc.*, 2024 Ind. Super. LEXIS 107, at *16-17 (Super. Ct. Oct. 3, 2024) (same).

disclosures"); *Google*, 806 F.3d at 150-52 (reversing dismissal of intrusion upon seclusion claim where Google's practices contradicted its own disclosures).[19]

BCH's deception also rebuts its claim (MTD 14) of a "legitimate business purpose." Plaintiff's claim does not challenge BCH's mere **use** of tracking technologies; instead, Plaintiff alleges BCH made false promises to consumers about such technologies. Whatever reasons a business may have to use tracking technologies, there is no legitimate reason to lie to patients regarding them.[20]

As to Plaintiff's claim for disclosure of private facts (¶¶ 186-88), BCH argues only (MTD 12-13) that the intercepted communications were not sufficiently personal or intimate. Again, this is a remarkable position to take, given BCH's conduct was especially problematic in that it revealed communications within the MyChildren's Patient Portal—facts worse than the cases already upholding MRPA disclosure claims. *Emerson*, 2023 Mass. Super. LEXIS 673, at *11-12; *Tenet Healthcare*, 731 F. Supp. at 151-52.[21]

D. *Plaintiff States a Claim for Breach of Fiduciary Duty.*

BCH's only argument regarding Plaintiff's claim for breach of fiduciary duty is that a patient's interaction on the BCH Website is not "within the scope" of any fiduciary duty BCH owes to patients. BCH's primary authority on this issue—*Korper v. Weinstein*, 57 Mass. App. Ct 433 (App. Ct. 2003)—is distant from the facts here; the conduct giving rise to purported liability—a patient-physician affair—had no logical connection to the fiduciary relationship. That is not so here, given that the website was designed for use by patients. ¶¶ 17-19.[22] In *Emerson*, the court, applying Massachusetts law, rejected the same

[19] *See also Meta Pixel Healthcare*, 647 F. Supp. 3d at 799-800 (defendant's violation of own "policies…tend[s] to support" a "fairly strong" intrusion claim); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1076 (N.D. Cal. 2021) (intrusion claim where company's "privacy disclosures…failed to acknowledge [the] tracking …[and] suggest[ed] that users' information would not be tracked"); *Doe v. Medstar Health, Inc.*, 2020 Md. Cir. Ct. LEXIS 139, at *6 (Cir. Ct. Aug. 5, 2020) (tracking technologies contradicted "express promises of privacy to patients"); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 864-65 (C.D. Cal. 2024) (allegations that tracking technologies implemented "surreptitiously" supports invasion of privacy claim).

[20] In BCH's authority on "legitimate business purposes," the defendant's conduct was specifically "authorized," in contrast to here, where BCH failed to obtain any authorization. *See Squeri v. Mt. Ida Coll.*, 954 F.3d 56, 69-70 (1st Cir. 2020).

[21] *See also Brahm*, 2024 U.S. Dist. LEXIS 114827, at *19-21 ; *Medstar*, 2020 Md. Cir. Ct. LEXIS 139, at *6 (same); *Lamarr*, 2024 Ind. Super. LEXIS 107, at *17-18 (same); *R.C.*, 733 F. Supp. 3d at 888-95.

[22] BCH's only other Massachusetts authority that remotely touches upon medical issues, *Kelley*, 23 Mass. L. Rep. 87, involved much different facts. In *Kelley*, a pharmacy shared a list of consumers receiving certain prescriptions to a vendor to send mailings paid for by a pharmaceutical company. No information was provided to the pharmaceutical company, and the vendor

argument BCH makes here—that patient communications on a hospital's website are not sufficiently related to the fiduciary doctor/patient relationship. *Emerson*, 2023 Mass. Super. LEXIS 673, at *5-7.

Every other Massachusetts court that has considered a fiduciary duty claim for surreptitious use of tracking technologies has affirmed such a claim. *Tenet*, 731 F. Supp. 3d at 149-51; *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *10-12; *Partners Healthcare* (margin order, attached as Ex. 3) (affirming breach of fiduciary duty claim); *Vita*, 494 Mass. at 849-50 (fiduciary duty claim "cognizable" for secret use of tracking technologies).[23] BCH's conduct reflects an even more egregious fiduciary breach compared to the facts alleged in Massachusetts cases affirming fiduciary duty claims, given BCH's deployment of hidden tracking technologies throughout the MyChildren's Patient Portal.

Plaintiff responds to BCH's damages argument in § III-H, *infra*.

E. *Plaintiff States a Claim for Breach of Confidence.*

BCH's only arguments against Plaintiff's claim for breach of confidence (MTD 16-17) are that it is "duplicative" of her breach of fiduciary claim and fails for the "same reasons." As BCH recognizes, the SJC has held that "a duty of confidentiality arises from the physician-patient relationship, and that a violation of that duty resulting in damages, gives rise to a cause of action sounding in tort." *Alberts v. Devine*, 395 Mass. 59, 68-69 (1985). Although the SJC described its holding as arising in part from the "fiduciary obligation to hold in trust confidential information," *id.,* it announced a new cause of action, drawing upon several sources rather than merely construing a breach of fiduciary duty.

There is also no basis to dismiss this claim for inadequate factual allegations, for the same reasons as for Plaintiff's claim for breach of fiduciary duty, particularly given BCH's deployment of tracking technologies within the MyChildren's Patient Portal.

---

received any information under a confidentiality agreement that forbade it from using the information for other purposes. *Id.* at *5-15. That is quite different than here, where Google and Facebook were free to use the intercepted communications **<u>for their own commercial purposes</u>**. Moreover, there was no suggestion in *Kelley* that consumers were deceived, in contrast to here, where BCH lied to patients by telling them it would not engage in the precise conduct in which it engaged.

[23] For cases affirming such claims under other states' law, *see. e.g., Brahm*, 2024 U.S. Dist. LEXIS 114827, at *17-19 (fiduciary duty breached by eavesdropping through tracking technologies); *Lamarr*, 2024 Ind. Super. LEXIS 107, at *22-24 (same); *Cooper*, 2024 U.S. Dist. LEXIS 134570, at *31-34 (same).

F. *Plaintiff States a Claim for Negligence.*

BCH ignores the most relevant authority affirming negligence claims on the same substantive facts. *Tenet*, 731 F. Supp. 3d at 149 (affirming negligence claim for undisclosed use of tracking technologies under Massachusetts law); *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *9 (same); *see also Vita*, 494 Mass. at 849-50 (negligence claim "cognizable" based on undisclosed use of tracking technologies). In any event, its arguments each lack merit.

***Plaintiff Alleges a Duty.*** The contours of the duty BCH owes to healthcare consumers are informed by privacy law, given that Plaintiff's children are BCH patients. *Bennett v. Eagle Brook County Store, Inc.*, 408 Mass. 355, 358-59 (1990) (even though "violation of a statute does not by itself establish breach of duty," it does provide "some evidence of the defendant's negligence") (quotations omitted). BCH's only argument on duty (MTD 17) is to simply ask the Court to disregard that Plaintiff's children are patients (¶ 11) and assume Plaintiff visited the website "as a member of the general public." The Court should not permit BCH to avoid Plaintiff's express allegations or the reality that its conduct was more offensive than the Massachusetts cases that have affirmed negligence cases, which, unlike here, involved no allegations of deployment of tracking technologies on patient portals.

***Plaintiff Alleges a Breach of Duty.*** BCH's only argument on breach (MTD 17) assumes Plaintiff's negligence claim depends upon a HIPAA violation. Plaintiff **<u>does</u>** allege a HIPAA violation (§ III-A-1-b, *supra*), but in any event, Plaintiff also cites several additional statutory and other sources that may inform the contours of a duty for a negligence claim (including state medical privacy law, *see* ¶ 192). There is no basis to hold that Massachusetts negligence law is limited to HIPAA violations (§ III-B, *supra*).

***Harm.*** Plaintiff responds to BCH's "no harm" argument in § III-H, *infra*.

G. *Plaintiff States a Claim for Breach of Contract.*

BCH's contract arguments ignore its own privacy policy, through which it made false promises to consumers. BCH argues (MTD 18-19) Plaintiff fails to allege "mutual assent" because she does not allege "reliance," but contract law does not require reliance. *Good v. Uber Techs., Inc.*, 494 Mass. 116, 141

(2024). In any event, there is no doubt that BCH assented to the terms of its own policies (it drafted them), and it is plausible that Plaintiff assented too, given her use of the patient portal, which almost certainly involved assent to those policies. Indeed, BCH previously argued that Plaintiff "consented" to the tracking technologies at issue through the same privacy policy.[24] Its prior argument reflects a judicial admission precluding it from now contending that Plaintiff did not assent to BCH's privacy policy.

Even absent an express contract, a contract may be implied at law on the facts here to confer a remedy, as confirmed by the **only** Massachusetts authorities to have considered similar allegations. *Emerson*, 2023 Mass. Super. LEXIS 673, at *8-9; *Tenet*, 731 F. Supp. 3d at 149-50; *see also Vita*, 494 Mass. at 849-50 (implied contract claim "cognizable" based on undisclosed use of tracking technologies).[25]

BCH's argument (MTD 19-20) that there is no "consideration" for an agreement to comply with existing legal obligations disregards the substance of BCH's own policies, which do not simply mirror HIPAA obligations but instead include false promises that it would only share information for specified purposes, not including helping third-party marketers build individual advertising profiles. ¶¶ 25-30.

H. *Plaintiff Sufficiently Alleges Harm.*

BCH's argument that Plaintiff fails to allege "cognizable harm" (an argument it makes **only** for breach of fiduciary duty, negligence, and contract (MTD 15, 18, 20)) ignores Plaintiff's detailed allegations and is contrary to Massachusetts law. BCH assumes wrongly that Plaintiff's summary of damages (¶ 153) are her only relevant allegations. It ignores allegations regarding the significant economic value the intercepted communications have to consumers, BCH, and the third-party eavesdroppers and advertisers that monetize the intercepted communications—that is, there is an established, mature market for the intercepted communications.[26] Such allegations are sufficient this stage, even if expert evaluation of that

[24] *See* Ex. 1 (attached hereto) at 11.

[25] *See also Lamarr*, 2024 Ind. Super. LEXIS 107, at *16-20 (affirming implied contract claim based in part on "failure [of hospital] to comply with [its] privacy policy"); *Bon Secours*, 2021 Ohio Misc. LEXIS 3985, at *13-14; *Elkins v. Bartholomew Cnty. Pub. Hosp.*, 2024 Ind. Super. LEXIS 340, at *7-8 (Super. Ct. Dec. 16, 2024).

[26] ¶¶ 20-23, 32 (describing value of privacy to consumers); ¶¶ 28, 177, 180 (describing "value" BCH obtained in exchange for permitting Google and Facebook to eavesdrop on patient communications, resulting in increased "revenue" for BCH); ¶ 36-37 (describing how Meta Pixel contributes to building of individual profiles from which "Facebook derives most of its

market may later be necessary to quantify damages. *Emerson*, 2023 Mass. Super. LEXIS 673, *5 (allegations that "private medical information was disclosed to Facebook" and defendant "and Facebook monetized [plaintiff's] personal health information without compensating him" sufficient at the pleading stage); *Meta Pixel Tax Filing*, 724 F. Supp. 3d at 1019-24 (allegations of "loss of privacy," "diminution in value," and "loss of the benefit of [the] bargain" sufficient even if not quantified; "[i]f a user shares information with the expectation that it will be protected but the recipient does not actually protect it, then the user has surrendered in that transaction more than she otherwise would have").[27] Similarly, BCH's argument that Plaintiff fails to identify what "specific information" was "disclosed" (MTD 18) ignores allegations on precisely those issues (¶¶ 12, 85-89, 94-96, 103-12).

I. *Plaintiff States a Claim for Unjust Enrichment.*

BCH's sole argument on unjust enrichment is that Plaintiff has an adequate remedy at law. All Massachusetts courts that have considered this claim under the same substantive facts have affirmed this claim, rejecting the precise argument BCH makes here. *Tenet*, 731 F. Supp. 3d at 150-51 (affirming unjust enrichment claim, reasoning a plaintiff "may plead" unjust enrichment and legal remedies "in the alternative"); *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *13-14 (affirming unjust enrichment claim under Massachusetts law); *Emerson*, 2023 Mass. Super. LEXIS 673, at *9-11 (same); *see also Vita*, 494 Mass. at 849-50 (unjust enrichment claim "cognizable" based on hidden tracking technologies).[28]

## IV. CONCLUSION

The Court should deny BCH's motion to dismiss.

---

revenue"); ¶¶ 43-44 (Google Analytics key part of building "detailed profiles on individuals" from which "Google derives a substantial portion of its revenue"); ¶¶ 87-88, 92, 96, (describing precisely how Google and Facebook extracted commercial value from the information intercepted through the tracking technologies). That Plaintiff has not yet quantified damages or presented expert testimony on value does not matter. *Lee v. Conagra Brands, Inc.,* 958 F.3d 70, 80-81 (1st Cir. 2020) (plausible, even if general, allegations of benefit-of-the-bargain damages at pleadings stage sufficient).

[27] *See also Meta Pixel Healthcare*, 2024 U.S. Dist. LEXIS 15391, at *12 (allegation, even without quantification or expert testimony, that "Meta unjustly profited from the data taken," is sufficient); *Gay*, 2024 U.S. Dist. LEXIS 168515, at *17-18 (similar); *Lamarr*, 2024 Ind. Super. LEXIS 107, at *7-8 (similar).

[28] *See also Zelby Holdings, Inc. v. VideogeniX, Inc.*, 92 Mass. App. Ct. 86, 92-93 (App. Ct. 2017) ("Zelby properly pleaded alternative bases for relief, and dismissal of its unjust enrichment claim would be inappropriate as it presupposes the existence of a valid underlying contract."). Other states are in accord. *Brahm*, 2024 U.S. Dist. LEXIS 114827, at *21-23; *Jarrell*, 2025 U.S. Dist. LEXIS 6169, at *21-22; *Lamarr*, 2024 Ind. Super. LEXIS 107, at *21-22 (same); *Elkins*, 2024 Ind. Super. LEXIS 340, at *10.

Dated: April 18, 2025

Respectfully submitted,

*/s/ Patrick J. Vallely*
SHAPIRO HABER & URMY LLP
Edward F. Haber (BBO #215620)
Michelle H. Blauner (BBO #549049)
Patrick J. Vallely (BBO #663866)
One Boston Place
Suite 2600
Boston, MA 02108
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
ehaber@shulaw.com
mblauner@shulaw.com
pvallely@shulaw.com

***Counsel for Plaintiff***

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading was filed electronically through the Court's electronic filing system and that notice of this filing will be sent to all counsel of record in this matter by operation of the Court's ECF system.

Dated: April 18, 2025

*/s/ Patrick J. Vallely*
Patrick J. Vallely