**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JANE DOE, for herself and the class,<br><br>Plaintiff,<br><br>v.<br><br>THE CHILDREN'S HOSPITAL CORPORATION,<br><br>Defendant. | ) | Case No. 1:25-cv-10343-PBS<br><br>**Leave to File Granted on April 25, 2025 Doc. No. 29** |

**DEFENDANT THE CHILDREN'S HOSPITAL CORPORATION'S**
**REPLY IN SUPPORT OF ITS MOTION TO DISMISS**


Lisa Oliver White, BBO# 666841
**SHOOK, HARDY & BACON L.L.P.**
One Federal Street, Suite 2620
Boston, MA 02110
Tel: (617) 531-1411
lowhite@shb.com

Tammy B. Webb (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900
twebb@shb.com

Jad Sheikali (*pro hac vice*)
Tara D. Kennedy (*pro hac vice*)
Avery Epstein (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
111 South Wacker Drive
Chicago, IL 60606
Tel: (312) 704-7700
jsheikali@shb.com
tkennedy@shb.com
aepstein@shb.com

***Attorneys for Defendant***

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

ARGUMENT ........ 1

I. Plaintiff's Allegations Are Insufficient To Support Any Of Her Claims. ........ 1

A. Plaintiff Improperly Premises Her Claims on Disclosure of Her Children's PHI, Not Her Own. ........ 1

B. Plaintiff Fails to Plausibly Allege Facts to Support that Any of Her PHI or Private Information Was Disclosed. ........ 3

II. Plaintiff's Effort To Salvage Her ECPA Claim Is Unavailing (Count I). ........ 5

A. Plaintiff Fails to Allege that BCH Intended to Commit a Crime or Tort. ........ 5

B. Plaintiff Fails To Plausibly Allege An Independent Crime Or Tort. ........ 7

C. Plaintiff Fails to Plausibly Allege the Interception of "Contents." ........ 8

III. Plaintiff Fails To State A Massachusetts Privacy Act Claim (Count II). ........ 9

IV. Plaintiff Fails To State A Claim For Breach Of Fiduciary Duty Or Confidence (Counts III and V). ........ 11

V. Plaintiff's Negligence Claim Should Be Dismissed (Count IV). ........ 12

VI. Plaintiff Fails To State A Claim For Breach Of Contract (Count VI). ........ 13

VII. Plaintiff Fails To Allege Any Damages To Support Her Common Law Claims. ........ 14

VIII. Plaintiff Fails To State A Claim For Unjust Enrichment (Count VII). ........ 15

CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alberts v. Devine*,
479 N.E.2d 113 (Mass. 1985) ....................12

*Alves v. BJ's Wholesale Club*,
2023 WL 4456956 (Mass. Super. June 21, 2023)....................10

*American Hospital Association v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ....................3, 4

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ....................11

*Branson v. Concord Hosp. Inc.*,
No. 217-2024-CV-00295 (N.H. Super. Apr. 28, 2025) ....................5, 11

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)....................6, 8

*Castillo v. Costco Wholesale Corp.*,
2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) ....................9

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023)....................9

*Cordeiro v. Grep Atl., LLC*,
2025 WL 889460 (D. Mass. Mar. 21, 2025)....................15

*Doe v. Boston Med. Ctr. Corp.*,
2023 WL 7105628 (Mass. Super. Sep. 14, 2023)....................10

*Doe v. Genesis Health System*,
2025 WL 1000192 (C.D. Ill. Mar. 18, 2025) ....................6, 7

*Doe v. Post Acute Med., LLC*,
2025 WL 511069 (M.D. Pa. Feb. 14, 2024) ....................9, 11, 14

*Doe v. Tenet Healthcare Corp.*,
731 F. Supp. 3d 142 (D. Mass. 2024) ....................10, 12

*Gay v. Garnet Health*,
2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024)....................8, 14

*Harris v. Gillette Child*,
2025 WL 887442 (D. Minn. Mar. 21, 2025) ....................2

*In re Meta Healthcare Pixel Litig.*,
713 F. Supp. 3d 650 (N.D. Cal. 2024) ........................................................................14

*In re Pharmatrak, Inc.*,
329 F.3d 9 (1st Cir. 2003)...............................................................................................5

*M.G. v. Therapymatch*,
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) ...............................................................9

*Nat'l Coal. Against Violent Athletes v. Dep't of Educ.*,
2020 WL 13876913 (D. Mass. Dec. 3, 2020)................................................................13

*Nienaber v. Overlake Hosp. Med. Ctr.*,
2025 WL 692097 (W.D. Wash. Mar. 4, 2025) ...............................................................8

*Polay v. McMahon*,
468 Mass 379 (2014) ......................................................................................................9

*Shaulis v. Nordstrom, Inc.*,
865 F.3d 1 (1st Cir. 2017)...............................................................................................15

*Stein v. Edward-Elmhurst Health*,
2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ......................................................................8

*Tomasella v. Nestle USA, Inc.*,
962 F.3d 60 (1st Cir. 2020).............................................................................................15

*United States v. McHugh*,
57 F. Supp. 3d 95 (D. Mass. 2014) ..................................................................................6

*United States v. Vest*,
639 F. Supp. 899 (D. Mass. 1986), *aff'd*, 813 F.2d 477 (1st Cir. 1987) ..................................6

*Vita v. New England Baptist Hosp.*,
243 N.E.3d 1185 (Mass. 2024) .......................................................................................10

*Willitts v. Engie N. Am. Inc.*,
2021 WL 2322833 (D. Mass. June 7, 2021)...................................................................12

**Statutes**

18 U.S.C. § 2511(2)(d) ........................................................................................................6

## INTRODUCTION

Plaintiff's Opposition (Doc. No. 27)[1] urges the Court to apply an expansive and untenable interpretation of the Electronic Communications Privacy Act ("ECPA") that would criminalize The Children's Hospital Corporation ("BCH") and dozens of similarly situated businesses—for using ubiquitous marketing technologies for legally permissible purposes. In doing so, she ignores the text of the ECPA and applicable case authority, while exaggerating her sparsely alleged use of BCH's website and the types of information conveyed by browsing or searching BCH's website. Moreover, Plaintiff's argument that her protected health information or other private information ("PHI") was disclosed vis-à-vis her usage of BCH's website is not supported by the actual allegations in her Amended Complaint ("Complaint" or "Am. Compl."). Plaintiff's Opposition vastly overstates the content of her allegations, and is improperly premised on her children's PHI rather than her own, which dooms each of her claims. Accordingly, the Complaint should be dismissed with prejudice.

## ARGUMENT

### I. Plaintiff's Allegations Are Insufficient To Support Any Of Her Claims.

#### A. Plaintiff Improperly Premises Her Claims on Disclosure of Her Children's PHI, Not Her Own.

To start, an important point requires clarification. In the sole paragraph where she alleges any substantive facts about her relationship with BCH, Plaintiff does not allege that *she* was a BCH patient, only that her children were BCH patients. *See* Am. Compl. ¶ 11. BCH raised this point in its Motion (Doc. No. 23 at 11) and Plaintiff does not contest it in her Opposition.[2] But Plaintiff's

[1] Citations to record documents are to the docket page number, "Page x of xx" shown in the top right corner.

[2] The Opposition contains some passing statements implying Plaintiff was a patient. *See* Doc. No. 27 at 10–11 ("BCH disclosed to [third parties] Plaintiff's (and her children's) status as a BCH patient"); *id.* at 8 (third parties allowed "to eavesdrop on communications between BCH and patients, including Plaintiff"). But, as BCH understands Plaintiff's allegations, she was never a patient of BCH, and Plaintiff confirms as much in

children are not parties to the case, as she has filed the Complaint solely in her own name. Despite this, Plaintiff's Opposition has made clear that she primarily relies on the alleged sharing of her children's information, not her own. Thus, this case presents a distinct issue from others brought against health care providers; whether Plaintiff can premise her claims on her children's PHI, when her children are not parties to this case. Simply put, Plaintiff cannot assert claims based on someone else's legal rights. *See e.g.*, *Harris v. Gillette Child.'s Specialty Healthcare*, 2025 WL 887442, at *2–4 (D. Minn. Mar. 21, 2025) (holding in context of standing analysis that parents could not raise ECPA and common law claims on their own behalf when only their children were patients because only their children were "said to have suffered the invasion of a legally protected interest" and parents thus lacked injury). Plaintiff cannot premise her own claims on alleged sharing of *her children's* information, including via the patient portal, when Plaintiff has conceded in the Complaint that her own information was cabined to browsing activities on BCH's *public* website.

Accordingly, the Court should dismiss Plaintiff's claims to the extent they rely on the alleged sharing of her children's PHI rather than her own. Each of Plaintiff's claims depends on allegations that tracking technology on BCH's website shared "Private Information,"[3] but once her improper reliance on her children's PHI is removed no "Private Information" remains. The sole allegation about Plaintiff's own information states that she used BCH's website to "search for information on particular symptoms, conditions, and medical procedures, both for herself and her children." Am. Compl. ¶ 11. As discussed in BCH's Motion and further below, a non-patient searching for symptoms and conditions on a public website constitutes mere generic, public

---

other sections of her Opposition. *See, e.g.*, *id.* at 10 (Plaintiff's "minor children are BCH patients"); *id.* at 24 (alleging duty "given that Plaintiff's children are BCH patients"). Thus, Plaintiff's claims may not be premised on a theory that she was a patient, as that was not adequately alleged in the Complaint.

[3] *See e.g.*, Am. Compl. ¶¶ 186, 195, 203, 215, 224, 232. Plaintiff defines "Private Information" as individually identifiable health information or protected health information. Am. Compl. ¶ 1.

browsing that does not reveal any PHI. Plaintiff's attempt to bolster these deficient allegations by referencing the alleged sharing of *her children's* information from the BCH patient portal cannot save Plaintiff's own claims—i.e. the only claims at issue here. Further, Plaintiff alleges that Google or Facebook could later link her identity to her activities on BCH's website, thus revealing her PHI, but activities relating to her children would not reveal Plaintiff's own PHI.

### B. Plaintiff Fails to Plausibly Allege Facts to Support that Any of Her PHI or Private Information Was Disclosed.

This case is about Plaintiff, her use of BCH's website, and whether her PHI was allegedly disclosed through tracking technologies. Once the allegations relating solely to Plaintiff's children's (non-parties to the litigation) PHI are removed, the deficiency of Plaintiff's allegations are glaring. Not only does Plaintiff almost entirely fail to allege that her own PHI was involved, she has not alleged any actual facts about her PHI to support her claims.

Plaintiff spends a significant portion of her Opposition declaring that *American Hospital Association v. Becerra*, 738 F. Supp. 3d 780 (N.D. Tex. 2024) is not binding, and that she does not rely solely on HIPAA for her claims. But she entirely misconstrues the significance BCH places on *Becerra*. That case merely demonstrates the deficiency of Plaintiff's allegations, which, when stripped of assertions based on her children's PHI, solely allege that BCH shared Plaintiff's IP address and ***public*** browsing information. As Plaintiff acknowledges (Doc. No. 27 at 2), *Becerra* held the "Proscribed Combination" of an IP address and a public webpage "addressing specific health conditions" or healthcare providers" does not identify an individual or PHI under HIPAA. *Becerra*, 738 F. Supp. 3d at 792, 807.

Looking to the Complaint's actual allegations, Plaintiff has not alleged more than the "Proscribed Combination" addressed in *Becerra* as to her own public browsing activities. Indeed, Plaintiff dedicates *one* vague and conclusory paragraph in her 70-page Complaint to describing

her activities on BCH's website, and, as noted above, the majority of that paragraph is about her children's PHI. The rest of her lengthy Complaint is premised entirely on generic descriptions of technology and hypothetical information that has nothing to do with Plaintiff's specific activities or PHI. Plaintiff has not identified even one specific piece of *her* PHI that BCH allegedly disclosed.

Plaintiff attempts to overcome these deficiencies by pointing to the "Find-a-Doctor" page. Doc. No. 27 at 10. But the Complaint paragraphs Plaintiff cites (¶¶ 12, 95–96) merely say the pages Plaintiff visited had tracking technologies on them, and refer to information transmitted from the "Find-A-Doctor" page. But that page is accessible to *anyone* visiting BCH's website, not exclusively patients, and she does not allege that she ever used the option to request an appointment. What's more, Plaintiff only alleges that she searched for doctors for her children, not herself, and the same is true of her allegations regarding the patient portal. For the reasons stated above, those allegations cannot support a claim brought by Plaintiff on her own behalf.

Plaintiff then points to "browser fingerprints," which she asserts can be combined with "persistent identifiers assigned by Facebook and Google" in a manner allowing those entities to affirmatively identify individuals. Doc. No. 27 at 14. But Plaintiff does not allege that she was registered with or logged into a Google or Meta account so as to allow them to track her browsing (which would require agreement to their terms of use), nor that Google or Meta actually connected any web browsing history to her. Instead, she simply speculates that Google or Meta *potentially* could mine her web browsing data and then *if* they could link her to a specific computer, computers at Google or Meta theoretically could guess that Plaintiff had searched for her or her children's medical conditions. Such allegations of speculative prospective harm fail to state any claim.

Further, although *Becerra* solely discusses PHI under HIPAA, it plainly undermines Plaintiff's theory that *her* PHI was disclosed, as it explains that web-browsing on a public website

simply does not reveal PHI. Numerous courts have granted motions to dismiss similar claims on that basis. *See* Doc. No. 23 at 12 (listing cases); *Branson v. Concord Hosp. Inc.*, No. 217-2024-CV-00295, Order on Def.'s Mot. Dismiss, at 11, 13, 16 (N.H. Super. Apr. 28, 2025) (attached as **Exhibit A**) (dismissing claims under state wiretapping act, state patient privacy law, and for invasion of privacy where plaintiff relied solely on hypotheticals and failed to allege with specificity what PHI he actually transmitted or how it was used).

## II. Plaintiff's Effort To Salvage Her ECPA Claim Is Unavailing (Count I).

Plaintiff does not dispute that BCH's consent alone is sufficient to foreclose ECPA liability. This fact distinguishes this matter from *Pharmatrak*, as there "the client pharmaceutical companies did not give the requisite consent," which otherwise would have precluded liability under ECPA. *In re Pharmatrak, Inc.*, 329 F.3d 9, 20 (1st Cir. 2003). Given the sufficiency of BCH's consent, Plaintiff also acknowledges that if she fails to invoke the crime-tort exception her ECPA claim fails as a matter of law. She fails to do so, and fails to allege interception of contents, so her ECPA claim should be dismissed.

### A. Plaintiff Fails to Allege that BCH Intended to Commit a Crime or Tort.

Plaintiff incorrectly contends that she need only allege the use of third-party tracking on BCH's website combined with bald assertions that such use ended up constituting a crime or tort. Doc. No. 27 at 15.[4] In other words, she argues that whenever a complaint includes a tort or statutory claim, the crime-tort exception may automatically be invoked. Not so. Plaintiff's contention fails under the plain language of the ECPA, First Circuit precedent rejecting broad interpretations of the

[4] Again, BCH does not argue that Plaintiff relies solely on HIPAA to invoke the crime-tort exception. BCH explicitly noted that *none* of Plaintiff's theories sufficiently invoke the exception. Doc. No. 23 at 14–16.

exception, and well-reasoned federal case law. Indeed, Plaintiff does not address a single First Circuit or District of Massachusetts case to support her expansive read of the crime-tort exception.

As this Court has held, Plaintiff must allege either "(1) that the *primary motivation*, or (2) that a *determinative factor* in the actor's motivation for intercepting the conversation was to commit a criminal, tortious, or other injurious act." *United States v. Vest*, 639 F. Supp. 899, 904 (D. Mass. 1986), *aff'd*, 813 F.2d 477 (1st Cir. 1987) (emphasis added)[5]; *see also United States v. McHugh*, 57 F. Supp. 3d 95, 99–100 (D. Mass. 2014). The mere allegation that an interception *resulted* in a criminal or tortious act does not suffice. *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010). The requirement of acting with the specific purpose to commit a crime or tort is supported by the text of the ECPA itself. "Had Congress intended for the act of recording itself to provide the tortious intent necessary, it could have chosen to define the exception in terms of interception of oral communications *resulting in* a tortious or criminal act." *Id.* (emphasis in original); *see also Doe v. Genesis Health System*, 2025 WL 1000192, at *9 (C.D. Ill. Mar. 18, 2025).

Courts in this Circuit have also consistently held that the exception must be "construed narrowly." *McHugh*, 57 F. Supp. 3d at 100. Plaintiff relies solely on conflicting, out-of-circuit precedents for her broad construction. And even cases from the Seventh Circuit (which Plaintiff relies on) do not consistently support her broad read, with one court recently holding that "it is not enough that the alleged disclosure may constitute, or result in, a tortious act in violation of federal law. Instead, the language is clear that the interception must be '*for the purpose of committing* ... any tortious act ....'" *Genesis Health System*, 2025 WL 1000192, at *9. Inclusion of the phrase for

[5] When the Court addressed § 2511(2)(d) in *Vest*, it also included any "other injurious act" in addition to criminal or tortious conduct. 639 F. Supp. at 902. As Plaintiff notes Congress later amended the ECPA to its current form, but Courts in this jurisdiction have continued to apply the primary motivation or determinative factor analysis to the current version of § 2511(2)(d).

the purpose of "requires a specific intent that the Defendant knew its acts" were in violation of a statute or were tortious. *Id.*

Thus, the question is not whether Plaintiff alleged that BCH violated HIPAA, the FTC Act, or Massachusetts statutory or common law, but whether BCH, a non-profit healthcare provider, installed tracking technologies on its public website with the purpose, or primary motivation, of doing so. Plaintiff does not and cannot allege as much. Even accepting Plaintiff's theory—that BCH *happened* to commit a tort or violate a statute through use of tracking technology (which BCH disputes)[6]—there is simply no support in the Complaint for the allegation that tortious or unlawful results were the purpose behind BCH's actions. At best, Plaintiff alleges that BCH used these technologies "to market its services and increase profits." Doc. No. 16 at 21. But numerous courts have held that a purpose to engage in digital marketing is not criminal or tortious.[7] *See* Doc. No. 23 at 16; *Genesis Health*, 2025 WL 1000192, at *9 (dismissing ECPA claim where by plaintiff's own account technology was used to "benefit [the healthcare system] and its marketing and advertising purposes" not "*for the purpose* of knowingly committing a violation" of HIPAA).

**B. Plaintiff Fails To Plausibly Allege An Independent Crime Or Tort.**

Plaintiff also fails to grapple with the cases BCH cites holding that for the crime-tort exception to apply the alleged crime or tort must be *independent* of the interception itself. *See* Doc.

---

[6] Plaintiff puzzlingly states that BCH does not dispute its "tortious intent." That is incorrect. BCH plainly argues that tortious or criminal activity was not its intent, as supported by Plaintiff's own allegations. *See* Doc. No. 23 at 16. Further the tort and statutory claims raised against BCH do not have a specific mens rea element, and BCH denies that it committed any of the common law or statutory violations alleged. To the extent Plaintiff wishes to self-impose a mens rea requirement on her claims, her own pleadings in the Complaint describing BCH's permissible, commercial purpose for utilizing the alleged technologies is yet another reason to dismiss Plaintiff's claims.

[7] Plaintiff also misconstrues BCH's argument regarding financial motives. BCH does argue that financial motive is an immediate immunization from the crime-tort exception, but that Plaintiff's own allegations undermine her claim by demonstrating the permissible and lawful intent behind BCH's actions. Courts have held that financial motives support a criminal or tortious purpose in the case of an intent to commit blackmail or extortion, but this does not mean that all financial motives have similar criminal purpose.

No. 23 at 17–18. In other words, the interception alleged to be an ECPA violation cannot also be the same act that underlies the alleged crime or tort. Here, Plaintiff alleges the interception and disclosure to third parties are accomplished simultaneously. She therefore fails to meet this factor, as she does not identify any *independent* tortious or criminal conduct beyond the alleged wiretapping itself. *See, e.g.*, *Nienaber v. Overlake Hosp. Med. Ctr.*, 2025 WL 692097, at *13 (W.D. Wash. Mar. 4, 2025) (allegations that technologies "contemporaneously transmit Plaintiff's communications to third parties," demonstrated that interception and disclosure were same act and were therefore insufficient to support ECPA claim).

Plaintiff's Opposition wholly fails to address the fact that she alleges simultaneous interception and disclosure, and does not address any of BCH's cases, which provide a well-reasoned discussion of this issue. The cases Plaintiff does cite largely do not grapple with this distinction, are not grounded in the Act's language, and ignore First Circuit guidance that courts should construe the crime-tort exception narrowly. *See Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *6 (N.D. Ill. Feb. 21, 2025) (not addressing issue of whether interception and disclosure occur simultaneously); *Gay v. Garnet Health*, 2024 WL 4203263, at *4 (S.D.N.Y. Sept. 16, 2024) (relying on district court cases and failing to address Circuit's binding appellate authority set forth in *Caro*). Because Plaintiff alleges contemporaneous interception and transmission, her ECPA claim should be dismissed. BCH maintains that should the Court find ambiguity in the ECPA, the rule of lenity applies. *See* Doc. No. 23 at 18; Amicus Br. Doc. No. 23 Ex. A. The cases Plaintiff cites (Doc. No. 27 at 17–18) do not change the rule's application.

**C. Plaintiff Fails to Plausibly Allege the Interception of "Contents."**

Nor can Plaintiff establish that BCH intercepted the contents of any communication. Plaintiff cites to several cases for the proposition that "descriptive URLs" may constitute actionable contents, but nearly all of the cases cited by plaintiff (Doc. No. 27 at 18, n. 15) involve

complaints alleging the exact interactions plaintiffs had with the websites, information they provided to the websites, and/or that they received targeted advertising suggesting their information was disclosed. *See*, *e.g.*, *M.G. v. Therapymatch*, 2024 WL 4219992, at *4 (N.D. Cal. Sept. 16, 2024) (M.G. provided the website information about "mental health conditions for which he was seeking therapy, his provider preferences, and his appointment details").[8]

In contrast, Plaintiff's allegations about her *own* PHI do not allege any specific information she provided to the BCH website, nor that she took any actions that would result in transmission of anything more than search terms or views of a public page, which are not contents under the ECPA. *See Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 70 (W.D. Pa. 2023) ("Navigating through a website's multiple pages is not the substance of a communication; it's an action taken to go to a digital location."). Further, Plaintiff's allegations including those about the patient portal could not possibly reveal Plaintiff's patient status, because she is **not** a patient.

## III. Plaintiff Fails To State A Massachusetts Privacy Act Claim (Count II).

Plaintiff fails to address the fundamental requirement of an invasion of privacy claim under the Massachusetts Right to Privacy Act ("MRPA")—an invasion that is "both unreasonable and substantial or serious." *Polay v. McMahon,* 468 Mass 379, 382 (2014). Here, Plaintiff fails to allege that anything she did on BCH's public website or patient portal could support such an invasion. This claim must be premised on an invasion of Plaintiff's privacy, not her children's, and as discussed above, she has not plausibly alleged interception or transmission of her PHI. In fact, Plaintiff's allegations lack any detail at all about the nature of her own information she contends

[8] *See also Doe v. Post Acute Med., LLC*, 2025 WL 511069, at *7 (M.D. Pa. Feb. 14, 2024) ("[Plaintiff] now receives targeted health-related advertisements reflecting private medical treatment information, including those related to skin conditions, arthritis, geriatric medical conditions, as well as for clinical trials, and physicians."); *Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at *4 (W.D. Wash. Nov. 14, 2024) ("Plaintiffs allege that they searched for information about "patient status, prescriptions, [and] underlying health conditions" and later received targeted advertisements for specific prescriptions).

was intercepted or disclosed by BCH, which alone requires dismissal of her MRPA claim. Plaintiff attempts to end-run this fatal pleading deficiency by claiming "examples" were provided in the Complaint. Doc. No. 27 at 10. But her "examples" merely demonstrate how the technology works, not Plaintiff's specific activity on the website or the information she purports was transmitted.

Plaintiff also argues that, because some MRPA claims have survived motions to dismiss, hers should as well, but she ignores factual distinctions in the pleadings in those cases. Doc. No. 27 at 19. Most significantly, those cases were about those plaintiffs' own information, not their children's. Furthermore, in *Tenet*, the plaintiff alleged she received targeted advertisements relating to her specific health conditions, including weight loss and diabetes. *Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 147–148 (D. Mass. 2024).[9] Plaintiff makes no such allegations here. Plaintiff also mischaracterizes the Supreme Judicial Court's holding in *Vita v. New England Baptist Hosp.*, 243 N.E.3d 1185 (Mass. 2024). The SJC did not find that the facts alleged by Vita were sufficient to state an MPRA claim, it merely noted such claims existed as possible alternatives to protect *private medical information*. *Id.* at 1206.[10] Nor did the Superior Court's ruling on Plaintiff's state-wiretap claim in her original complaint determine that Plaintiff validly stated an MRPA claim, as she did not raise an MRPA claim at that time. *See* Doc. No. 27 at 20, Ex. 2.

Here, Plaintiff does not allege anything with respect to what she contends was transmitted about her own PHI, and her vague allegations are insufficient to establish any invasion of her

[9] *See also Doe v. Boston Med. Ctr. Corp.*, 2023 WL 7105628, at *2 (Mass. Super. Sep. 14, 2023) (plaintiff alleged actions about a hernia within authenticated patient portal were transmitted); *Alves v. BJ's Wholesale Club*, 2023 WL 4456956, at *6–7 (Mass. Super. June 21, 2023) (expressing skepticism that allegations were sufficient to state an MPRA claim but allowing claim to proceed because others survived dismissal).

[10] Plaintiff makes this same mischaracterization of *Vita* with regards to her breach of fiduciary duty, negligence, breach of contract, and unjust enrichment claims. Doc. No. 27 at 23, 24, 25, and 26. The SJC did not find that the facts alleged by Vita were sufficient to state any of those claims.

information that was of a highly personal or intimate nature. To the extent Plaintiff attempts to rely on her use of the portal to access her children's PHI, as discussed above this is an improper attempt to rely on the claims of non-parties—Plaintiff's privacy must have been invaded, not a non-party's. Thus, Plaintiff's allegations are more analogous to other federal decisions finding routine medical searches and inquiries on a public website do not support invasion of privacy claims. *See* Ex. A, *Branson*, No. 217-2024-CV-00295, at 15 (compiling federal cases and noting the "overwhelming weight of authority . . . supports Defendants' position that there is no intrusion upon privacy when a patient voluntarily provides PHI to their healthcare provider"); *Post Acute Med.*, 2025 WL 511069, at *8; *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1067 (C.D. Cal. 2024) (disclosure of routine medical searches and inquiries insufficient to support privacy claim). Likewise here, Plaintiff's allegations at most demonstrate she used BCH's public website for routine medical searches as a member of the public, not a patient.

## IV. Plaintiff Fails To State A Claim For Breach Of Fiduciary Duty Or Confidence (Counts III and V).

Plaintiff's insufficient allegations likewise doom her breach of confidence and fiduciary duty claims because she does not allege that any special relationship exists between her and BCH. Plaintiff's allegations about her own PHI are limited to use of BCH's public-facing website, which do not support any fiduciary duty between her and BCH. And Plaintiff alleges nothing particular to herself in the context of using BCH's website that pertains to disclosure of her PHI. Plaintiff counters that the website "was designed for use by patients." Doc. No. 27 at 22. But that is incorrect; the website is available to members of the general public to use for any number of reasons. To overcome the deficiency in her claim, Plaintiff attempts to turn the physician-patient relationship into a boundless duty by implying that duty includes any visitor to BCH's public website, even though BCH has no knowledge of such visitors and no way to determine if they are

patients. An extension of the physician fiduciary duty to all public website visitors would create an untenable obligation on healthcare providers and is not supported by the law. Moreover, Plaintiff asserts this claim on her own behalf, when she has no patient relationship with BCH at all.

Plaintiff's reliance on *Alberts* to establish a further duty of confidentiality is misplaced. *Alberts* focused on the physician's duty "to hold in trust confidential information" in relation to the treatment of a patient. *Alberts v. Devine*, 479 N.E.2d 113, 120 (Mass. 1985). Plaintiff has not alleged that communications with any of her physicians (or even her children's) were disclosed, and she makes no attempt to distinguish the cases BCH cites limiting physician-patient duty to that context. *See Willitts v. Engie N. Am. Inc.*, 2021 WL 2322833, at *4 (D. Mass. June 7, 2021). Furthermore, Plaintiff's dependence on the transcript attached as Exhibit 3 to her Opposition is misguided. There, the Superior Court stated that although the SJC created some kind of fiduciary duty in *Alberts*, the court was unsure whether that duty would extend to a healthcare "organization" like BCH. Doc. No. 27, Ex. 3 at 54. Finally, Plaintiff acknowledges that the fiduciary duty and confidentiality claims are duplicative, and both claims should therefore be dismissed.

**V. Plaintiff's Negligence Claim Should Be Dismissed (Count IV).**

Plaintiff's Opposition does not meaningfully address BCH's arguments regarding her negligence claim and instead simply claims that because her children are patients a duty of care must exist. Doc. No. 27 at 24. Here, Plaintiff's allegations are devoid of any facts to support that her PHI has ever been transmitted to an unauthorized third party, either through BCH's public website or patient portal, and are therefore insufficient to establish a duty or breach of a duty. Thus, Plaintiff's assertion that *Tenet* affirms the same claim on substantively the same facts is misplaced. Doc. No 27 at 24. In *Tenet* the plaintiff's complaint alleged specific interactions plaintiff had with Tenet's website, and particular facts regarding the alleged unwanted advertisements she received. 731 F. Supp. 3d at 147–48. Plaintiff fails to do so here, and is not even a patient.

As to duty, Plaintiff continues to ignore that her children's status as patients does not transform her otherwise-ordinary browsing activity into an interaction protected by a duty of care. Plaintiff has not alleged any *facts* to support a plausible duty owed to Plaintiff by BCH with regards to its public website. As to her use of the patient portal, Plaintiff ignores that she is not the patient, and her vague allegations are insufficient to establish the nature and scope of any duty owed to her in that context. Simply put, Plaintiff does not establish any duty here, because she merely assumes—incorrectly—that the information allegedly disclosed was her PHI.

As to breach, Plaintiff yet again misconstrues BCH's argument, claiming BCH "assumes" that her claim depends on a HIPAA violation. But BCH explicitly acknowledges her other theories. Doc. No. 23 at 24–25, n.5. Regardless, Plaintiff makes no effort to explain how those other theories support a breach, nor how the alleged disclosure of unprotected browsing information from BCH's public website could breach any duty. The Court should dismiss Plaintiff's negligence claim.

## VI. Plaintiff Fails To State A Claim For Breach Of Contract (Count VI).

Plaintiff fails to allege the existence of a valid contract supported by mutual assent and consideration. Plaintiff's Opposition concedes that she fails to sufficiently allege whether she agreed to any contract, as she asserts it is merely "plausible" she agreed to BCH's privacy policies. Indeed, she does not even allege that she ever read the privacy policy or relied on it. Yet, Plaintiff's entire Complaint relates to the privacy policy on BCH's website. Plaintiff's inability to identify any contract that she herself *assented* to is dispositive, as a "mere possibility" that she entered into a contract is plainly insufficient. Regardless, even if Plaintiff did assent to the privacy policy that is not enough to create an enforceable contract,[11] where there must also be consideration and

[11] Plaintiff makes a passing reference to a purported judicial admission that she consented to the privacy policy, but that is nonsensical. Plaintiff would have to seek to exclude BCH's argument based on judicial estoppel, and she has not attempted to develop that argument nor argue the elements of judicial estoppel are present in these circumstances. This Court should reject that notion out of hand. *See Nat'l Coal. Against*

meeting of the minds. *See* Doc. No. 23 at 26–27. Plaintiff also ignores that she has not identified even one specific piece of *her* PHI that BCH allegedly disclosed to Meta or Google, and has solely provided exemplary screenshots of information that *might* be transmitted. Thus, even under her own theory, and for the reasons addressed in BCH's Motion, Plaintiff has not adequately pled a claim for breach of contract.

**VII. Plaintiff Fails To Allege Any Damages To Support Her Common Law Claims.**

BCH also moved to dismiss Plaintiff's claims for breach of fiduciary duty, negligence, and breach of contract (Counts III, IV, and VI) for failure to adequately allege damages. Plaintiff's Opposition fails to establish any discrete concrete harm she has suffered under any of those claims, and instead vaguely refers to generic allegations about the "economic value the intercepted communications have to consumers, BCH, and the third-party eavesdroppers and advertisers that monetize the intercepted communications." Doc. No. 27 at 25. But she offers no well-pled facts in support of how those generic factors apply to her personally, nor to support her laundry list of vague alleged harms. That deficiency merits dismissal. Further, Plaintiff's citations are distinguishable. *See In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 655 (N.D. Cal. 2024) (allegations that "Meta unjustly profited" sufficed for claims *against Meta* but Meta is not a defendant here); *Gay*, 2024 WL 4203263, at *5 (dismissing negligence, invasion of privacy; and breach of implied contract claims). Simply put, Plaintiff failed to allege any actual harm she has suffered as a result of the placement of tracking technologies on BCH's website. Accordingly, the Court should dismiss Plaintiff's breach of fiduciary duty, negligence, and contract claims. *See Post*

---

*Violent Athletes v. Dep't of Educ.*, 2020 WL 13876913, at *8 (D. Mass. Dec. 3, 2020) (a district court will not consider arguments "presented in a perfunctory and undeveloped manner"). Regardless, BCH's prior argument is not binding on a breach of contract theory, as it was raised to show that Plaintiff was aware of the use of third party tracking technologies because the privacy policy alerted her to that use in the context of whether the alleged communications were "secret" for purposes of the Massachusetts Wiretap Act.

*Acute*, 2025 WL 511069, at *8, 9 (dismissing breach of contract, unjust enrichment, and breach of fiduciary duty claims for failure to show the alleged harm caused actual damages).

## VIII. Plaintiff Fails To State A Claim For Unjust Enrichment (Count VII).

Plaintiff's Opposition misconstrues the applicable First Circuit precedent on whether unjust enrichment claims may be pled in the alternative. BCH respectfully asserts that First Circuit precedent, as set forth in *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1 (1st Cir. 2017), forecloses alternative pleading here. The First Circuit's discussion in *Tomasella v. Nestle USA, Inc.*, 962 F.3d 60 (1st Cir. 2020) made clear that under *Shaulis* "unjust enrichment claims must be dismissed because an adequate remedy at law was undoubtedly available" to the plaintiff, even if "not viable" under applicable law. *Id.* at 83–84. Here, Plaintiff alleges numerous other claims that would provide an adequate remedy, even if they are not viable on her alleged facts. Accordingly, this claim fails. *See also Cordeiro v. Grep Atl., LLC*, 2025 WL 889460, at *3 (D. Mass. Mar. 21, 2025) (dismissing unjust enrichment claim where adequate remedy at law available).

## CONCLUSION

For the foregoing reasons and those included in The Children's Hospital Corporation's Motion to Dismiss and Memorandum in Support, BCH respectfully asks the Court to dismiss the Amended Complaint against it with prejudice.

Dated: May 9, 2025

Respectfully submitted,

THE CHILDREN'S HOSPITAL
CORPORATION

By: */s/ Lisa Oliver White*
Lisa Oliver White, BBO# 666841
**SHOOK, HARDY & BACON L.L.P.**
One Federal Street, Suite 2620
Boston, MA 02110
Tel: (617) 531-1411
lowhite@shb.com

Tammy B. Webb (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900
twebb@shb.com

Jad Sheikali (*pro hac vice*)
Tara D. Kennedy (*pro hac vice*)
Avery Epstein (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
111 South Wacker Drive
Chicago, IL 60606
Tel: (312) 704-7700
jsheikali@shb.com
tkennedy@shb.com
aepstein@shb.com

***Attorneys for Defendant***

## LOCAL RULE 7.1 CERTIFICATION

The undersigned certifies that pursuant to Local Rule 7.1, counsel for Defendant conferred with counsel for Plaintiff by email concerning the filing of this reply, and Plaintiff's counsel have assented to the filing, as set forth in Doc. No. 28.

*/s/ Lisa Oliver White*
Lisa Oliver White

**CERTIFICATE OF SERVICE**

I, Lisa Oliver White, do hereby certify that on May 9, 2025, a true and correct copy of the foregoing document was served upon all counsel of record via the CM/ECF system of the United States District Court for the District of Massachusetts.

*/s/ Lisa Oliver White*