**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JANE DOE, individually and as parent and guardian for her minor children, S.N., H.N., and B.N., on behalf of herself and classes of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE CHILDREN'S HOSPITAL CORPORATION,<br><br>Defendant. | ) | Case No.: 1:25-cv-10343-PBS |

**DEFENDANT THE CHILDREN'S HOSPITAL CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Lisa Oliver White, BBO# 666841
**SHOOK, HARDY & BACON L.L.P.**
One Federal Street, Suite 2620
Boston, MA 02110
Tel: (617) 531-1411
lowhite@shb.com

Tammy B. Webb (*pro hac vice forthcoming*)
**SHOOK, HARDY & BACON L.L.P.**
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900
twebb@shb.com

Jad Sheikali (*pro hac vice*)
Tara D. Kennedy (*pro hac vice*)
Avery Epstein (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
111 South Wacker Drive
Chicago, IL 60606
Tel: (312) 704-7700
jsheikali@shb.com
tkennedy@shb.com
aepstein@shb.com

***Attorneys for Defendant***

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........................................................ 1

SUMMARY OF ALLEGATIONS AND FACTS ........................................................ 2

LEGAL STANDARD ........................................................ 3

ARGUMENT ........................................................ 4

I. Each Of Plaintiff's Claims Fails Because She Does Not Allege Sufficient Facts to Plausibly Support that BCH Disclosed Her or Her Children's PHI (Counts I–VII) ........................................................ 4

A. Plaintiff Fails to Sufficiently Allege Facts About Her Own Experience ........................................................ 4

B. Plaintiff's Allegations Regarding the Public Website Do Not Implicate PHI. ........................................................ 5

C. Plaintiff's Patient Portal Allegations are Wholly Conclusory. ........................................................ 6

II. Plaintiff Fails To State A Claim Under The ECPA (Count I). ........................................................ 7

A. Plaintiff Has Not Alleged an Unlawful Interception and the Crime-Tort Exception Does Not Apply ........................................................ 7

1. Plaintiff Does Not Plausibly Allege a Criminal or Tortious Purpose ........................................................ 8

2. Plaintiff Expressly Alleges a Permissible Purpose. ........................................................ 10

B. Plaintiff Does Not Allege a "Separate and Independent" Crime or Tort ........................................................ 11

C. Plaintiff Has Not Alleged that BCH Intercepted "Contents." ........................................................ 12

III. Plaintiff Fails To State A Claim For Invasion of Privacy (Count II) ........................................................ 13

IV. Plaintiff Fails To State A Claim For Breach Of Fiduciary Duty (Count III) ........................................................ 14

V. Plaintiff Fails To State A Claim For Breach Of Confidence (Count V) ........................................................ 16

VI. Plaintiff Fails To State A Claim For Negligence (Count IV). ........................................................ 16

VII. Plaintiff Fails To State A Claim For Breach Of Contract (Count VI). ........................................................ 18

VIII. Plaintiff's Unjust Enrichment Claim Fails (Count VII) ........................................................ 20

CONCLUSION ........................................................ 20

# TABLE OF AUTHORITIES

## Cases

*Alberts v. Devine*,
479 N.E.2d 113 (Mass. 1985) ....................16

*Am. Hosp. Ass'n. v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ....................1, 5, 6, 13

*Am. Hosp. Ass'n v. Becerra*,
No. 24-10775 (5th Cir. Sept. 4, 2024) ....................5

*Amorim Holding Financeria, S.G.P.S., S.A. v. C.P. Baker & Co.*,
53 F. Supp. 3d 279 (D. Mass. 2014) ....................14

*ARE-Tech Square, LLC v. Galenea Corp.*,
2017 WL 634771 (Mass. App. Ct. Feb. 16, 2017)....................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................3

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ....................14

*Bailey v. Hosp. of the Univ. of Pa.*,
266 A.3d 654 (Pa. Super. Ct. 2021)....................17

*Beauregard v. Meldon*,
2019 WL 6877185 (D. Mass. Dec. 17, 2019)....................18

*Bonewit v. New-Indy Containerboard LLC*,
2024 WL 4932186 (D. Mass. Dec. 2, 2024)....................18

*Branyan v. Sw. Airlines Co.*,
105 F. Supp. 3d 120 (D. Mass. 2015) ....................13

*Brush v. Miami Beach Healthcare Grp. Ltd.*,
238 F. Supp. 3d 1359 (S.D. Fla. 2017) ....................20

*Caine v. Sturdy Mem'l Hosp., Inc.*,
2026 WL 673483 (D. Mass. Mar. 10, 2026)....................1, 7, 10

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)....................11

*Clark v. Zwicker & Assocs., P.C.*,
2024 WL 2025568 (D. Mass. May 7, 2024) ....................14

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023)....................13

*Counterman v. Colorado*,
600 U.S. 66 (2023)....................8

*Doe v. Emerson Hosp.*,
Case No. 1:25-cv-13631-RGS, Doc. No. 20 (D. Mass. Feb. 11, 2026)....................4, 7

*Doe 1 v. Chestnut Health Systems*, Inc.,
2025 WL 1616635 (C.D. Ill. June 6, 2025) ....................12

*Doe v. Lawrence Gen. Hosp.*,
2025 WL 2808055 (D. Mass. Aug. 29, 2025), *report and rec. adopted in part*,
2025 WL 2807673 (D. Mass. Sep. 30, 2025) .................... *passim*

*Doe v. Tenet Healthcare Corp.*,
731 F. Supp. 3d 142 (D. Mass. 2024) ....................6, 13

*Doe v. Village Podiatry Grp., LLC*,
2024 WL 5187261 (Ga. Super. Nov. 20, 2024)....................18

*Fernandes v. Havkin*,
731 F. Supp. 2d 103 (D. Mass. 2010) ....................20

*Goldstein v. Luxottica of Am., Inc.*,
2021 WL 4093295 (S.D. Fla. Aug. 23, 2021)....................12

*Goulart v. Cape Cod Healthcare, Inc.*,
2025 WL 1745732 (D. Mass. June 24, 2025), *appeal filed*
No. 25-1672 (1st Cir. July 23, 2025) .................... *passim*

*Goulart v. Cape Cod Healthcare, Inc.*,
Case No. 25-1672 (1st Cir.) ....................8

*Griffin v. Oceanic Contractors, Inc.*,
458 U.S. 564 (1982)....................7

*Grocela v. Gen. Hosp. Corp.*,
2012 WL 3205616 (Mass. Super. July 18, 2012) ....................17

*Hannant v. Culbertson*,
2025 WL 2413894 (C.D. Ill. Aug. 20, 2025)....................4

*Harrill v. Emanuel Med. Ctr.*,
2025 WL 1635428 (June 9, 2025 E.D. Cal.) ....................14

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. Jul. 1, 2024)....................14

*In re Banner Health Data Breach Litig.*,
2017 WL 6763548 (D. Ariz. Dec. 20, 2017) ....................................................................20

*In re Boston Univ. COVID-19 Refund Litig.*,
511 F. Supp. 3d 20 (D. Mass. 2021) ............................................................................18

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)..............................................................................9

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015).....................................................................................11, 12

*In re Shields Health Care Grp.*,
721 F. Supp. 3d 152 (D. Mass. 2024) ......................................................................16, 19

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........................................................................................12

*K.L. v. Legacy Health*,
2024 WL 4794657 (D. Or. Nov. 14, 2024)........................................................................6

*Katz v. Pershing, LLC*,
806 F. Supp. 2d 452 (D. Mass. 2011) .............................................................................19

*Kelley v. CVS Pharm., Inc.*,
2007 WL 2781163 (Mass. Super. Ct. Aug. 24, 2007) ..............................................15, 16

*Koppel v. Moses*,
2020 WL 6292871 (D. Mass. Oct. 27, 2020)...................................................................13

*Korper v. Weinstein*,
783 N.E.2d 877 (Mass. App. Ct. 2003) ....................................................................15, 16

*Leocal v. Ashcroft*,
543 U.S. 1 (2004)...............................................................................................................8

*Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*,
412 F.3d 215 (1st Cir. 2005)...........................................................................................18

*McManus v. Tufts Med. Ctr., Inc.*,
2025 WL 2778025 (D. Mass. Sept. 29, 2025) ......................................................2, 7, 9, 11

*Nguyen v. Abbott Labs., Inc.*,
2026 WL 579206 (N.D. Ill. Mar. 2, 2026).......................................................................13

*Nienaber v. Overlake Hosp. Med. Ctr.*,
2025 WL 692097 (W.D. Wash. Mar. 4, 2025) .................................................................12

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)....................4, 7

*Ocasio-Hernandez v. Fortuno-Burset*,
640 F.3d 1 (1st Cir. 2011)....................3

*Okash v. Essentia Health*,
2025 WL 642913 (D. Minn. Feb. 27, 2025)....................12, 14

*One Wheeler Rd. Assocs. v. Foxboro Co.*,
843 F. Supp. 792 (D. Mass. 1994)....................20

*Pershouse v. L.L. Bean, Inc.*,
368 F. Supp. 3d 185 (D. Mass. 2019)....................20

*Planned Parenthood Fed'n of Am. Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022)....................8

*Progin v. UMass Mem'l Health Care, Inc.*,
Case No. 25-cv-403-ADB, Doc. No. 43 (D. Mass. Mar. 6, 2026)....................2, 7, 10

*Reidy v. Umass Mem. Med. Ctr., Inc.*,
2021 WL 6777622 (Mass. Super. June 17, 2021)....................18

*Roe No. 1 v. Children's Hosp. Med. Ctr.*,
16 N.E.3d 1044 (Mass. 2014)....................17

*Shaulis v. Nordstrom, Inc.*,
865 F.3d 1 (1st Cir. 2017)....................20

*Squeri v. Mount Ida Coll.*,
954 F.3d 56 (1st Cir. 2020)....................14

*T.D. v. Piedmont Healthcare, Inc.*,
2024 WL 3972984 (N.D. Ga. Aug. 28, 2024)....................18

*Tashjian v. CVS Pharm., Inc.*,
2020 WL 1931859 (D. Mass. Mar. 13, 2020)....................16

*United States v. Jiau*,
734 F.3d 147 (2d Cir. 2013)....................8

*United States v. Kovolas*,
1998 WL 452218 (D. Mass. July 27, 1998)....................10

*United States v. McHugh*,
57 F. Supp. 3d 95 (D. Mass. 2014)....................8, 9

*Vita v. Blue Cross & Blue Shield of Mass.*,
Case No. 25-10420-LTS, Doc. No. 26 (D. Mass. Oct. 17, 2025)....4

*Webb v. Injured Workers Pharm., LLC*,
2023 WL 5938606 (D. Mass. Sept. 12, 2023)....19

*Weekes v. Cohen Cleary P.C.*,
723 F. Supp. 3d 97 (D. Mass. 2024)....19

*Whitby v. Cerner Corp.*,
No. 25-04087-CV-C-BP, Doc. No. 39 (W.D. Mo. Jan. 8, 2026)....7

*Williams v. TMC Health*,
2024 WL 4364150 (D. Ariz. Sept. 30, 2024)....6, 17, 19

*Willitts v. Engie N.A. Inc.*,
2021 WL 2322833 (D. Mass. June 7, 2021)....16

*Wofse v. Horn*,
523 F. Supp. 3d 122 (D. Mass. 2021)....13, 14

*Zoll Med. Corp. v. Barracuda Networks, Inc.*,
565 F. Supp. 3d 101 (D. Mass. 2021)....17

**Statutes**

18 U.S.C. § 2510(8)....12

Electronic Communications Privacy Act (ECPA) 18 U.S.C. § 2511 *et seq*.... *passim*

18 U.S.C. § 2511(2)(d)....8

18 U.S.C. § 2520(a)....7

Massachusetts Right to Privacy Act, G.L. c. 214 § 1B....8, 13

**Other Authorities**

RESTATEMENT (SECOND) OF TORTS § 874 cmt. a (1979)....15

Fed. R. Civ. P. 12(b)(6)....2

# INTRODUCTION

Around the country, plaintiffs have filed hundreds of putative class actions attempting to collect massive damages awards from non-profit healthcare providers for using common website analytics tools on their websites. When a user visits a website that contains these tools, information about the visit can potentially be sent to the entity that provides the technology, which then uses the data to allow the website provider to analyze website interactions or assist with advertising. These tools are ubiquitous and used by countless healthcare entities, businesses, and all government agencies. Plaintiff is now on her ***third*** attempt to plead privacy-related claims based on The Children's Hospital Corporation's (d/b/a Boston Children's Hospital, "BCH") use of this commonplace technology. Plaintiff's latest effort suffers from the same fatal defects as her prior pleadings, as identified in BCH's earlier Motion to Dismiss (Doc. No. 22; Doc. No. 23).

Plaintiff's claims fail for a number of reasons. First, each claim relies on the proposition that Plaintiff's or her children's PHI was transmitted, but the SAC remains devoid of basic factual support for that proposition. Despite consisting of 87 pages and 281 paragraphs, it says almost nothing about Plaintiff's experience on BCH's website or portal and does not identify any specific medical information that she actually disclosed. Further, information disclosed on a public website does not qualify as PHI. *See Am. Hosp. Ass'n. v. Becerra*, 738 F. Supp. 3d 780, 802, 807 (N.D. Tex. 2024) (vacating Dep't of Health & Human Services ("HHS") Bulletin; holding browsing activity on public website "does not and cannot identify an individual or the individual's PHI").

Second, Plaintiff has no viable claim under the Electronic Communications Privacy Act ("ECPA"), a one-party consent statute, because she fails to plausibly allege that the crime-tort exception applies. Indeed, Plaintiff's theory of ECPA liability has been uniformly rejected by courts in this District with five cases dismissing ECPA claims under nearly identical circumstances. *See Caine v. Sturdy Mem'l Hosp., Inc.*, 2026 WL 673483, at *4 (D. Mass. Mar. 10,

2026) (dismissing ECPA claim where plaintiff alleged defendant hospital imbedded analytics tools on its website and disclosed plaintiff's PHI for failure to allege applicability of crime-tort exception); *Progin v. UMass Mem'l Health Care, Inc.*, Case No. 25-cv-403-ADB, Doc. No. 43 (D. Mass. Mar. 6, 2026) (**Ex. A**) (same); *Doe v. Lawrence Gen. Hosp.*, 2025 WL 2808055, at *21 (D. Mass. Aug. 29, 2025), *report and rec. adopted in part*, 2025 WL 2807673 (D. Mass. Sep. 30, 2025) (same); *McManus v. Tufts Med. Ctr., Inc.*, 2025 WL 2778025, at *3–4 (D. Mass. Sept. 29, 2025) (same); *Goulart v. Cape Cod Healthcare, Inc.*, 2025 WL 1745732, at *3–4 (D. Mass. June 24, 2025), *appeal filed* No. 25-1672 (1st Cir. July 23, 2025) (same). This court should likewise dismiss Plaintiff's baseless ECPA claim. Last, each of Plaintiff's common law or state-statute claims fails on the merits. The Court should therefore dismiss the SAC under Rule 12(b)(6).

## SUMMARY OF ALLEGATIONS AND FACTS

BCH is a non-profit charitable healthcare organization that provides pediatric healthcare services in Boston, Massachusetts. SAC ¶ 24. It operates a public website (https://www.childrens hospital.org) that is available to patients or anyone else with internet access, regardless of patient status, as well as a password-protected patient portal. *Id.* ¶¶ 25–26. BCH's website provides "information about doctors, services, and treatments provided by Boston Children's for particular medical conditions." *Id.* ¶ 25. Plaintiff alleges that when she visited BCH's website, analytics tools caused her browser to send protected health information (PHI) to Meta and Google.[1] *See id.* ¶ 66. Plaintiff also vaguely alleges that BCH embedded analytics tools on its patient portal. *See id.* ¶ 10. Plaintiff alleges her children are BCH patients, but does not allege that she is a patient, accordingly any records or treatment information would apply solely to her children. *Id.* ¶¶ 17, 126, 191–92.

[1] The SAC uses the terms "personal health information," "Protected Health Information" (PHI), "Private Information," and "Individually Identifiable Health Information" (IIHI) interchangeably. *See, e.g.*, SAC ¶¶ 1, 3–4, 30, 146, 153, 175, 218, 280. BCH refers to these terms collectively as "PHI."

Much of the SAC provides a general description of how analytics tools might operate along with hypothetical scenarios about how an individual *could* interact with BCH's website. *See, e.g.*, *Id.* ¶¶ 42–52, 55–61, 66–113, 117–19. When it comes to her *own* interactions with BCH's website, Plaintiff has little to say. All Plaintiff alleges is that her "children are patients" at BCH and that she "regularly" used BCH's website to "(i) obtain information about [BCH] doctors (including their credentials and backgrounds); (ii) search for information on particular symptoms, conditions, and medical procedures, both for herself and her children; and (iii) obtain and review her children's medical records through the website's patient portal." *Id.* ¶ 17. Plaintiff does not describe the "information" or "records" she personally viewed on the website or portal nor identify any specific information transmitted to third parties. *Id.* ¶19. Nor does she allege that she received specific targeted advertisements. Notably, these sparse allegations come in Plaintiff's ***third*** pleading effort.

Plaintiff brings a claim under the ECPA on behalf of herself and a putative class of Massachusetts residents and six counts on behalf of herself, her children (in her role as parent or guardian), and two putative classes of Massachusetts residents for violation of the Massachusetts Right to Privacy Law, breach of fiduciary duty, negligence, breach of confidence, breach of contract, and unjust enrichment. SAC ¶¶ 200–281.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). A complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of . . . plausibility of entitlement to relief." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).

# ARGUMENT

## I. Each Of Plaintiff's Claims Fails Because She Does Not Allege Sufficient Facts to Plausibly Support that BCH Disclosed Her or Her Children's PHI (Counts I–VII).

### A. Plaintiff Fails to Sufficiently Allege Facts About Her Own Experience.

The core assertion underlying *all* of Plaintiff's claims is that when *she* used BCH's website or portal, her or her children's PHI was disclosed to third parties. Yet, despite its 87 pages, the SAC offers only generic descriptions of Plaintiff's activities on BCH's website or portal limited to "examples" of pages she visited and assertions that she searched for a doctor, searched for unidentified medical conditions, and used the portal to access records. *See* SAC ¶¶ 6–7, 17, 19, 36, 105–06, 110, 117–19. The SAC does not specify whether any of those activities were for her children's treatment, her own conditions, or some other purpose, nor what particular information any third party purportedly received about her or her children. Plaintiff leaves the Court to speculate as to what particular portions of her claimed interactions were supposedly shared.

Courts have held that similarly vague references to PHI are insufficient to state a claim. For example, Judge Sorokin dismissed a similar complaint where the plaintiff failed to "to make sufficient factual allegations about her own use of the [defendant's] website to state any claim." *Vita v. Blue Cross & Blue Shield of Mass.*, Case No. 25-10420-LTS, Doc. No. 26, at *5 (D. Mass. Oct. 17, 2025) (**Ex. B**);[2] *see also Doe v. Emerson Hosp.*, Case No. 1:25-cv-13631-RGS, Doc. No. 20 (D. Mass. Feb. 11, 2026) (**Ex. C**) (plaintiffs' allegations were insufficient to support ECPA or common law claims because they failed to "identify any *concrete* examples" of how they used defendant's website or portal and therefore failed to provide "adequate notice of the PHI

[2] *See also Hannant v. Culbertson*, 2025 WL 2413894, at *5 (C.D. Ill. Aug. 20, 2025) (dismissing ECPA claim where plaintiff alleged use of website to find specific doctor and "research treatments" including related to MRI test); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1082 (W.D. Wash. 2024) (*Nienaber I*) (two sentences describing "actual engagement" with website insufficient).

[defendant] allegedly disclosed to third-party advertisers"). Plaintiff's failure to allege any facts plausibly supporting disclosure of her or her children's PHI supports dismissal of all her claims.

### B. Plaintiff's Allegations Regarding the Public Website Do Not Implicate PHI.

Furthermore, each of Plaintiff's claims is based on a false premise: that when people visit BCH's *public* website, their PHI is disclosed to third parties. This categorical assertion is wrong as a matter of law. Plaintiff asserts that disclosure of public browsing information combined with an IP address can constitute PHI, but portions of a December 2022 Bulletin issued by HHS reaching the same conclusion were vacated in *Becerra*, where the court explained that mere browsing activity on a public hospital website "*does not* and *cannot* identify an individual or the individual's PHI." 738 F. Supp. 3d at 802.[3] That is because a website operator has no way of knowing why any user visits a webpage, or clicks a particular button. *Id.* at 795 ("user's intent in visiting [an unauthenticated webpage] is unknowable"). For example, a user might visit a hospital website to find information for a family member (like here), a friend, or for a research project. *See id.* at 801. But whether the browsing relates to healthcare or not, it is not PHI if it takes place on a public website and subjective motive is required to link it to healthcare. *Id.* at 801–04 ("Without knowing information that's never received—i.e., the visitor's subjective motive—the resulting metadata could never identify that individual's PHI. Simply put, **Identity** (Person A) + **Query** (Condition B) ≠ **IIHI** [or PHI] (Person A has Condition B).").

Although Plaintiff alleges her children are patients of BCH and she used BCH's website to perform searches related to her and her children's medical treatment, BCH would have no way of knowing that it was Plaintiff running the search or her reason for doing so, nor that any search related to the actual patients here—her children. She could be any member of the public. For these

[3] HHS dismissed its appeal in *Am. Hosp. Ass'n v. Becerra*, No. 24-10775 (5th Cir. Sept. 4, 2024).

reasons and others, numerous courts have granted motions to dismiss similar claims after *Becerra*. *See Williams v. TMC Health*, 2024 WL 4364150, at *4 (D. Ariz. Sept. 30, 2024) (dismissing because "disclosure of data regarding what healthcare information someone searches for and whether someone clicks on the patient portal link does not *necessarily* implicate HIPAA"); *K.L. v. Legacy Health*, 2024 WL 4794657, at *4 (D. Or. Nov. 14, 2024) (similar).

Further, BCH is aware that this honorable Court issued a ruling in *Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142 (D. Mass. 2024), denying in part a defendant's motion to dismiss a suit involving analytics tools (without an ECPA claim) and accepting the plaintiff's allegation that PHI was disclosed. BCH respectfully asserts that *Tenet* should not apply for two reasons. First, it pre-dated *Becerra*'s finding that public website browsing does not identify an individual or their PHI, and more recent federal cases reaching the same conclusion provide new on-point context. Second, plaintiff's allegations in *Tenet* were more specific; she alleged her specific health conditions, that after using defendant's website she began receiving targeted advertisements about those conditions, and that specific details like appointment times/locations were disclosed. *Id.* at 147–48. In contrast, Plaintiff's sparse allegations offer no specific details about her own interactions.

### C. Plaintiff's Patient Portal Allegations are Wholly Conclusory.

To the extent Plaintiff relies on allegations relating to BCH's patient portal, her allegations are likewise too conclusory to support any claim. Plaintiff merely alleges she obtained her children's medical records through the patient portal but does explain what data she believes was shared through that interaction, nor how Google or Meta might link it to her children's identities. Instead, she merely alleges that the fact that she visited some pages (such as sign-up or adding a dependent) might be revealed. *See, e.g.*, SAC ¶¶ 6–7, 126–38. But that information does not reveal PHI. What's more, even if Plaintiff's activity in the portal could somehow be linked to her identity, it would not reveal the actual patients—her children. These sparse allegations about the portal are

not enough to allege that PHI was disclosed. *See Nienaber I*, 733 F. Supp. 3d at 1083 (dismissing claims where plaintiff did not identify "type of information" provided through the portal).[4]

## II. Plaintiff Fails To State A Claim Under The ECPA (Count I).

Plaintiff alleges BCH unlawfully "intercepted" her communications with its website in violation of the ECPA when the analytics tools it installed disclosed the contents of those communications to Meta and Google. SAC ¶¶ 200–22. This theory of ECPA liability has been resoundingly and uniformly rejected in this District, with all cases dismissing ECPA claims under nearly identical circumstances as those here. *See Sturdy Mem'l Hosp., Inc.*, 2026 WL 673483, at *4; Ex. A, *UMass Mem'l*; *Lawrence Gen. Hosp.*, 2025 WL 2808055, at *18, *21; *Tufts Med. Ctr., Inc.*, 2025 WL 2778025, at *3–4; *Cape Cod Healthcare, Inc.*, 2025 WL 1745732; *see also* Ex. C, *Emerson Hosp.* (plaintiff did not oppose dismissal of ECPA given recent rulings). This Court should likewise dismiss Plaintiff's ECPA claim for the reasons set forth below.

### A. Plaintiff Has Not Alleged an Unlawful Interception and the Crime-Tort Exception Does Not Apply.

The ECPA is a criminal statute, which imposes liability upon one who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral or electronic communication," or who intentionally "discloses" or "uses" the contents of an intercepted communication. 18 U.S.C. § 2511(1)(a)-(d). It also provides for civil liability when an "electronic communication [was] intercepted, disclosed, or intentionally used in violation of" the statute's other provisions. *Id.* § 2520(a). Thus, Plaintiff's theory cannot support a civil claim unless the same conduct also supports a federal felony charge.[5]

---

[4] *Whitby v. Cerner Corp.*, No. 25-04087-CV-C-BP, Doc. No. 39 at *13 (W.D. Mo. Jan. 8, 2026) (**Ex. D**) (noting "legally important differences" between whether defendant conveyed fact that patient accessed portal, requested a test, requested particular test, or saw the results of particular test).

[5] Plaintiff's theory therefore urges the absurd result that any person involved in the intentional use of ubiquitous analytics tools on a healthcare website may face felony charges under the ECPA. In construing the statute, the Court must avoid this type of absurd result. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) (interpretation

The ECPA is a one-party consent statute and expressly provides that "[i]t shall not be unlawful" for a "party to the communication" to intercept a communication. 18 U.S.C. § 2511(2)(d). It is undisputed that BCH was a party to the communications here (SAC ¶ 271) so no interception occurred. In an effort to avoid this fact, Plaintiff invokes the "crime-tort exception." *Id.* ¶¶ 210–20. The crime-tort exception must be narrowly construed. *United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013); *United States v. McHugh*, 57 F. Supp. 3d 95, 100 (D. Mass. 2014). To invoke the exception, Plaintiff must plausibly allege BCH (1) acted ***with the purpose*** to commit (2) an independent crime or tort, separate from the interception itself. *See* 18 U.S.C. § 2511(2)(d); *Planned Parenthood Fed'n of Am. Inc. v. Newman*, 51 F.4th 1125, 1135–36 (9th Cir. 2022). Plaintiff fails to allege either element.

### 1. Plaintiff Does Not Plausibly Allege a Criminal or Tortious Purpose.

In analyzing whether the crime-tort exception applies, the Court's inquiry can start and stop with the statute's language. Under the ECPA, the interception must be done *intentionally*, 18 U.S.C. § 2511(1)(a). But for the crime-tort exception to apply, there is a an additional mens rea requirement—that the interception be done "*for the purpose of committing* any criminal or tortious act." *Id.* § 2511(2)(d). Congress's repeated use of "intentionally" in § (1)(a)–(d), evidences its deliberate choice to then later use "purpose" in § (2)(d). *See Lawrence Gen.*, 2025 WL 2808055, at *10, *16. "Purpose is the most culpable" mental state "and the hardest to prove" requiring that one "consciously desires" a result. *Id.* (citing *Counterman v. Colorado*, 600 U.S. 66, 78–79 (2023).

producing absurd result to be avoided). Moreover, because the ECPA imposes criminal penalties, under the rule of lenity any ambiguities in the statute must be resolved in BCH's favor. *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) (rule of lenity applies to civil claim); *see also Goulart v. Cape Cod Healthcare, Inc.*, Case No. 25-1672 (1st Cir.), Brief for Amicus Curiae Chamber of Commerce of the U.S.A. (further addressing application of the rule of lenity); Brief of Amicus Curiae The Greater Boston Chamber of Commerce (further addressing absurd results flowing from Plaintiff's ECPA theory); Brief for Amici Curiae Am. Hosp. Ass'n, et al. (similar) (all attached as **Ex. E**).

Thus, to invoke the crime-tort exception, Plaintiff must allege that BCH's purpose in deploying analytic tools was to commit a crime or tort, not just that its actions had a criminal or tortious effect. *Lawrence General Hospital* is particularly instructive. There, Magistrate Judge Levenson explained: "[T]he goal or aim of the interception itself must have been to use the intercepted information to commit a crime or tort. It is not enough that a crime or tort was a mere side-effect of the interception. . . . Had Congress meant to authorize criminal prosecutions based on a standard lower than actual, conscious 'purpose' it could have done so. It could have used language that focused on criminal or tortious *results* or *effects*." 2025 WL 2808055, at *11–12. Additionally, for the exception to apply, committing a crime or tort must be the "primary motivation" or a "determinative factor" behind the defendant's actions. *Tufts Med. Ctr., Inc.*, 2025 WL 2778025, at *3; *Cape Cod*, 2025 WL 1745732, at *3; *McHugh*, 57 F. Supp. 3d at 100 (exception "properly confined to situations" where the interceptor "intended to harm" the other party "through blackmail, threats or public embarrassment").

The question here then is whether Plaintiff adequately alleges that BCH's *purpose* or primary motivation in using analytic tools was to commit a crime or tort. The answer is plainly no. Plaintiff alleges that BCH intercepted her communications "for the purpose" of committing criminal and tortious acts namely, violating HIPAA, the FTC Act, and common law claims. SAC ¶¶ 210, 212. But she offers no support for that proposition beyond alleging that BCH knowingly utilized analytics tools and knew its actions would violate HIPAA. That is insufficient. Even if BCH's conduct violated HIPAA or some other law or common law theory (which it did not), Plaintiff has not alleged any facts to support that BCH had an unlawful *purpose* beyond what was accomplished by the collection of her data—and that is what matters under the crime-tort exception. *See* SAC ¶¶ 5, 34, 65, 112, 162; *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 516 (S.D.N.Y. 2001) (commission of a tortious act does not prove tortious purpose).

Simply put, Plaintiff ignores the critical distinction between a party's purpose and the mere effect of its action, with only the former triggering the crime-tort exception. Glaringly, courts in this District have consistently rejected Plaintiff's position. *See Sturdy Mem. Hosp.*, 2026 WL 673483, at *4 (dismissing where plaintiff failed to plausibly allege facts sufficient to "support the inference that [defendant] installed the tracking tools for the purpose of acquiring IIHI without authorization" or intruding upon seclusion, even where it was alleged to "have been on notice regarding privacy risks surrounding the collection of health data"); Ex. A, *UMass Mem'l* at *9–10 (dismissing ECPA claim because "although the allegations may support the inference that Defendants purposefully committed certain acts, such as the installation of the at-issue tracking tools or even the disclosure of certain forms of information to Facebook and Google, they do not support the inference that Defendants purposefully committed the 'criminal and tortious acts' specified by Plaintiffs"); *Lawrence Gen. Hosp.*, 2025 WL 2808055 at *17 (dismissing ECPA claim for failure "to plausibly support an inference that [defendant's] purpose in deploying the web tracking tools was anything other than the usual reason why website operators use such tools: to help run their websites"); *Cape Cod*, 2025 WL 1745732, at *4 (dismissing complaint with "no factual allegations" for court to conclude that hospital system installed tools "with the 'primary motivation' of knowingly committing a violation of HIPAA or perpetrating a tort"); *United States v. Kovolas*, 1998 WL 452218, at *4 (D. Mass. July 27, 1998) (rejecting "superficial logic" that because recording violated law "it was made for the purpose of violating" the law).

**2. Plaintiff Expressly Alleges a Permissible Purpose.**

Plaintiff's apparent theory—that BCH, a non-profit hospital, collected patient information *for the purpose* of harming patients through a crime or tort—is not only implausible on its face, but also contradicted by her own allegations, *i.e.*, that BCH used analytics tools to "maximize the effectiveness" of advertising, "advance" marketing efforts, and improve website performance. *See,*

*e.g.*, SAC ¶¶ 3, 35, 52–53. As many courts have recognized, there is nothing unlawful about these types of objectives. *See Lawrence Gen. Hosp.*, 2025 WL 2808055 at *17–18. Indeed, Judge Burroughs dismissed a similar ECPA claim because allegations that the defendant implemented analytics tools for "financial motives," "financial gain," and to "increase revenue from existing patients and gain new patients," were "insufficient to satisfy the crime-tort exception." *Tufts*, 2025 WL 2778025, at *3–4; *see also Cape Cod,* 2025 WL 1745732, at *4 (advertising advantage and enhanced analytics "are not the stuff of which a crime-tort is made").

In short, Plaintiff's allegations at most suggest BCH's purpose in allegedly intercepting her communications was to improve its services and website and for advertising/marketing use, not to violate HIPAA or any other law. Thus, Plaintiff has not plausibly alleged that BCH intercepted communications "for the purpose of" committing a crime or tort and this Court should join the rulings in this district dismissing similarly deficient ECPA claims.

**B. Plaintiff Does Not Allege a "Separate and Independent" Crime or Tort.**

There is another, distinct, reason that Plaintiff fails to invoke the crime tort exception: Plaintiff does not allege any *independent* criminal or tortious conduct beyond the alleged wiretapping itself. *See Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010). As numerous courts have held, including in similar contexts, the crime-tort exception is not triggered when the tortious conduct "is the alleged wiretapping itself." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3d Cir. 2015). There must be plausible allegations "that the act of disclosure was in any respect separate or independent of the intentional act of deploying the web tracking tools." *Lawrence Gen. Hosp.*, 2025 WL 2808055, at *13.

Where, as here, the "interception" that provides the basis for the alleged ECPA violation (use of analytics tools) is the same act that provides the basis for the purported HIPAA violation or other tort (use of analytics tools), there is no independent crime or tort. Indeed, Plaintiff

expressly alleges that the purported interception and crime or tort occurred "contemporaneously." *See* SAC ¶¶ 6, 77, 81, 84, 92, 95, 100. Several courts have dismissed ECPA claims in similar cases on this basis. *See, e.g.*, *Cape Cod*, 2025 WL 1745732, at *4 n.3 (HIPAA violation not a "further impropriety" because it was not an act "secondary to the acquisition of the communication involving tortious or criminal use of the interception's fruits"); *Doe 1 v. Chestnut Health Systems*, Inc., 2025 WL 1616635, at *12 (C.D. Ill. June 6, 2025) (similar); *Okash v. Essentia Health*, 2025 WL 642913, at *3–4 (D. Minn. Feb. 27, 2025) (similar); *Nienaber v. Overlake Hosp. Med. Ctr.*, 2025 WL 692097, at *13 (W.D. Wash. Mar. 4, 2025) (similar). Plaintiff fails to plead a crime or tort independent of the interception itself, and this defect alone is yet another reason why her ECPA claim should be dismissed.

### C. Plaintiff Has Not Alleged that BCH Intercepted "Contents."

Plaintiff's ECPA claim fails for another reason: she does not plausibly allege facts showing that the "contents" of any "communication" were acquired by any unauthorized party. "Contents" means "information concerning the substance, purport, or meaning" of the communication. 18 U.S.C. § 2510(8). Courts have interpreted contents as referring to "the intended message conveyed by the communication" and not including "record information" such as routing/record information or the name, address, or identity of a customer. *See In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106–07 (9th Cir. 2014); *In re Google Cookie Placement*, 806 F.3d at 135–39.

At most, Plaintiff generally claims that BCH received information about her webpage views (URLs and page titles), search term queries, drop down selections, and button clicks. *See, e.g.*, SAC ¶¶ 17, 19, 85, 105, 110, 164. But "search terms, information inputted by Plaintiff, and pages and content viewed by Plaintiff" are "precisely the type of non-record information that courts consistently find do not constitute 'contents' under the [ECPA]" because they do "not convey the substance or meaning of any message." *Goldstein v. Luxottica of Am., Inc.*, 2021 WL 4093295, at

*2 (S.D. Fla. Aug. 23, 2021). Even Plaintiff's portal allegations merely allege tracking of button clicks or webpage views. Accordingly, Plaintiff's claims must be dismissed for failure to plausibly allege an essential element of an ECPA claim. *See, e.g.*, *Nguyen v. Abbott Labs., Inc.*, 2026 WL 579206, at *4 (N.D. Ill. Mar. 2, 2026) ("[t]he fact that a form was completed, a button to subscribe was clicked, or a user was female is distinguishable from the kind of [PHI defendant] would need to disclose to be liable under the ECPA"); *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 70 (W.D. Pa. 2023) (navigating through website's multiple pages "not the substance of a communication").

## III. Plaintiff Fails To State A Claim For Invasion of Privacy (Count II).[6]

Under the Massachusetts Right to Privacy Act, G.L. c. 214 § 1B, a plaintiff may pursue a claim based upon a theory of public disclosure of private facts or intrusion upon seclusion, but for either theory must prove the facts gathered or disseminated were of a "highly personal or intimate nature" and that the invasion "resulted in an unreasonable, substantial or serious interference" with plaintiff's privacy. *Branyan v. Sw. Airlines Co.*, 105 F. Supp. 3d 120, 126 (D. Mass. 2015). And the invasion must be "both unreasonable *and* substantial or serious." *Wofse v. Horn*, 523 F. Supp. 3d 122, 137 (D. Mass. 2021). Plaintiff has failed to allege either of the two elements of this claim.

First, Plaintiff still has not alleged that BCH gathered or disseminated any "highly personal or intimate" facts about her or her children. Again, the SAC does not identify any specific information that she provided to BCH or that BCH collected about her or her children. *See supra* § II. Second, no one has a reasonable expectation of privacy in information "entered" on a public website, especially when they voluntarily provide the information. Numerous courts have

[6] BCH acknowledges that this Court and a handful of Massachusetts Superior court decisions have declined to dismiss claims for violation of the Massachusetts Right to Privacy Law, as well as negligence, breach of implied contract, and unjust enrichment. *See e.g.*, *Tenet Healthcare*, 731 F. Supp. 3d 142. As discussed above, these decisions pre-dated *Becerra*, as well as much of the case law in this developing area, and therefore lack the benefit of the most recent analysis for these types of claims. Further, as to the state court decisions, BCH respectfully submits that discussion of the issues in those rulings is perfunctory, turns on specific allegations in each case, and that more thorough decisions from federal courts finding allegations similar to Plaintiff's insufficient to state a claim are more persuasive.

dismissed similar privacy claims for these exact reasons. *See, e.g.*, *Koppel v. Moses*, 2020 WL 6292871, at *8–9 (D. Mass. Oct. 27, 2020) (dismissing invasion of privacy claim where plaintiff had "not alleged the disclosure of any private facts"); *Okash*, 2024 WL 1285779, at *7, n.9 (collecting cases; "[c]ourts generally agree that when a plaintiff voluntarily browses a healthcare website, there is no intrusion when the Pixel transmits information"); *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. Jul. 1, 2024) ("Contemporary internet browsing involves the collection of users' data . . . *and a reasonable user should expect as much*.").

Second, Plaintiff has failed to allege an invasion of privacy that was "both unreasonable and substantial or serious." *Wofse*, 523 F. Supp. 3d at 137. In assessing this factor, courts "balance the extent to which the defendant violated the plaintiff's privacy interests against any legitimate purpose the defendant may have had for the intrusion." *Clark v. Zwicker & Assocs., P.C.*, 2024 WL 2025568, at *7 (D. Mass. May 7, 2024). Even if Plaintiff had a reasonable expectation of privacy in public browsing activities, she does not claim BCH *used* her or her children's information for an improper purpose, but that it used such information for advertising purposes. There is nothing invidious about that legitimate business purpose. *See Squeri v. Mount Ida Coll.*, 954 F.3d 56, 69 (1st Cir. 2020) (invasion of privacy not unreasonable, serious, or substantial if "it had a legitimate business purpose"); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1067 (C.D. Cal. 2024) (disclosure of "routine medical searches and inquiries" not "highly offensive"); *Harrill v. Emanuel Med. Ctr.*, 2025 WL 1635428, at *7 (June 9, 2025 E.D. Cal.) (same).

## IV. Plaintiff Fails To State A Claim For Breach Of Fiduciary Duty (Count III).

To establish a breach of fiduciary duty, Plaintiffs "must show (1) the existence of a duty of a fiduciary nature", "(2) breach of that duty, and (3) a causal relationship between that breach and some resulting harm to the plaintiff." *Amorim Holding Financeria, S.G.P.S., S.A. v. C.P. Baker & Co.*, 53 F. Supp. 3d 279, 295 (D. Mass. 2014). Plaintiff has not satisfied any of these elements.

Plaintiff claims that BCH owed a duty to her and her children because BCH is a healthcare provider and her children were patients. *See* SAC ¶ 236. Even assuming that is true, "the existence of a fiduciary relationship does not mean that all interaction between the parties to that relationship is measured by the standards applicable to fiduciaries." *Korper v. Weinstein*, 783 N.E.2d 877, 881 (Mass. App. Ct. 2003). The fiduciary duty applies "only as to matters within the scope of the fiduciary relationship." *Id.*; *see also* RESTATEMENT (SECOND) OF TORTS § 874 cmt. a (1979) (fiduciary relationship covers "matters within the scope of the relation"). And Massachusetts courts have expressly declined "to expand the scope of the fiduciary duty a doctor owes a patient to include conduct beyond the context of medical treatment." *Korper*, 783 N.E.2d at 882 n.11.

When Plaintiff used BCH's public website—which is available to any person with access to the internet, regardless of patient status—she did so "beyond the context of medical treatment" and therefore outside the scope of any physician-patient relationship. *Id.*; *see also Kelley v. CVS Pharm., Inc.*, 2007 WL 2781163, at *6 (Mass. Super. Ct. Aug. 24, 2007). Browsing a public website is not "medical treatment," and BCH does not owe a fiduciary duty to every person who used its public website. As discussed above, BCH does not even have a way of knowing whether a website visitor *is* a patient (which Plaintiff is not). BCH could not have breached a fiduciary duty that it was not aware of. Plaintiff's theory that BCH owed a duty to her and her children because trust was assumed when she interacted with its website fails for the same reasons. *See* SAC ¶ 237.

Furthermore, to the extent that Plaintiff alleges that her children's PHI was disclosed via the patient portal, her allegations are insufficient to support a breach of fiduciary duty. Plaintiff does not allege what, if any, information from the portal was disclosed beyond vaguely stating she has reviewed medical records for her children. Even her generic hypothetical allegations related to unidentified "users" merely assert that button clicks and page views are disclosed—not that any substantive medical information is shared. SAC ¶¶ 136–37. Courts in this District have held similar

disclosures are insufficient to support a breach of fiduciary duty. *See Kelley*, 2007 WL 2781163, at *6 (although disclosure of information suggested plaintiff was a customer of pharmacy "and therefore had been prescribed some medication by some physician at some point in time" that information was not "so private, standing alone, as to constitute a breach" of fiduciary duty).

Moreover, Plaintiff's claim also fails for the independent reasons that she does not sufficiently allege causation or damages, as discussed below in Section VI, *infra*.

## V. Plaintiff Fails To State A Claim For Breach Of Confidence (Count V).

Plaintiff's claim for breach of confidence fares no better. For one thing, it's unclear whether Massachusetts recognizes a standalone cause of action for "breach of confidence." In the context of a physician-patient relationship, the Supreme Judicial Court has recognized a "fiduciary obligation to hold in trust confidential information." *Alberts v. Devine*, 479 N.E.2d 113, 118–20 (Mass. 1985). But Massachusetts courts have not recognized a duty of confidence in this context beyond the fiduciary duty articulated in *Alberts*. *See, e.g.*, *In re Shields Health Care Grp.*, 721 F. Supp. 3d 152, 165 (D. Mass. 2024) (referring to breach of "fiduciary duty of confidentiality"); *Tashjian v. CVS Pharm., Inc.*, 2020 WL 1931859, at *6 (D. Mass. Mar. 13, 2020) (analyzing claim for "breach of fiduciary duty of confidentiality"); *Kelley*, 2007 WL 2781163, at *5 (analyzing breach of fiduciary duty and confidentiality together); *Korper*, 783 N.E.2d at 881 ("physician has a fiduciary duty to maintain the confidentiality of a plaintiff's medical records"). The Court should therefore dismiss the breach of confidence claim, either as duplicative or for the same reasons as the fiduciary duty claim. *See supra* § IV; *Willitts v. Engie N.A. Inc.*, 2021 WL 2322833, at *4 (D. Mass. June 7, 2021) (dismissing breach of confidentiality claim with no physician disclosure).

## VI. Plaintiff Fails To State A Claim For Negligence (Count IV).

Plaintiff alleges BCH was negligent by failing to "exercise reasonable care in safeguarding and protecting" Plaintiff's and her children's PHI "from unauthorized disclosure." SAC ¶¶ 246–

47. To state a claim, Plaintiff must allege the "elements of duty, breach, causation and damages." *Zoll Med. Corp. v. Barracuda Networks, Inc.*, 565 F. Supp. 3d 101, 106 (D. Mass. 2021).

First, Plaintiff has failed to allege that BCH owed a duty of care. She claims BCH had a "special relationship" with patients that is recognized by "statute, regulations, industry ethical rules . . . and the common law." SAC ¶ 248. By now our response will be familiar: When Plaintiff visited BCH's public website, she did so as a member of the general public, not as a patient—and neither her children's patient status nor the unidentified "statutes" and "regulations" transforms otherwise-ordinary browsing activity into an interaction protected by a duty of care. *See TMC Health*, 2024 WL 4364150, at *7 (dismissing negligence claim because statutes did not "support a duty between a healthcare provider and people visiting its free, public website"; no duty to protect website visitors from having "interactions with the webpage logged and shared for advertising purposes"); *Roe No. 1 v. Children's Hosp. Med. Ctr.*, 16 N.E.3d 1044, 1052 (Mass. 2014) ("mere existence of a statute or regulation does not automatically give rise to a legal duty for the purpose of" negligence).[7] To the extent Plaintiff relies on portal allegations, our response is again familiar: Her vague allegations are insufficient to premise her claim on portal activity. *See supra* p. 6.

Second, Plaintiff fails to plausibly allege any breach of duty. Plaintiff's negligence claim is based on the alleged "unauthorized disclosure" of Plaintiff's "Private Information." SAC ¶¶ 246–47, 250–51. But as discussed above, the information allegedly disclosed is not PHI.

Third, Plaintiff has not alleged that she suffered cognizable harm as a result of BCH's alleged conduct. Plaintiff vaguely claims that her and her children's "[s]ensitive and confidential information" was disclosed, the threat of "unwanted targeted advertisements," and loss of

[7] The two laws Plaintiff identifies—M.G.L. c. 111 § 70E and HIPAA—are inapplicable. The first applies to "records of *treatment*" and "HIPAA is designed to protect the privacy of patients that receive *treatment*." *Grocela v. Gen. Hosp. Corp.*, 2012 WL 3205616, at *5 (Mass. Super. July 18, 2012). And neither creates a private right of action. *See Bailey v. Hosp. of the Univ. of Pa.*, 266 A.3d 654, 654 (Pa. Super. Ct. 2021).

"property rights." SAC ¶ 190. But as discussed above, the SAC provides no support for these allegations. It does not say (1) what, if any, specific information Plaintiff disclosed to BCH, (2) that any such information was disclosed to a third party, or (3) that she ever actually received any targeted advertisements. *See Bonewit v. New-Indy Containerboard LLC*, 2024 WL 4932186, at *2–3 (D. Mass. Dec. 2, 2024) (dismissing negligence claims for lack of damages because plaintiff had "shown no actual misuse or disclosure of his information"); *Reidy v. Umass Mem. Med. Ctr., Inc.*, 2021 WL 6777622, at *2 (Mass. Super. June 17, 2021) ("abstract concerns about possible future impairments of his rights as a patient, without actual damages" insufficient to state claim); *T.D. v. Piedmont Healthcare, Inc.*, 2024 WL 3972984, at *3 (N.D. Ga. Aug. 28, 2024) (plaintiff did not "explain how receiving targeted advertisements" caused harm; "[t]he better view from other courts around the country is that these types of damage claims are not actionable."); *Doe v. Village Podiatry Grp., LLC*, 2024 WL 5187261, at *2 (Ga. Super. Nov. 20, 2024) (dismissing claim based on "speculative or theoretical injuries rather than actual losses").

## VII. Plaintiff Fails To State A Claim For Breach Of Contract (Count VI).

To state a claim for breach of contract, Plaintiff must allege the existence of a valid contract between the parties, plaintiff's willingness to perform, breach of the contract, and damages as a result. *See In re Boston Univ. COVID-19 Refund Litig.*, 511 F. Supp. 3d 20, 23 (D. Mass. 2021). Plaintiff's breach of contract claim fails for multiple reasons.

First, there was no mutual assent. To create an enforceable contract, "there must be agreement between the parties on the material terms . . . and the parties must have an intention to be bound by that agreement." *Beauregard v. Meldon*, 2019 WL 6877185, at *3 (D. Mass. Dec. 17, 2019); *see also Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 230 (1st Cir. 2005) (affirming dismissal for "failure to reach agreement on the basic terms"). Plaintiff alleges that she was required to disclose her and her children's personal information "including

names, email addresses, phone numbers, computer IP addresses, [and] appointment information" to BCH's website "as a condition of receiving healthcare services," and thereby entered into an explicit or implied contract under which BCH agreed to protect that information. SAC ¶¶ 266–67. Every part of that assertion is wrong or misleading. BCH's public website does not provide healthcare services, and there is no method on the public website to provide the information Plaintiff lists in exchange for healthcare services. Nor does the SAC allege Plaintiff obtained medical services through the portal; only that she used the portal to *access* records. SAC ¶ 17.

Regardless of what Plaintiff believed, there is no support for the proposition that BCH agreed to "protect" her public website browsing data. To the extent Plaintiff alleges an explicit contract based on BCH's privacy policy, she does not claim any reliance on that document let alone that it contemplates BCH agreeing to keep *public browsing information* private. *See Shields*, 721 F. Supp. 3d at 162 (dismissing express contract claim for this reason); SAC ¶¶ 267–69. To the extent Plaintiff alleges an implied contract, she similarly fails to allege that BCH manifested assent to safeguard browsing information. *See Weekes v. Cohen Cleary P.C.*, 723 F. Supp. 3d 97, 104 (D. Mass. 2024) (dismissing implied contract claim where parties never "discussed the manner of safeguarding" PHI "or that plaintiff had a particular concern about disclosing that information"). Plaintiff's subjective beliefs that BCH would protect public browsing data are insufficient as a matter of law. *See Webb v. Injured Workers Pharm., LLC*, 2023 WL 5938606, at *3 (D. Mass. Sept. 12, 2023) (dismissing implied contract claim despite plaintiff's "good faith belief" PII was protected where defendant never agreed "explicitly or implicitly – to provide such protection").

Second, there was no consideration. A "promise to perform a pre-existing duty is not valid consideration." *Katz v. Pershing, LLC*, 806 F. Supp. 2d 452, 460 (D. Mass. 2011). If Plaintiff's browsing information *did* qualify as PHI (*but see* Section I.A.–C., *supra*), BCH would have a preexisting legal obligation under HIPAA to protect that information. *See TMC Health*, 2024 WL

4364150, at *8 (dismissing implied contract claim where defendant "was already required under HIPAA to protect patients in the ways" its policy promised); *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1367 (S.D. Fla. 2017) (where defendants were "required by law to adhere to HIPAA", its provisions could not "create contractual obligations"); *In re Banner Health Data Breach Litig.*, 2017 WL 6763548, at *4 (D. Ariz. Dec. 20, 2017) (same).

Third, for the reasons discussed above in Section VI, Plaintiff has not alleged any damages resulting from the alleged breach of contract.

**VIII. Plaintiff's Unjust Enrichment Claim Fails (Count VII).**

Plaintiff asserts a claim for unjust enrichment on the ground that she and her children "conferred a benefit upon [BCH] in the form of monetizable healthcare communications" that BCH collected and disclosed to third parties "without authorization and proper compensation." SAC ¶ 276. This claim fails because "a party with an adequate remedy at law cannot claim unjust enrichment." *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017). Plaintiff undoubtedly has remedies at law available through her statutory and common law claims against BCH. The ultimate "disposition of those claims is irrelevant." *Fernandes v. Havkin*, 731 F. Supp. 2d 103, 114 (D. Mass. 2010); *see also Shaulis*, 865 F.3d at 16 (affirming dismissal of unjust enrichment claim because "[i]t is the availability of a remedy at law, not the viability of that remedy, that prohibits" such claims); *Pershouse v. L.L. Bean, Inc.*, 368 F. Supp. 3d 185, 190 (D. Mass. 2019) (dismissing because breach of contract and statutory claims, while ultimately dismissed, were adequate remedies at law); *One Wheeler Rd. Assocs. v. Foxboro Co.*, 843 F. Supp. 792, 799 (D. Mass. 1994) (same); *ARE-Tech Square, LLC v. Galenea Corp.*, 2017 WL 634771, at *3 (Mass. App. Ct. Feb. 16, 2017) (same). The unjust enrichment claim should be dismissed.

**CONCLUSION**

The Court should dismiss the Second Amended Complaint with prejudice.

Dated: March 19, 2026

Respectfully submitted,

THE CHILDREN'S HOSPITAL CORPORATION

By: */s/ Lisa Oliver White*

Lisa Oliver White, BBO# 666841
**SHOOK, HARDY & BACON L.L.P.**
One Federal Street, Suite 2620
Boston, MA 02110
Tel: (617) 531-1411
lowhite@shb.com

Tammy B. Webb (*pro hac vice forthcoming*)
**SHOOK, HARDY & BACON L.L.P.**
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900
twebb@shb.com

Jad Sheikali (*pro hac vice*)
Tara D. Kennedy (*pro hac vice*)
Avery Epstein (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
111 South Wacker Drive, Suite 4700
Chicago, IL 60606
Tel: (312) 704-7700
jsheikali@shb.com
tkennedy@shb.com
aepstein@shb.com

***Attorneys for Defendant***

**LOCAL RULE 7.1 CERTIFICATION**

The undersigned certifies that pursuant to Local Rule 7.1, counsel for Defendant conferred with counsel for Plaintiff by email on March 19, 2026 concerning this motion, and have not been able to narrow the issues in dispute.

*/s/ Lisa Oliver White*
Lisa Oliver White

**CERTIFICATE OF SERVICE**

I, Lisa Oliver White, do hereby certify that on March 19, 2026, a true and correct copy of the foregoing document was served upon all counsel of record via the CM/ECF system of the United States District Court for the District of Massachusetts.

*/s/ Lisa Oliver White*
Lisa Oliver White