**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JANE DOE,<br><br>For herself and the Class,<br><br>v.<br><br>THE CHILDREN'S HOSPITAL CORPORATION,<br><br>Defendant. | **Case No. 1:25-cv-10343-PBS**<br><br>Leave to file overlength brief granted on April 13, 2026 (Doc. No. 66) |

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

SHAPIRO HABER & URMY LLP
Edward F. Haber (BBO #215620)
Michelle H. Blauner (BBO #549049)
Patrick J. Vallely (BBO #663866)
One Boston Place
Suite 2600
Boston, MA 02108
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
ehaber@shulaw.com
mblauner@shulaw.com
pvallely@shulaw.com

***Counsel for Plaintiff***

# Table of Contents

Page

I. Introduction .......... 1

II. The Facts .......... 1

III. Argument .......... 4

A. BCH Violated HIPAA. .......... 4

B. Plaintiff States a Claim for BCH's Violation of the ECPA. .......... 8

1. The ECPA's Crime-Tort Exception to One-Party Consent Applies. .......... 9

a. BCH Intercepted Communications for the Purpose of Committing Acts Which Violated HIPAA. .......... 11

b. BCH Intercepted Communications for the Purpose of Committing Acts that are Tortious under Massachusetts Law. .......... 14

c. BCH Engaged in Criminal and Tortious Acts Separate from the ECPA Violation. .......... 15

d. Conclusion on the Crime-Tort Exception .......... 18

2. BCH Intercepted the Contents of Plaintiff's Communications .......... 18

C. Plaintiff Adequately Alleges Her State Law Claims. .......... 19

1. Plaintiff States a Claim under the MRPA .......... 20

2. Plaintiff States a Claim for Breach of Fiduciary Duty .......... 22

3. Plaintiff States a Claim for Breach of Confidence .......... 23

4. Plaintiff States a Claim for Negligence .......... 24

5. Plaintiff States a Claim for Breach of Contract. .......... 24

6. Plaintiff Alleges Harm and Damages. .......... 25

7. Plaintiff States a Claim for Unjust Enrichment .......... 25

IV. Conclusion .......... 25

# Table of Authorities

Page

**Cases**

*A.J. v. LMND Med. Grp., Inc.*,
2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024) ....... passim

*Adair v. CIGNA Corporate Servs., LLC*,
2026 U.S. Dist. LEXIS 23288, at *27 (E.D. Pa. Feb. 4, 2026) ....... 28

*Adams v. Holder*,
692 F.3d 91 (2d Cir. 2012) ....... 23

*Alberts v. Devine*,
395 Mass. 59 (1985) ....... 32

*Alves v. BJ's Wholesale Club, Inc.*,
2023 Mass. Super. LEXIS 59 (Super. Ct. June 21, 2023) ....... 27, 28

*Am. Hosp. Ass'n v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ....... 7

*Bennett v. Eagle Brook County Store, Inc.*,
408 Mass. 355 (1990) ....... 33

*Borden v. United States*,
593 U.S. 420 (2021) ....... 12

*Brahm v. Hosp. Sisters Health Sys.*,
2024 U.S. Dist. LEXIS 114827 (W.D. Wis. June 28, 2024) ....... 14, 26, 31

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ....... 30

*Castillo v. Costco Wholesale Corp.*,
2024 U.S. Dist. LEXIS 207197 (W.D. Wash. Nov. 14, 2024) ....... 8, 18, 22, 24

*Conformis, Inc. v. Aetna, Inc.*,
58 F.4th 517 (1st Cir. 2023) ....... 13

*Cooper v. Mt. Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024) ....... 17, 22, 31

*Doe v. Bayhealth Med. Ctr. Inc.*,
2025 Del. Super. LEXIS 154 (Super. Ct. Apr. 2, 2025) ....... 7

*Doe v. Baystate Health Sys., Inc.*,
2026 U.S. Dist. LEXIS 57677 (D. Mass. Mar. 19, 2026) ....... passim

*Doe v. Bos. Med. Ctr. Corp.*,
2023 Mass. Super. LEXIS 674 (Super. Ct. Sep. 14, 2023) .......... 27, 28

*Doe v. Deaconess Ill. Union Cnty. Hosp.. Inc.*,
2025 U.S. Dist. LEXIS 192058 (S.D. Ill. Sept. 29, 2025).......... 9, 18, 21

*Doe v. Emerson Hosp.*,
2023 Mass. Super. LEXIS 673 (Super. Ct. Nov. 22, 2023).......... passim

*Doe v. Lawrence Gen. Hosp.*,
2025 U.S. Dist. LEXIS 195964 (D. Mass. Aug. 29, 2025) .......... passim

*Doe v. Lawrence Gen. Hosp.*,
Case No. 25-cv-10081-NMG, Doc No. 55 (D. Mass. Oct. 29, 2025) .......... 16

*Doe v. Medstar Health, Inc.*,
2020 Md. Cir. Ct. LEXIS 139 (Cir. Ct. Aug. 5, 2020) .......... 26, 30

*Doe v. Partners Healthcare*,
No. 1984CV01651-BLS1 (Mass. Super. Ct.).......... 4, 27, 30

*Doe v. Post Acute Med., LLC*,
2025 U.S. Dist. LEXIS 26667 (M.D. Pa. Feb. 14, 2025) .......... 24

*Doe v. Tenet Healthcare Corp.*,
731 F. Supp. 3d 142 (D. Mass. 2024).......... passim

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E. D. Cal. June 9, 2025).......... 21

*Doe v. Wellstar Health Sys., Inc.*,
799 F. Supp. 3d 1268 (N.D. Ga. 2025).......... 5, 14, 20, 24

*Gaige v. Exer Holdings Co., LLC*,
2025 U.S. Dist. LEXIS 17146 (C.D. Cal. Jan. 30, 2025) .......... 7

*Gay v. Garnet Health*,
2024 U.S. Dist. LEXIS 168515 (S.D.N.Y. Sept. 16, 2024) .......... 22, 34

*Getz v. CVS Health Corp.*,
No. 25-cv-04689, Doc. No. 79 (C.D. Cal. Oct. 24, 2025) .......... 9

*Grajales v. P.R. Ports Auth.*,
682 F.3d 40 (1st Cir. 2012) .......... 13

*Hannant v. Culbertson Mem'l Hosp. Found.*,
2026 U.S. Dist. LEXIS 57449 (C.D. Ill. Mar. 19, 2026).......... 20, 24

*Hartley v. Univ. of Chi. Med. Ctr.*,
2025 U.S. Dist. LEXIS 194466 (N.D. Ill. Oct. 1, 2025) .......... 8, 9, 21

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) ....................29

*I.T. v. Choicepoint LLC*,
2025 U.S. Dist. LEXIS 169202 (W.D. Wash. Aug. 29, 2025) .................... 8, 9, 20

*In re Allstate & Arity Consumer Privacy Litig.*,
2026 U.S. Dist. LEXIS 43200 (N.D. Ill. Mar. 3, 2026) ....................14

*In re BetterHelp, Inc. Data Disclosures Cases*,
2024 U.S. Dist. LEXIS 124321 (N.D. Cal. July 15, 2024) ....................18

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................29

*In re Google Inc.*,
806 F.3d 125 (3d Cir. 2015).................... 24, 29

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022)....................5, 19, 24, 29

*In re Meta Pixel Healthcare Litig.*,
713 F. Supp. 3d 650 (N.D. Cal. 2024)....................34

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024)....................10, 13, 34

*In re Pharmatrak, Inc. Privacy Litig.*,
329 F.3d 9 (1st Cir. 2003) ....................23

*Jarrell v. Adena Health Sys.*,
2025 U.S. Dist. LEXIS 6169 (S.D. Ohio Jan. 13, 2015) .................... 19, 23

*Jarrett v. Upperline Health, Inc.*,
2025 U.S. Dist. LEXIS 219352 (S.D Ind. Aug. 8, 2025)....................8

*Joffe v. Google, Inc.*,
746 F.3d 920 (9th Cir. 2013) ....................23

*Juenger v. Deaconess Health Sys., Inc.*,
2025 U.S. Dist. LEXIS 193628 (S.D. Ill. Sept. 30, 2025).................... 11, 21

*Kane v. Univ. of Rochester*,
2024 U.S. Dist. LEXIS 48515 (W.D.N.Y. Mar. 19, 2024)....................8

*Korper v. Weinstein*,
57 Mass. App. Ct 433 (App. Ct. 2003)....................30

*Krzyzek v. Openx Techs., Inc.*,
2026 U.S. Dist. LEXIS 15195 (N.D. Cal. Jan. 27, 2026) ....................19

*Kurowski v. Rush Sys. for Health*,
2023 U.S. Dist. LEXIS 219895 (N.D. Ill. Dec. 11, 2023) .......... 10, 22

*Kurowski v. Rush Sys. for Health*,
2024 U.S. Dist. LEXIS 126837 (N.D. Ill. July 18, 2024) .......... 12, 18

*Lamarr v. Goshen Health Sys., Inc.*,
2024 Ind. Super. LEXIS 107 (Super. Ct. Oct. 3, 2024) .......... 26, 31, 34

*Li v. Off. of Transcription Servs.*,
2016 Mass. App. Unpub. LEXIS 1079 (App. Ct. Nov. 8, 2016) .......... 32

*Lugo v. Inova Health Care Servs.*,
2025 U.S. Dist. LEXIS 55590 (E.D. Va. Mar, 25, 2025) .......... 14, 22

*M.G. v. Therapymatch*,
2024 U.S. Dist. LEXIS 166534 (N.D. Cal. Sept. 16, 2024) .......... 24

*M.R. v. Salem Health Hosps. & Clinics*,
2024 U.S. Dist. LEXIS 155513 (D. Or. Aug. 28, 2024) .......... 8

*McClain v. Cap. Vision Servs.*, LLC,
2026 U.S. Dist. LEXIS 52341 (N.D. Ill. Mar. 13, 2026) .......... 20

*McCulley v. BannerHealth*,
2024 U.S. Dist. LEXIS 85232 (D. Ariz. May 10, 2024) .......... 25

*McManus v. Tufts Med. Ctr., Inc.,*
2025 U.S. Dist. LEXIS 191546 (D. Mass. Sep. 29, 2025) .......... 11, 15, 16, 17

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024) .......... 22

*Muscarello v. United States*,
524 U.S. 125 (1998) .......... 23

*Nix v. O'Malley*,
160 F.3d 343 (6th Cir. 1998) .......... 23

*Polay v. McMahon*,
468 Mass. 379 (2014) .......... 26, 27, 28

*Progin v. UMass Memorial Health Care, Inc.*,
2026 U.S. Dist. LEXIS 46522 (D. Mass. Mar. 6, 2026) .......... 11, 15, 21

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 19, 25, 26

*R.S. v. Prime Healthcare Servs.*,
2025 U.S. Dist. LEXIS 6338 (C.D. Cal. Jan. 13, 2025) .......... 15, 18, 21

*Ramirez v. Lasikmd USA, Inc.*,
2026 U.S. Dist. LEXIS 14108 (S.D. Cal. Jan. 26, 2026) ........ 15, 19

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ........ 18

*Rodriguez v. Google, LLC*,
2026 U.S. Dist. LEXIS 20412 (C.D. Cal. Jan. 30, 2026) ........ 29

*Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
409 Mass. 514 (1991) ........ 26

*SEC v. Willis*,
787 F. Supp. 58 (S.D.N.Y. 1992) ........ 31

*Semien v. Pubmatic Inc.,*
2026 U.S. Dist. LEXIS 15196 (N.D. Cal. Jan. 27, 2026) ........ 18

*Smith v. Loyola Univ. Med. Ctr.*,
2024 U.S. Dist. LEXIS 119995 (N.D. Ill. July 9, 2024) ........ 25

*Smith v. Rack Room Shoes, Inc.*,
2025 U.S. Dist. LEXIS 149750 (N.D. Cal. Aug. 4, 2025) ........ 22

*Stein v. Edward-Elmhurst Health,*
2025 U.S. Dist. LEXIS 31273 (N.D. Ill. Feb. 21, 2025) ........ 11, 12, 17, 21

*T.S. v. Body Contour Ctrs., LLC*,
2025 U.S. Dist. LEXIS 128429 (W.D. Wash. July 7, 2025) ........ 10

*Theys v. Dental Intel., Inc.*,
2026 U.S. Dist. LEXIS 46654 (N.D. Ill. Mar. 6, 2026) ........ 14

*United States v. O'Hagan*,
521 U.S. 642 (1997) ........ 31

*Vita v. Blue Cross Blue Shield of Mass.*,
No. 25-cv-10420, Doc. No. 26 (D. Mass. Oct. 17, 2025) ........ 7

*Vriezen v. Infinite Health Collaborative, P.A.*,
2025 U.S. Dist. LEXIS 211708 (D. Minn. Sep. 30, 2025) ........ 14

*Weekes v. Choen Cleary P.C.*,
723 F. Supp. 3d 97 (D. Mass. 2024) ........ 32

*Weld v. CVS Pharmacy*,
1999 Mass. Super. LEXIS 261 (Super Ct. June 1, 1999) ........ 32

*Wiley v. Universal Music Grp., Inc.*,
2025 U.S. Dist. LEXIS 261303 (N.D. Cal. Dec. 17, 2025) ........ 29

*Williams v. TMC Health*,
No. 23- cv-00434, Dkt. No. 56 (D. Ariz. Aug. 19, 2025) ....................16

*Yoon v. Meta Platforms, Inc.*,
2024 U.S. Dist. LEXIS 234457 (N.D. Cal. Dec. 30, 2024)....................25

**Statutes**

18 U.S.C. § 2510....................18

18 U.S.C. § 2511 .................... 9, 17

42 U.S.C. § 1320d-6 ....................5

M.G.L. c. 214 § 1B....................20

MPC § 2.02 ....................10

**Other Authorities**

*Health Information Privacy*,
U.S. Dep't of Health and Human Services (July 26, 2013)....................5

Restat. 3d of Agency § 8.05 ....................23

*Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates,*
U.S. Dep't of Health & Human Services (Dec. 1, 2022) ....................5

**Rules**

Fed. R. Civ. P. 8 ....................10

**Regulations**

45 C.F.R. § 160.103.................... 5, 6

45 C.F.R. § 164.508.................... 5, 17

45 C.F.R. § 164.510....................6

## I. INTRODUCTION

This case is about a hospital's betrayal of patient privacy for its own commercial gain. Plaintiff and other patients and family members trusted The Children's Hospital Corporation, d/b/a/ Boston Children's Hospital ("BCH"), to protect their personal medical communications. BCH assured patients it would keep those confidences. Despite its promises, BCH installed hidden tracking technologies on its website that functioned as a wiretap. Using tracking technologies, BCH intercepted communications between patients (and family members) and BCH, including communications that revealed an individual's patient status, doctors, medical conditions, and treatments. BCH then disclosed those communications and identifying information to Facebook and Google. BCH later exploited the intercepted communications to serve ads on Google and Facebook, targeting patients based on the content of those communications, including their medical conditions and treatments.

BCH's motion to dismiss the Second Amended Complaint ("SAC") lacks merit. The one-party consent defense in the Electronic Communications Privacy Act ("ECPA") does not apply because BCH intercepted the contents of patient communications for the primary purpose of committing criminal or tortious acts separate from the ECPA violation, in two ways: First, it knowingly disclosed intercepted patient communications to Google and Facebook in violation of the Health Insurance Portability and Accountability Act ("HIPAA"), Massachusetts tort law (including Massachusetts Right to Privacy Act ("MRPA")), and BCH's own promises to patients. Second, BCH exploited the intercepted patient communications for marketing purposes, further violating federal and state law.

BCH also violated Massachusetts law. Massachusetts courts have consistently affirmed the claims Plaintiff asserts here, arising from the same conduct. BCH's challenges to those claims lack merit, and there is no reason for the Court to depart from established authority sustaining such claims.

BCH's motion to dismiss the SAC should be denied.

## II. THE FACTS.

During the Class Period, Plaintiff—whose children are BCH patients—regularly communicated

with BCH through its website. She used the MyChildren's Patient Portal to review her children's medical records. SAC ¶¶ 17, 19, 126-38 (hereinafter "¶¶ __"). She also obtained information about her children's doctors and their symptoms, conditions, and medical procedures. ¶¶ 17, 19, 106-12, 117-19. BCH secretly intercepted these communications by embedding tracking technologies throughout its website, which first duplicated the communications and then disclosed them to Google, Facebook, and other companies. ¶¶ 2-3, 74-85.

Facebook and Google's businesses are built on ads targeted to individuals based on behavioral profiles the companies amass for practically every person. ¶¶ 44-50, 56-63, 65. Tracking technologies help build these individual profiles. ¶¶ 42-65. Facebook and Google advertise to businesses like BCH that tracking technologies enable them to optimize and run data-driven ads. ¶¶ 46-48, 58-61. BCH's primary purpose in deploying tracking technologies was to disclose the intercepted communications to Google and Facebook and then target ads to BCH patients based on the content of those communications. ¶¶ 34-35, 44-54, 56-65, 78-79, 85-86, 94, 102, 108-12, 115-16, 119, 121-22, 125, 130, 138, 153-55, 163-66.

BCH configured its website and tracking technologies to intercept and disclose the substance of patient communications to Facebook and Google, revealing patients' status as BCH patients through communications within the patient portal (¶¶ 126-38) and appointment request forms (¶¶ 120-25). BCH also configured tracking technologies to disclose detailed information about patients' doctors (including appointment requests for specific doctors) (¶¶ 117-19), the precise terms patients used to obtain medical information (¶¶ 113-16), and their specific medical conditions and treatments (¶¶ 106-12).[1] BCH configured tracking technologies to allow Google and Facebook to associate intercepted communications with individuals' real-world identities, which enabled BCH, Google, and Facebook to target BCH patients

[1] BCH achieved this outcome by configuring its website and the tracking technologies to disclose "descriptive URLs." URLs are addresses for webpages but can also reveal information about the substance of the communication—those URLs are called "descriptive URLs." ¶ 71. Descriptive URLs on the BCH website revealed the names of particular medical conditions for which patients (including Plaintiff) requested information (¶¶ 71, 76, 107-08); appointment requests for particular specialties (¶¶ 120-23); search terms patients entered (¶¶ 114-15); and details regarding patients' doctors (¶¶ 118-19).

with ads based on the content of those communications. ¶¶ 42-65, 70, 78-79, 93, 95-98, 102-04.

As BCH knew, tracking technologies are designed to disclose individuals' real-world identities to Google and Facebook to facilitate targeted ads based on the content of their intercepted communications. ¶¶ 44, 53-54, 58-64, 70, 76, 93, 95-98, 102-04. So, when an individual searched BCH's website for information about particular doctors or treatments, Google and Facebook associated that information with the patient's real-world identity. *Id.* & ¶¶ 108-12, 115-16, 119, 121-22, 125, 127.

Plaintiff personally communicated with BCH during the Class Period through specific pages on which BCH deployed tracking technologies, including (i) BCH's patient portal; (ii) BCH's searchable database of doctors; and (iii) pages on which Plaintiff communicated about her children's medical conditions and procedures. ¶¶ 17, 19, 106-12, 117-19, 126-38. Those interceptions revealed to Facebook and Google Plaintiff's identity, that Plaintiff was a BCH patient or family member seeking medical care at BCH, and detailed information about her children's doctors and conditions. ¶¶ 27, 72, 78-79, 102, 106-12, 117-19, 126-38. BCH used Facebook and Google's ad platforms to target patients and their parents, including Plaintiff, with ads based on the content of the intercepted communications. ¶¶ 52-54, 62-64, 108-12, 119, 127, 130, 138. Examples of such targeted ads are reproduced at ¶¶ 62 and 109-10.

Tracking technologies are designed to be undetectable to ordinary internet users. ¶¶ 51, 66, 73, 75, 80, 90-91. Rather than disclose tracking technologies, BCH promised patients and their family members that it would not engage in the precise conduct it in fact engaged in. It promised that it "[does] not share voluntarily provided, personally identifiable information for any purpose other than its intended use." ¶ 34. In fact, tracking technologies were designed to identify patients so that Google, Facebook, and BCH could use the intercepted communications to target advertising. *Id.* BCH also promises to collect "basic web log file data" only for "site management and administration" purposes, but in reality, BCH intercepts and discloses the content of website communications to Google and Facebook for marketing purposes. ¶ 35. BCH also promised patients: "We do not sell visitors' or personal information to third parties, such as marketers." ¶ 37. In fact, this is the precise function of tracking technologies: to

barter patient communications to marketers for BCH's own commercial gain. *Id.*

Google and Facebook warned BCH to obtain user consent for tracking technologies and to refrain from using them on healthcare webpages, regardless of consent. ¶¶ 54, 64. Ignoring such warnings, BCH obtained no consent and instead made false promises to patients and, worse, deployed tracking technologies on pages designed for patients, such as the patient portal (including secure portions accessed after logging in), all without obtaining patient consent. ¶¶ 6, 9-10, 21, 34-37, 120-38.

## III. ARGUMENT

### A. *BCH Violated HIPAA.*

Plaintiff asserts no claim under HIPAA, and none of Plaintiff's claims require proof of a HIPAA violation. Plaintiff does allege, in anticipation of BCH's one-party consent defense to her ECPA claim, that BCH intercepted communications for the primary purpose of engaging in acts that violate HIPAA, which, under ECPA's crime-tort exception, transforms ECPA into a two-party consent statute. ¶¶ 143-70, 212-19. But Plaintiff ***also*** alleges several other bases for invoking the crime-tort exception, including the tort claims she asserts in her complaint.[2] ¶¶ 220, 223-43, 253-64. Indeed, Judge Kobick, in denying a recent motion to dismiss on similar facts, held: "In light of the alleged violation of [the MRPA], the Court need not consider whether [the hospital] also acted with the intent to violate [HIPAA]," underscoring that a HIPAA violation is not essential to Plaintiff's ECPA claim. *Doe v. Baystate Health Sys., Inc.,* 2026 U.S. Dist. LEXIS 57677, at *13, n. 1 (D. Mass. Mar. 19, 2026).[3] In any event, BCH is wrong to argue that Plaintiff alleges no HIPAA violation. BCH Memorandum in Support of Motion to Dismiss, Doc. No. 64 (hereinafter "Mem.") at 4-7.

HIPAA protects "information…[that] relates to…the provision of health care to [the] individual [and for] which there is a reasonable basis to believe can be used to identify the individual." 45 C.F.R. §

---

[2] Although HIPAA and other privacy laws inform the contours of Plaintiffs' negligence claim (¶ 249), that claim does not depend on a violation of HIPAA. *See* § III-C-4, *infra.*

[3] *See also Doe v. Partners Healthcare Sys.*, No. 1984CV01651-BLS1 (Mass. Super. Ct. Nov. 20, 2020) at 39 (motion to dismiss decision and transcript previously filed at Doc. No. 27-3) ("HIPAA is a bit of a red herring…. I'm not persuaded that HIPAA really has much of a role to play in the analysis that I have to undertake.").

160.103. "Information which connects an individual with a healthcare provider 'is indicative that an individual has received or will receive medical services,'" is protected health information ("PHI"), as it "'relates to the individual's past, present, or future health or health care.'" *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 792 (N.D. Cal. 2022) (quoting *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates,* U.S. Dep't of Health and Human Services (Dec. 1, 2022)). Put another way, "patient status is protected health information under HIPAA," and therefore, website communications that "show[] patient-status constitute[] protected health information" under HIPAA. *Id.* at 792-93.

HIPAA prohibits healthcare providers from "knowingly 'disclos[ing] individually identifiable health information" and imposes "penalties when a covered entity discloses the information with the intent to use it 'for commercial advantage….'" *Doe v. Wellstar Health Sys., Inc.*, 799 F. Supp. 3d 1268, 1279 (N.D. Ga. 2025); 42 U.S.C. § 1320d-6(b)(3). In addition to prohibiting disclosure, HIPAA ***also*** prohibits "any use…of [PHI] for marketing." 45 C.F.R. § 164.508(a)(3)(i).[4]

BCH was aware of its obligations under HIPAA. In its Notice of Privacy Practices, BCH states: "We are required by law to maintain the privacy and security of your PHI" and "We will not use or share your information other than as described here unless you tell us we can in writing." ¶ 211.

BCH argues that communications on a "*public* website…do not implicate PHI" under HIPAA. Mem. 5-6 (emphasis in original). BCH gives parents of minor children, guardians of minor children, and children over the age of 13 access to a patient portal where medical records can be accessed. BCH, unlike most other hospitals, deployed tracking technologies not just on publicly available web pages leading to the patient portal but also deployed the tracking technologies inside the secure patient portal, which requires patients to log in, revealing every action a patient took, including accessing medical records, medication information, and bill review and payment functions. ¶¶ 7, 126-38. Such interceptions within

[4] *Health Information Privacy*, U.S. Dept. of Health and Human Services (July 26, 2013), available at https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/marketing/index.html ("With limited exceptions, the [Privacy] Rule requires an individual's written authorization before a use or disclosure of his or her [PHI] can be made for marketing… Simply put, a covered entity may not sell protected health information to a business associate or any other third party for that party's own purposes.").

a ***non-public*** patient portal indisputably involve PHI, including, at a minimum, revealing patient status. *Doe v. Lawrence Gen. Hosp.*, 2025 U.S. Dist. LEXIS 195964, at *20-21 (D. Mass. Aug. 29, 2025) (collecting "numerous decisions involving allegations that web tracking tools…deployed within patient portals or billing portals, which may implicate significantly greater privacy issues than tracking public web pages").

BCH summarily declares that Plaintiff's in-portal allegations are "conclusory" because they do "explain what data…was shared" or "how Google and Meta might link it to her children's identities." Mem. 6-7. These arguments ignore Plaintiff's allegations and theory of liability. Plaintiff describes the substance Defendants intercepted and transmitted to Google and Facebook, including every step a patient or family member took in the portal. ¶¶ 126-38. These interceptions revealed, at a minimum, an individual's status as a BCH patient or a patient's family member, which, as explained above, is PHI without more.[5] The fact that Facebook or Google may not know Plaintiff's ***children's*** identities is beside the point; the tracking technologies, by design, connect the intercepted communications with Plaintiff's real-world identity, ¶¶ 42-65, 70, 78-79, 93, 95-98, 102-04, and HIPAA's protections extend to close family members of patients, including parents, 45 C.F.R. § 160.103 ("[f]amily member" includes "[a] dependent" or "parent"); 45 C.F.R. § 164.510(b)(1) (permitting disclosures to patient's "family member").

BCH, in any event, is wrong to argue that public webpages can never reveal PHI.[6] BCH deployed

[5] In this respect, this case differs from *Vita v. Blue Cross Blue Shield of Mass.*, No. 25-cv-10420, Doc. No. 26 (D. Mass. Oct. 17, 2025) (Mem. 4). The plaintiff there accessed an ***insurance company's*** portal. Judge Sorokin held that insurance "policyholder status" does not have the same legal significance as patient status. *Id.* at 4 & n.4. The plaintiff also had not alleged interceptions that revealed information about her doctors or specific medical conditions, *id.* at 8 & n.5, as Plaintiff does here.

[6] *Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780 (N.D. Tex. 2024), is not to the contrary. *Becerra* did not hold that communications on "public" pages can never reveal PHI. *Becerra* vacated part of a bulletin issued by the Department of Health and Human Services relating to a "Proscribed Combination" of an "IP address" and a public page "addressing specific health conditions or healthcare providers," holding disclosure of those two facts alone is insufficient for a HIPAA violation. 738 F. Supp. 3d at 789. ***None*** of Plaintiff's claims, however, depends on the HHS Bulletin or the "Proscribed Combination." ¶¶ 200-81. BCH's deployment of tracking technologies on public pages designed for patients (or family members), including its patient portal, distinguishes this case from *Becerra*. ¶¶ 120-38. *Becerra* did not consider interceptions that reveal patient status as alleged here. *Gaige v. Exer Holdings Co., LLC*, 2025 U.S. Dist. LEXIS 17146, at *10 (C.D. Cal. Jan. 30, 2025) (*Becerra* does ***not*** preclude invoking HIPAA under the ECPA's crime-tort exception where "Plaintiff's claims are not premised on a violation of HHS guidance, but rather…on violations of various statutes and common law"); *Doe v. Bayhealth Med. Ctr. Inc.*, 2025 Del. Super. LEXIS 154, at *16-17 (Super. Ct. Apr. 2, 2025) ("[T]he

tracking technologies on other pages that, although publicly accessible, are designed for patients and also reveal patient status, including appointment request pages and pages used to navigate to the portal. ¶¶ 119-27. Such pages may reveal patient status even though publicly accessible. *Meta Pixel Healthcare*, 647 F. Supp. 3d at 792-93 (interceptions showing "user is about to log in to a healthcare provider's website" reveal patient status); *M.R. v. Salem Health Hosps. & Clinics*, 2024 U.S. Dist. LEXIS 155513, at *10-11, 16-17 (D. Or. Aug. 28, 2024) (interceptions on "financial assistance form" disclose "status as a patient"); *I.T. v. Choicepoint LLC*, 2025 U.S. Dist. LEXIS 169202, at *23 (W.D. Wash. Aug. 29, 2025).[7]

BCH also configured the tracking technologies to intercept information about Plaintiff's children's doctors, medical conditions, and treatments. ¶¶ 17, 19, 106-12, 117-19. Disclosing such information also violates HIPAA,[8] particularly since BCH exploited the content of intercepted communications to serve targeted ads to patients about specific treatments and conditions. ¶¶ 108-10, 118-19. But even if communications about doctors, conditions, and treatments were not, on their own, HIPAA-protected, BCH did not disclose those communications in isolation; rather, it disclosed them alongside communications that revealed patient status, linking all such communications to patients' real-

HHS guidance vacated by *Becerra* has no impact on a plaintiff's disclosure allegations when the plaintiff's claims are based on statutory and common law violations").

[7] *See also Jarrett v. Upperline Health, Inc.*, 2025 U.S. Dist. LEXIS 219352, at *4, 9 (S.D Ind. Aug. 8, 2025) (appointments scheduled through public pages revealed patient status); *Kane v. Univ. of Rochester*, 2024 U.S. Dist. LEXIS 48515, at *5-7, 16 (W.D.N.Y. Mar. 19, 2024) (patient status captured where interceptions showed individuals had clicked "the 'Schedule an Appointment' button or click[ed] the physician's phone number to schedule an appointment"); *Hartley v. Univ. of Chi. Med. Ctr.*, 2025 U.S. Dist. LEXIS 194466, at *7-15 (N.D. Ill. Oct. 1, 2025) ("act of logging into a healthcare provider's patient portal when combined with individual identifiers such as an IP address or a Facebook ID, can reveal patient status," and "patient status…constitutes individually identifiable health information," even in absence of allegations regarding the use of tracking technologies "within" a patient portal); *Castillo v. Costco Wholesale Corp.*, 2024 U.S. Dist. LEXIS 207197, at *23-24 (W.D. Wash. Nov. 14, 2024) (Costco collected HIPAA-protected "information about when [they] click[ed] a 'Refill Prescription' button that prompts a 'Sign In' page," which "'relate[d] to' [their] individualized health conditions even though they d[id] not allege that their data were collected while they were logged into their patient portals").

[8] *Hartley*, 2025 U.S. Dist. LEXIS 194466, at *7-8 ("'find-a-physician'" pages and pages about "providers, conditions, and treatments" may include protected information); *Doe v. Deaconess Ill. Union Cnty. Hosp. Inc.*, 2025 U.S. Dist. LEXIS 192058, at *27 (S.D. Ill. Sept. 29, 2025) (interceptions of "symptoms, providers, and services" disclosed of HIPAA-protected information); *I.T.*, 2025 U.S. Dist. LEXIS 169202, at *9 (public searches for physicians by particular specialty sufficient to allege information "'about a present medical condition and the provision of medical care covered by HIPAA'").

world identities. These allegations, considered together, palpably demonstrate a HIPAA violation.

Finally, BCH's argument that Plaintiff fails to allege sufficient detail regarding her communications (Mem. 4-5) ignores the law and Plaintiff's allegations. To repeat, a disclosure of patient status alone is sufficient to show a HIPAA violation. Plaintiff also alleges specific categories of information intercepted, including information about her children's doctors, conditions, and treatments. If BCH means to argue that Plaintiff must, to vindicate privacy rights, identify in her complaint by name her children's doctors, medical conditions, and procedures, that is palpably wrong. *Getz v. CVS Health Corp.*, No. 25-cv-04689, Doc. No. 79 at 18-19 (C.D. Cal. Oct. 24, 2025) ("Plaintiff argues he need not divulge the particular medical condition and medicine to establish the sensitivity of his Private Information…, and there is support for Plaintiff's contention…. The Court finds allegations of the specific product or condition would not further satisfy notice pleading rules under Rule 8.").[9]

B. *Plaintiff States a Claim for BCH's Violation of the ECPA.*

BCH violated the ECPA by intercepting, disclosing to third parties, and later exploiting patient communications. BCH contends that this "theory of ECPA liability has been resoundingly and uniformly rejected in this district" (Mem. 7), but this is simply untrue. BCH ignores (i) the significant growing weight of authority nationally affirming claims like those here; (ii) Judge Kobick's decision in *Baystate* affirming Plaintiff's theory, 2026 U.S. Dist. LEXIS 57677; (iii) several decisions BCH cites did ***not*** reject Plaintiff's legal "theory" but instead found the particular facts alleged insufficient, as reflected by those courts permitting amendment to address such deficiencies; and (iv) the pending appeal of the ***only*** judge in this District to have dismissed similar claims with prejudice.

[9] *See also T.S. v. Body Contour Ctrs., LLC*, 2025 U.S. Dist. LEXIS 128429, at *5-6 (W.D. Wash. July 7, 2025) (holding that requiring "plaintiffs who seek to vindicate their privacy rights to publicly link their names to the [very] information they seek to protect…is against the public interest, as it could dissuade plaintiffs from bringing privacy cases") (quotations omitted); *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1004 (N.D. Cal. 2024) ("Plaintiffs do not need to plead the specific and presumably highlight sensitive contents of the communications they say were intercepted in order to plausibly allege that interception occurred"); *Kurowski v. Rush Sys. for Health*, 2023 U.S. Dist. LEXIS 219895, at *7-8 (N.D. Ill. Dec. 11, 2023) (affirming the sufficiency of allegations very similar to those here, which described the categories of information intercepted without disclosing the names of the plaintiff's doctors or her specific medical conditions).

1. The ECPA's Crime-Tort Exception to One-Party Consent Applies.

The ECPA provides a defense to a party that has intercepted a communication:

> It shall not be unlawful under this chapter for a person…to intercept a[n]…electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d). Thus, "one is normally not liable for intercepting her own communications but may be liable if her conduct satisfies the crime or tort exception." *Juenger v. Deaconess Health Sys., Inc.*, 2025 U.S. Dist. LEXIS 193628, at *24-25 (S.D. Ill. Sept. 30, 2025) (quotations omitted). The crime-tort exception does not require the intercepting party to have a conscious objective to break the law. Judge Burroughs adopted the prevailing standard in a decision addressing the same conduct, endorsing *Stein v. Edward-Elmhurst Health,* 2025 U.S. Dist. LEXIS 31273, at *14 (N.D. Ill. Feb. 21, 2025), and holding:

> The text [of § 2511(2)(d)] points to the 'purpose of committing any criminal or tortious act.' Separating the adjectives from the noun might shed a little light. The purpose must be to commit an act, and that act must be criminal or tortious. ***If the purpose is to do X, and if X is a crime or a tort, then the crime-tort exception to the one-party consent rule applies. A desire to commit a crime qua crime, or a tort qua tort, isn't necessary.***

*McManus v. Tufts Med. Ctr., Inc.,* 2025 U.S. Dist. LEXIS 191546, at *8-9 n.1 (D. Mass. Sep. 29, 2025) (emphasis added) (quoting *Stein*). She reiterated that holding recently in *Progin v. UMass Memorial Health Care, Inc.*, 2026 U.S. Dist. LEXIS 46522, at *12 (D. Mass. Mar. 6, 2026). The court in *Stein* explained:

> The placement of "criminal or tortious" is telling. That phrase modifies "act," not "purpose." The statute does not require a "criminal or tortious purpose." It requires a purpose of committing an act—an act that is criminal or tortious. A person can have a purpose of committing an act that is criminal or tortious, without having a criminal or tortious purpose…. Congress could have required a showing that the person acted with a criminal or tortious purpose…. But that's not what the text says. ***The "act" must be criminal or tortious, but the "purpose" does not need to be criminal or tortious.***

*Id.* at *14-16. Accordingly, when the word "purpose" is construed in connection with the object the ECPA describes—an "act" that is "criminal or tortious"—the statute cannot be read to require "[a] party…to say, in effect, 'I want to commit a crime,' or 'today is a great day to commit a tort." *Id.* at *14.

Similarly, in *Kurowski v. Rush Sys. for Health*, the court considered the ECPA's terms to determine

the type of "purpose" it requires. 2024 U.S. Dist. LEXIS 126837, at *10-11 (N.D. Ill. July 18, 2024). The court held that it: "sees no persuasive reason to read a heightened willfulness requirement into the crime-or-tort exception…. [T]he 'purpose' requirement [of the ECPA] applies to 'any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.' That sweeps in both sophisticated offenses and straightforward ones." *Id.* at *12-13. Indeed, under federal criminal law, "purpose" does not require knowledge of illegality. "A person acts purposefully when he 'consciously desires' a particular result." *Borden v. United States*, 593 U.S. 420, 426 (2021).[10]

BCH's "purpose" in intercepting communications is a question of its state of mind, to which Rule 8 applies. *Meta Pixel Tax*, 724 F. Supp. 3d at 1005 (applying Rule 8 to ECPA). Rule 8 "does not demand a plentitude of factual content" and "[f]or pleading purposes, circumstantial evidence often suffices to clarify a protean issue such as an actor's motive or intent," given "[d]irect evidence" on state of mind is "rare." *Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 528, 535-36 (1st Cir. 2023); *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 49 (1st Cir. 2012) (lack of "direct evidence" of state of mind not "fatal," given "smoking gun" on state of mind "is rarely available" at pleading stage). "Whether [the hospital] was primarily or determinatively motivated to intercept and share Doe's communications with Meta and Google for a lawful purpose…an unlawful purpose…or both is a question of fact not fit for resolution at the pleading stage." *Baystate*, 2026 U.S. Dist. LEXIS 57677, at *13-14.

Applying the proper pleading-stage standard, the SAC amply supports the crime-tort exception. Plaintiff alleges BCH configured tracking technologies on its website and had complete control over what information it disclosed to Google and Facebook. ¶¶ 2, 36, 52, 66-67, 71, 74, 84-86, 100, 105, 140-42, 205. BCH knew of the privacy implications of deploying tracking technologies that would disclose confidential communications to Facebook and Google in violation of HIPAA, the MRPA, and its own

[10] Per the Model Penal Code ("MPC"), a requirement that a party act "purposely" is met when its "conscious object [is] to engage in ***[the] conduct***" at issue. MPC § 2.02(2)(a) (emphasis added). "Neither knowledge nor recklessness or negligence as to whether conduct constitutes an offense or as to the existence, meaning or application of the law determining the elements of an offense [is required] unless the definition of the offense or the Code so provides." *Id.* § 2.02(9).

promises to its patients. ¶¶ 10, 47-52, 54, 60-61, 64. BCH used the intercepted communications for targeted internet ads; indeed, that was BCH's primary purpose in deploying tracking technologies. ¶¶ 34-35, 44-54, 56-65, 78-79, 85-86, 94, 102, 108-12, 115-16, 119, 121-22, 125, 130, 138, 153-55, 163-66. BCH did all this without obtaining patient consent, even though Google and Facebook warned BCH not to use tracking technologies without consent or on webpages with health information. ¶¶ 9-10, 54, 64, 213.

These fact allegations—which must be deemed true—readily support the inference that BCH intercepted communications for the purpose of engaging in criminal and tortious acts, namely the disclosure of patient communications to third parties and the exploitation of such communications for marketing, in violation of HIPAA and Massachusetts tort law.

a. BCH Intercepted Communications for the Purpose of Committing Acts Which Violated HIPAA.

As argued above (§ III-A, *supra*), BCH's disclosure and commercial exploitation of patient communications, revealing patient status and information about patients' medical conditions and doctors, violated HIPAA. The crime-tort exception applies because Plaintiff plausibly alleges that those unlawful acts were BCH's primary purpose in deploying tracking technologies.

The ECPA's crime-tort exception is satisfied when a hospital uses tracking technologies to intercept patient communications for the purpose of disclosing information protected by HIPAA.[11] BCH

[11] *See In re Allstate & Arity Consumer Privacy Litig.*, 2026 U.S. Dist. LEXIS 43200, at *32-33 (N.D. Ill. Mar. 3, 2026) (endorsing *Stein* as "particularly persua[sive]"; finding crime-tort exception based on HIPAA violation); *Theys v. Dental Intel., Inc.*, 2026 U.S. Dist. LEXIS 46654, at *35 (N.D. Ill. Mar. 6, 2026) (transmission of PHI "to third parties in violation of HIPAA" supports "crime-tort exception"); *Vriezen v. Infinite Health Collaborative, P.A.*, 2025 U.S. Dist. LEXIS 211708, at *19 (D. Minn. Sep. 30, 2025) ("plaintiffs plausibly alleged the crime-tort exception based on HIPAA violations"); *Wellstar*, 799 F. Supp. 3d at 1279-80 ("Plaintiffs allege that Defendant captured and transmitted their PII and PHI to third parties without their consent and in violation of Defendant's own privacy policies and HIPAA… Plaintiffs sufficiently allege that Defendant intercepted the communications for a criminal or tortious purpose"); *Brahm v. Hosp. Sisters Health Sys.*, 2024 U.S. Dist. LEXIS 114827, at *13-16 (W.D. Wis. June 28, 2024) ("defendants intercepted patients' electronic communications for the purposes of making disclosures that violated HIPAA"); *Lugo v. Inova Health Care Servs.*, 2025 U.S. Dist. LEXIS 55590, at *16-22 (E.D. Va. Mar, 25, 2025) (following "[c]ourts around the country [that permit] the invocation of the ECPA's crime-tort exception when plaintiffs allege violations of HIPAA"); *R.S. v. Prime Healthcare Servs.*, 2025 U.S. Dist. LEXIS 6338, at *13-14 (C.D. Cal. Jan. 13, 2025) ("intent to disclose [HIPAA-protected] information" sufficient); *A.J. v. LMND Med. Grp., Inc.*, 2024 U.S. Dist. LEXIS 194480, at *3-4 (N.D. Cal. Oct. 25, 2024) (same); *Ramirez v. Lasikmd USA, Inc.*, 2026 U.S. Dist. LEXIS 14108, at *8 (S.D. Cal. Jan. 26, 2026) (same).

argues that Plaintiff "offers no support" for the "purpose" element "beyond alleging that BCH knowingly used analytics tools" (Mem. 9), but this is palpably untrue. The SAC details how BCH used tracking technologies to disclose to Google and Facebook, and later exploit for marketing, communications revealing individuals' status as BCH patients, including by deploying the technologies throughout its patient portal (including the pages accessed only after logging in) (¶¶ 126-38) and BCH's appointment request forms (¶¶ 120-25), together with disclosures of information about patients' doctors, medical conditions, and treatments (¶¶ 106-19). Plaintiff alleges further that BCH was on notice and knew full well of the privacy implications of tracking technologies and were warned not to use the technologies without patient authorization (¶¶ 47-54, 58-64). Despite these warnings, and without patient consent, BCH disclosed the contents of the communications to Facebook and Google, which it used to support targeted advertising (*e.g.*, ¶¶ 47-48, 53, 59-62, 109-10). These facts, all taken together, readily support the inference that BCH's primary purpose was to disclose patients' status as BCH patients and other information about their conditions and treatments, a criminal act under HIPAA.

BCH cites several decisions from this District dismissing ECPA claims for failure to plead the crime-tort exception as applied to tracking technologies. Mem. 8-10. Those decisions did not hold that such claims are nonviable as a matter of law; instead, they turned on the particular allegations presented. Indeed, *Lawrence General*, 2025 U.S. Dist. LEXIS 195964, *McManus*, 2025 U.S. Dist. LEXIS 191546, and *Progin*, 2026 U.S. Dist. LEXIS 46522, each permitted amendment, recognizing the viability of the liability theory if properly factually supported.[12]

Moreover, Plaintiff's allegations that BCH deployed tracking technologies within its patient portal differentiate this case from *Lawrence General*, *McManus*, and *Progin*, and strongly support invoking the crime-tort exception. In *Lawrence General*, Magistrate Judge Levenson indicated his dismissal recommendation would have been different had Lawrence General also deployed tracking technologies

[12] *Doe v. Lawrence Gen. Hosp.*, Case No. 25-cv-10081-NMG, Doc No. 55 (D. Mass. Oct. 29, 2025) (Levenson, M.J.). *McManus* and *Progin* granted leave to amend *sua sponte*. *McManus*, 2025 U.S. Dist. LEXIS 191546, at *10; *Progin*, 2026 U.S. Dist. LEXIS 46522, at *15.

"***inside*** their patient portal." 2025 U.S. Dist. LEXIS 195964, at *46-47 (emphasis added); *see also id.* at *38 (citing cases where courts denied motions to dismiss ECPA claims "when complaints have alleged that web tracking tools were used within patient portals"). That is precisely what Plaintiff alleges here.

Judge Burroughs in *McManus*, another decision BCH cites, pointed to *Williams v. TMC Health*, a case in which the court (like the Court here) permitted amendment to bolster allegations supporting the crime-tort exception as an example of allegations that support the crime-tort exception, *McManus*, 2025 U.S. Dist. LEXIS 191546, at *8, and then granted leave to amend to add such allegations, *id.* at *9-10. The *Williams* court, after amendment, affirmed the amended ECPA claim, underscoring the allegations sufficient to support the crime-tort exception. *Williams v. TMC Health*, No. 23-cv-00434, Order Denying Motion to Dismiss, Doc. No. 56 (D. Ariz. Aug. 19, 2025) (filed previously at Doc. No. 45-1).[13] Plaintiff here amended to add the same fact allegations found sufficient in *Williams*, including how BCH was on notice about how Google and Facebook would use the intercepted communications and that BCH acted jointly with Google and Facebook in exploiting the content of intercepted communications for marketing (i.e., the principal function of tracking technologies). ¶¶ 46-65. Put another way, these new allegations show the disclosures and commercial exploitation were not simply the "mere effect of [BCH's] action" (Mem. 10) but were BCH's purpose in deploying tracking technologies.

BCH points to several decisions (Mem. 10-11) that it contends hold that the use of the intercepted communications for "marketing" contradicts the purpose required for the crime-tort exception. In two of the three decisions BCH cites, Magistrate Judge Levenson and Judge Burroughs squarely rejected the argument for such a "contradiction." *Lawrence General* held that "[a] purpose to make money, while at times a valid distinction" from a criminal or tortious purpose, "doesn't hold up to pressure testing" because "[t]he underlying motivation for many crimes and torts is to make money." 2025 U.S. Dist. LEXIS 195964 at *24 (collecting authorities). Thus, the "'broad theory that the presence of a primary

[13] BCH cites the ***earlier*** decision in *TMC Health* (Mem. 6), oblivious to the subsequent history of the case, in which the court permitted amendment, adding factual detail similar to (and in fact less than) what Plaintiff alleges here, the court denied a subsequent 12(b)(6) motion. *TMC Health* supports the denial of BCH's motion.

financial motive inoculates a defendant from liability under the ECPA is wrong.'" *Id.* (quoting *Cooper v. Mt. Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 383 (S.D.N.Y. 2024)). *McManus* likewise held that a "'financial motivation…and a criminal or tortious motivation…are not mutually exclusive.'" 2025 U.S. Dist. LEXIS 191546, at *8 n.1 (quotations omitted). Judge Kobick also agreed, holding that the fact that "Baystate installed the tracking technologies…for marketing and/or analytics purposes [and] financial gain does not change [the] conclusion" that the plaintiff adequately alleges the crime-tort exception. *Baystate*, 2026 U.S. Dist. LEXIS 57677, at *13 (internal quotations omitted).[14]

In short, disclosures and the unlawful commercial exploitation of patient communications were not unintended by-products of tracking technologies; they were the very reasons BCH used them.

b. BCH Intercepted Communications for the Purpose of Committing Acts that are Tortious under Massachusetts Law.

BCH also intercepted communications for the purpose of committing tortious acts. ¶¶ 3-5, 8-11, 212, 220. Those torts include invasion of privacy (a tort codified by the MRPA), breach of fiduciary duty, and breach of confidence. ¶ 220. Although the precise elements of those torts vary, the essential acts for each are the same—the intentional disclosure to third parties and subsequent commercial exploitation of patient communications, contrary to BCH's promises to patients and patients' reasonable expectations of privacy. ¶¶ 28-41, 227-30, 240-42, 259-62. Massachusetts courts that have considered those claims in connection with the same conduct have consistently affirmed them. *See* § III-C *infra*.

[14] The third decision BCH cites—*Goulart*—is on appeal but goes against significant prevailing law holding a "profit motive…does not mean [the defendant] didn't also 'consciously desire' to make unauthorized disclosures" of patient communications. *Kurowski*, 2024 U.S. Dist. LEXIS 126837, at *16. This is because "[m]any crimes and torts are motivated by a desire to make money, and it 'defies common sense that a clearly harmful act could escape liability as long as it was done for profit.'" *Id.* "The existence of an underlying financial motivation does not mean that the act lacked a criminal or tortious purpose. That's like saying that a bank robber's purpose was not to commit a crime—it was to make money." *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1091 (N.D. Cal. 2025); *see also Semien v. Pubmatic Inc.,* 2026 U.S. Dist. LEXIS 15196, at *28 (N.D. Cal. Jan. 27, 2026) ("not persuaded [that] financial motives cannot constitute tortious motive"); *Deaconess*, 2025 U.S. Dist. LEXIS 192058, at *32 ("fact that Deaconess only sought to use the information for marketing purposes does not remove the case from the…crime-tort exception."); *R.S.*, 2025 U.S. Dist. LEXIS 6338, at *18-19 ("joins those courts that have held a monetary purpose does not insulate a party from liability under the ECPA"); *In re BetterHelp, Inc. Data Disclosures Cases*, 2024 U.S. Dist. LEXIS 124321, at *15 (N.D. Cal. July 15, 2024) ("trying to make money" consistent with criminal purpose); *Castillo*, 2024 U.S. Dist. LEXIS 207197, at *18-19 (same); *R.C.,* 733 F. Supp. 3d at 901.

Plaintiff's allegations that BCH's purpose was to engage in acts that were tortious under Massachusetts law independently satisfy the ECPA's crime-tort exception.[15] Indeed, in *Baystate*, Judge Kobick recently denied a motion to dismiss an ECPA claim relating to tracking technologies on a hospital website without even considering HIPAA, given the well-pled allegations regarding the MRPA:

> Doe plausibly alleges that Baystate intentionally intercepted her communications on its website for the purpose of committing a tortious act in violation of M.G.L. c. 214, § 1B [the MRPA]. According to the amended complaint, Baystate, through its Privacy Policy, affirmatively misled Doe by promising that any "identifiable information" she submitted would "only be used to support [her] customer/patient relationship with" it and would be disclosed only if "required by law" or with "specific written consent." … Despite these assurances of privacy, Baystate allegedly transmitted her confidential information—including her Facebook ID and information about her patient status, her search for breast cancer screenings and providers, and her scheduling of a mammogram—to Meta and Google without her authorization.

2026 U.S. Dist. LEXIS 57677, at *11-13. Judge Kobick reasoned that Baystate's violation of its own privacy policy supported both its MRPA claim and the crime-tort exception, as allegations—similar to those against BCH—that Baystate violated its own privacy policy supported the inference that Baystate intercepted communications for the purpose of committing a tortious act (violations of the MRPA). *Id.* Indeed, Judge Kobick held that she need not resolve whether the hospital violated HIPAA, given the state law claims the plaintiff alleged. The same is true here. Plaintiff's tort theories of liability provide an independently sufficient basis to invoke the crime-tort exception.

c. BCH Engaged in Criminal and Tortious Acts Separate from the ECPA Violation.

BCH points to *Goulart*, *Lawrence General*, and several out-of-district decisions to argue Plaintiff fails to allege criminal or tortious acts "separate and independent" from the interception. Mem. 11-12. Neither *Goulart* nor *Lawrence General* held that deployment of tracking technologies can never result in crimes or torts separate from the interceptions; rather, the courts focused on the facts pled. Indeed, the

[15] *Meta Pixel Healthcare*, 647 F. Supp. 3d at 797 ("tort claims may lie against…providers [from] the Pixel," supporting "crime-tort exception"); *Krzyzek v. Openx Techs., Inc.*, 2026 U.S. Dist. LEXIS 15195, at *22 (N.D. Cal. Jan. 27, 2026) (invasion of privacy claim satisfies exception); *Jarrell v. Adena Health Sys.*, 2025 U.S. Dist. LEXIS 6169, at *6-13 (S.D. Ohio Jan. 13, 2015) (state privacy claim satisfies exception); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901-02 (C.D. Cal. , 2024) (same); *Ramirez*, 2026 U.S. Dist. LEXIS 14108, at *8 (same).

court in *Lawrence General* permitted amendment to plead a separate act (the plaintiff in *Goulart* did not seek to amend). Here, the SAC's amended allegations explain how the tortious and criminal disclosures were separate and independent of the interceptions (¶ 77[16]) and identify an additional separate act—the subsequent commercial exploitation of intercepted communications.

First, the "separate and independent" requirement is met where the defendant "not only intercepted their communications…by using data tracking tools, but also transmitted the information to third parties such as Meta and Google." *Wellstar*, 799 F. Supp. 3d at 1278-79 (citing cases).[17] Indeed, Judge Kobick in *Baystate* recently held that a hospital's "alleged intent to intercept Doe's communications was…independent of its plan to disclose those communications to third parties" in violation of the MRPA. 2026 U.S. Dist. LEXIS 57677, at *14-16. Judge Burroughs likewise indicated that "the act of disclosure might be construed as independent from the act of interception, even if the acts occur simultaneously." *Progin*, 2026 U.S. Dist. LEXIS 46522, at *14 n.4.

Here, Plaintiff asserts "the violation stems from [BCH's] intentional disclosure of the collected Private Information, which constitutes a 'further impropriety' independent and separate from [BCH's] interception." *R.S.*, 2025 U.S. Dist. LEXIS 6338, at *16. The allegations that BCH disclosed Plaintiff's

16 Paragraph 77 explains how the code first acquires the content of communications made through a particular webpage and then separately connects to the tracking technology vendor's servers to disclose the content of the intercepted communications to the vendor.

17 *See also Hannant v. Culbertson Mem'l Hosp. Found.*, 2026 U.S. Dist. LEXIS 57449, at *19 (C.D. Ill. Mar. 19, 2026) ("allegations identify two steps: (1) the capture of [PHI] through trackers embedded in the hospital's website, and (2) the disclosure of this information to third parties"); *McClain v. Cap. Vision Servs.*, LLC, 2026 U.S. Dist. LEXIS 52341, at *10 (N.D. Ill. Mar. 13, 2026) ("the weight of authority…nationwide holds that '[a] disclosure that violates HIPAA is a violation of law that is independent of a violation of the ECPA,'" rejecting contrary authorities as "outlier[s]"); *I.T.*, 2025 U.S. Dist. LEXIS 169202, at *22-23 ("Multiple courts have rejected this argument, concluding that an intent to disclose or use private information in violation of HIPAA is distinct from the interception of the private information."); *Deaconess Ill.*, 2025 U.S. Dist. LEXIS 192058, at *31 ("disclosure, not the interception itself, is the secondary act"); *Hartley*, 2025 U.S. Dist. LEXIS 194466, at *25 ("'[a] disclosure that violates HIPAA is a violation of law that is independent of a violation of the ECPA'"); *Juenger*, 2025 U.S. Dist. LEXIS 193628, at *25-26 ("disclosure, not the interception itself, is the secondary act that supports the crime-tort exception"); *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 849-50 (E. D. Cal. June 9, 2025) ("'intentional disclosure' of private information constituted a '"further impropriety" independent and separate from [the] interception'"); *Stein*, 2025 U.S. Dist. LEXIS 31273, at *10-11 ("disclosure that violates HIPAA [is] independent of a violation of the ECPA."); *R.S.*, 2025 U.S. Dist. LEXIS 6338, at *16 (disclosure of the collected Private Information "constitutes a 'further impropriety' independent and separate from … interception").

healthcare information to Google and Facebook after the interception satisfy the separate-and-independent requirement. Indeed, the ECPA treats an "interception" and "disclosure" as separate acts, each of which can trigger liability under different subsections of the ECPA. 18 U.S.C. § 2511(a), (c).

Second, Plaintiff alleges BCH's intended subsequent criminal and tortious use of intercepted communications for marketing purposes, including targeted advertising, long after the interception. ¶¶ 2-8, 48-49, 52-54, 58-65, 94, 102, 108-12, 115-16, 119, 121-22, 125, 130, 138. The subsequent commercial exploitation of intercepted communications is a separate and independent act that supports the crime-tort exception, apart from the earlier disclosure.[18] Neither *Lawrence Gen* nor *Goulart* (nor any other decision in this District) considered whether the exploitation of patient communications for marketing constitutes a separate act. As shown above (§ III-A, *supra*), HIPAA criminalizes not only the "disclosure" of protected information but also its "use" (without consent) "for marketing." 45 C.F.R. § 164.508(a)(3)(i). Similarly, a fiduciary's exploitation of information entrusted to it breaches its duty owed to the principal. *See* § III-C-2, *infra*. Thus, even if this Court adopts the minority position that the disclosure is not separate from the interception, Plaintiff still pleads a separate act: BCH's commercial exploitation of the intercepted communications, contrary to its promises to patients. Such acts are not merely a reiteration of Plaintiff's ECPA claim but involve distinct acts that lead to BCH's liability.[19]

---

[18] *Castillo*, 2024 U.S. Dist. LEXIS 207197, at *17 ( "Costco not only intercepted their data, but also used their data to generate targeted advertisements for financial gain"); *Lugo*, 2025 U.S. Dist. LEXIS 55590, at *24 (hospital disclosed patient's personal health information to increase the success of hospital's INOVA's marketing)*;* *Kurowski*, 2023 U.S. Dist. LEXIS 219895, at *6-9 (crime-tort exception satisfied after plaintiff amended to add allegations that intercepted "information was, in turn, used…to target her with particular advertising" based on intercepted communications); *Gay v. Garnet Health*, 2024 U.S. Dist. LEXIS 168515, at *8-10 (S.D.N.Y. Sept. 16, 2024) ("Complaint sufficiently alleges an independent action secondary to the interception," the "use[]" of "the content of [the] communications" for "targeted ads on Facebook keyed to…confidential health conditions"); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916 (D. Minn. 2024) (subsequent acts to "monetize" intercepted communications sufficient to support crime tort exception); *Cooper*, 742 F. Supp. 3d at 383 (crime-tort exception met where hospital intercepted communications to later "profit commercially from exploiting Private Information, in violation of HIPAA"); *Smith*, 2024 U.S. Dist. LEXIS 119995, at *18 (communications used for "targeted marketing campaigns").

[19] *Smith v. Rack Room Shoes, Inc.*, 2025 U.S. Dist. LEXIS 149750, at *13-14 (N.D. Cal. Aug. 4, 2025) (disclosure of communications "in contradiction [to] the commitments it made in [a] privacy policy…plausibly constitute[s] a further invasion of privacy beyond the act of intercepting"); *Jarrell*, 2025 U.S. Dist. LEXIS 6169, at *8-9 (privacy tort "constitutes an independent tort…that…arises not from the mere *interception* of

d. Conclusion on the Crime-Tort Exception

The SAC goes far beyond what other courts have found sufficient under the crime-tort exception, showing how BCH intercepted communications for the purpose of committing criminal and tortious acts. The Court should follow the weight of authority courts affirming ECPA claims, as cited above.[20]

2. BCH Intercepted the Contents of Plaintiff's Communications

BCH argues that no "contents" of communications were intercepted because no "substance" was revealed. Mem. 12-13. The ECPA's "contents" element does ***not*** require an interception to capture an entire communication. It is sufficient if the interception captures "***any information concerning the substance, purport, or meaning***" of the underlying communication. 18 U.S.C. § 2510(8) (emphasis added). "Contents" includes partial information about a communication, given the "federal wiretap statute[] broadly defines 'contents.'" *In re Pharmatrak, Inc. Privacy Litig.*, 329 F.3d 9, 18 (1st Cir. 2003) (quoting *Nix v. O'Malley*, 160 F.3d 343, 346 n.3 (6th Cir. 1998)).

Plaintiff alleges the interception of content in multiple ways. *First*, a communication that identifies an individual as a patient of a particular provider reveals "the substance" of the communication.[21] BCH deployed tracking technologies throughout its patient portal (¶¶ 126-38) and on appointment request forms (¶¶ 120-25). These allegations thus show that the contents of communications were intercepted.[22]

[communications] but from *disclosure* of that…material to third parties").

[20] BCH cursorily in a footnote invokes the rule of lenity (Mem. 7-8 n.5). The rule, however, applies only if "there is a grievous ambiguity or uncertainty in the statute." *Muscarello v. United States*, 524 U.S. 125, 138-39 (1998) (citation omitted). It is "a rule of last resort, [applied] only when none of the other canons of statutory interpretation is capable of resolving the statute's meaning[.]" *Adams v. Holder*, 692 F.3d 91, 107 (2d Cir. 2012) (citation omitted); *Joffe v. Google, Inc.*, 746 F.3d 920, 935-36 (9th Cir. 2013) (rejecting rule in wiretap case; "we do not resort to the rule of lenity every time a difficult question of statutory interpretation arises"). BCH identifies no grievous ambiguity nor makes any effort to use other tools of construction before resorting to lenity. The Court should apply the ECPA's plain terms rather than finding ways to ignore or undermine them.

[21] *Meta Pixel Healthcare*, 647 F. Supp. 3d at 795-96 ("log-in buttons" revealing patient status disclose "contents"); *M.G.*, 2024 U.S. Dist. LEXIS 166534, at *12 (same); *Castillo,* 2024 U.S. Dist. LEXIS 207197, at *15 (URLs revealing "patient status" are "contents"); *Hannant*, 2026 U.S. Dist. LEXIS 57449, at *22 (same).

[22] *Wellstar*, 799. F. Supp. 3d at 1277-79 (finding "Plaintiffs adequately plead the nature of the contents of their communications," based on interception of "tasks that [plaintiffs] performed on [the] website, including interacting with providers concerning symptoms and medical conditions, obtaining referrals and viewing test results and doctors' notes,"); *Hannant*, 2026 U.S. Dist. LEXIS 57449, at *22-23 (finding interception of patient's "use of the patient portal…is appropriately considered 'contents'").

*Second*, BCH suggests that intercepted URLs never disclose "contents." Such a simplistic, "categorical assessment that [URLs] *never* 'concern[] the substance, purport, or meaning' of a communication misses the mark" because "[o]ften, a location identifier [i.e., a URL]…comprises part of a communication's substance." *In re Google Inc.*, 806 F.3d 125, 136 (3d Cir. 2015). Where descriptive URLs are used (URLs revealing substance about the webpage), "the categories of content and non-content overlap and are not mutually exclusive." *Doe v. Post Acute Med., LLC*, 2025 U.S. Dist. LEXIS 26667, at *13 (M.D. Pa. Feb. 14, 2025).[23] BCH disclosed descriptive URLs, webpage titles, and other fields revealing information about Plaintiff's and her children's doctors, their medical conditions and treatments, and similar information. ¶¶ 17, 19(ii, iii), 71, 106-12, 117-19. Such allegations reflect interception of "contents," particularly combined with identity and patient status. *Baystate*, 2026 U.S. Dist. LEXIS 57677, at *16-18 (given ECPA's "broad" definition of "contents," interceptions of "searches for medical information about conditions and procedures, the identities of their physicians, their requests to schedule appointments with physicians… [and] patients' requests to log into the patient portal" each involve "contents" ); *Lawrence Gen.*, 2025 U.S. Dist. LEXIS 195964, at *23 ("It seems plain that Plaintiff's browsing data constituted…'contents' within the meaning of ECPA.").

C. *Plaintiff Adequately Alleges Her State Law Claims.*

The SJC observed that the Massachusetts Legislature provided "statutory and common-law causes of action to address allegedly false, misleading, or deceptive activity on the Internet, including statutory and common-law protections more directly applicable to misrepresentations or misuse of private medical information." *Vita*, 494 Mass. at 849-50 (citing claims for negligence, implied contract, unjust enrichment, breach of fiduciary duty, and right to privacy under the MRPA). Consistent with *Vita*

[23] *Castillo* 2024 U.S. Dist. LEXIS 207197, at *15 (URLs disclosing "underlying health conditions" reveal "contents"); *M.G.*, 2024 U.S. Dist. LEXIS 166534, at *12 (same); *Meta Pixel Healthcare*, 647 F. Supp. 3d at 796 (same); *R.C.*, 733 F. Supp. 3d at 902 (same); *Yoon v. Meta Platforms, Inc.*, 2024 U.S. Dist. LEXIS 234457, at *13-15 (N.D. Cal. Dec. 30, 2024) (same); *McCulley v. BannerHealth*, 2024 U.S. Dist. LEXIS 85232, at *10 (D. Ariz. May 10, 2024) (URLs that "include[] search terms for specific doctors and medical treatments…plausibly can be considered the 'contents' of a communication under the ECPA"); *Smith v. Loyola Univ. Med. Ctr.*, 2024 U.S. Dist. LEXIS 119995, at *15-16 (N.D. Ill. July 9, 2024) (same).

(even though predating it), this Court has already found viable several of Plaintiff's state law claims under similar facts. *Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 151-52 (D. Mass. 2024) (Saris, J.).[24] BCH offers no reason for this Court to depart from such established, consistent authority.

1. Plaintiff States a Claim under the MRPA

The MRPA, M.G.L. c. 214 § 1B, codifies the common law tort of invasion of privacy. *Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 409 Mass. 514, 519 (1991) (legislature "framed the statute in broad terms"). It includes in its "broad" terms claims for intrusion upon seclusion and disclosure of private facts,[25] torts well-known at common law. *Polay v. McMahon*, 468 Mass. 379, 382-84 (2014).

Four Massachusetts Superior Court justices and two federal judges have concluded that the surreptitious use of tracking technologies supports an MRPA claim.[26] These decisions follow the SJC's ruling that allegations of "electronic surveillance" state an MRPA claim. *Polay*, 468 Mass. at 382-84. BCH's only attempt to avoid these on-point cases is to argue that they "pre-dated *Becerra*" and aren't "thorough" enough. *Becerra*, however, has nothing to do with the scope of Massachusetts tort law,[27] and those decisions fully considered the same arguments as here.

BCH's argument that Plaintiff identifies no disclosure of "highly personal or intimate" facts disregards substantial MRPA authority endorsing similar allegations. *Baystate*, 2026 U.S. Dist. LEXIS

---

[24] BCH weakly attempts to distinguish *Tenet* on the basis that it predates *Becerra* and that the plaintiff there named her medical conditions in her complaint. *Becerra* is irrelevant to construing Massachusetts law—indeed, the Court in *Tenet* did not rely on or even reference the HHS Bulletin. And, a plaintiff need not name her (or her children's) health conditions in order to state a claim. *See* n.9 & accompanying text, *supra*.

[25] BCH's out-of-state decisions dismissing state-law invasion-of-privacy claims are outliers; the majority rule affirms such claims. *Brahm,* 2024 U.S. Dist. LEXIS 114827, at *19-21 (affirming privacy claim based on secret use of tracking technologies); *Doe v. Medstar Health, Inc.*, 2020 Md. Cir. Ct. LEXIS 139, at *5 (Cir. Ct. Aug. 5, 2020) (same); *Lamarr v. Goshen Health Sys., Inc.*, 2024 Ind. Super. LEXIS 107, at *17-18 (Super. Ct. Oct. 3, 2024); *R.C.*, 733 F. Supp. 3d at 888-95.

[26] *Doe v. Emerson Hosp.*, 2023 Mass. Super. LEXIS 673, at *11-12 (Super. Ct. Nov. 22, 2023); *Doe v. Bos. Med. Ctr. Corp.*, 2023 Mass. Super. LEXIS 674, at *11-12 (Super. Ct. Sep. 14, 2023); *Alves v. BJ's Wholesale Club, Inc.*, 2023 Mass. Super. LEXIS 59, at *13-17 (Super. Ct. June 21, 2023); *Tenet Healthcare*, 731 F. Supp. 3d at 151-52; *Baystate*, 2026 U.S. Dist. LEXIS 57677, at *7-10; *Partners Healthcare Sys.*, No. 1984CV01651-BLS1 at 44 (filed at Doc. 27-3); *see also Vita*, 494 Mass. at 849-50.

[27] *See Alves*, 2023 Mass. Super. LEXIS 59, at *13-17 (affirming MRPA against an ordinary retailer (BJ's Wholesale Club), underscoring that the MRPA applies to secret interceptions of communications contrary to a company's promises, not only healthcare providers.

57677, at *8 (rejecting same argument; collecting authorities); *Emerson*, 2023 Mass. Super. LEXIS 673, at *11-12 (rejecting argument that complaint "reveals little about the information that Plaintiff entered on its website") (citing *Bos. Med. Ctr.*, 2023 Mass. Super. LEXIS 674). BCH's suggestion that Plaintiff does not allege "specific information that she provided to BCH" (Mem. 13) ignores the detailed allegations of Plaintiff's communications, including inside the purportedly secure patient portal, and BCH's interception of information about her children's doctors, conditions, and treatments. ¶¶ 17-19, 106-12, 117-19, 126-38.

Plaintiff certainly had a reasonable expectation that the confidentiality of such communications would be protected. ¶¶ 28-32. BCH's use of tracking technologies within the purportedly secure patient portal underscores its total disregard for patients' privacy. ¶¶ 7, 10, 126-38. "These purportedly secure environments require a username and password, measures that underscore and reinforce an expectation of privacy." *Adair v. CIGNA Corporate Servs., LLC*, 2026 U.S. Dist. LEXIS 23288, at *27 (E.D. Pa. Feb. 4, 2026). However, the fact that some webpages here are "public" does not matter. The MRPA applies even where "an individual's conduct is observable by the public" if "electronic surveillance" is contrary to an individual's "reasonable expectation of privacy." *Polay*, 468 Mass. at 384; ¶¶ 28-41. Every court that has applied Polay to the same facts has found that it supports a claim. *Bos. Med. Ctr.*, 2023 Mass. Super. LEXIS 674, at *11-12; *Emerson*, 2023 Mass. Super. LEXIS 673, at *11-12; *Alves*, 2023 Mass. Super. LEXIS 59, at *13-17; *Baystate*, 2026 U.S. Dist. LEXIS 57677, at *9-10.

The precise content of the disclosed information is less important when, as here, a company deceives consumers. A federal court recently affirmed a jury verdict and class certification against Google regarding tracking technologies in cell phone apps, rejecting the argument that a state law privacy claim similar to the MRPA depends on the substance of the information intercepted. *Rodriguez v. Google, LLC*, 2026 U.S. Dist. LEXIS 20412, at *4-5, 33, 37 (C.D. Cal. Jan. 30, 2026). The court explained that the plaintiff's theory was that Google "collect[ed] certain data ***after it said it would not***," and under such a theory, the "nature of the data collected played [only] a supporting role." *Id.* (emphasis in original).

BCH's arguments that the privacy invasion was not "unreasonable" or "substantial" and that BCH had a "business purpose," at best present factual challenges that must be rejected at the pleading stage. Moreover, BCH's deception and violation of Google and Facebook's explicit directions (¶¶ 33-41, 54, 64) rebut the "reasonableness" of its conduct and any argument of a legitimate business purpose. Whatever "legitimate" reasons a business may have to "use" tracking technologies, there is no legitimate reason to lie to patients about them or to disregard Google and Facebook's explicit directions in implementing tracking technologies without consent and on a healthcare website. Those facts strongly support a privacy claim. *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 602 (9th Cir. 2020) (affirming intrusion claim where "tracking" contradicted "privacy disclosures"); *Google*, 806 F.3d at 150-52 (reversing dismissal of intrusion claim where Google's practices contradicted disclosures).[28]

2. <u>Plaintiff States a Claim for Breach of Fiduciary Duty</u>

Massachusetts courts routinely affirm fiduciary-duty claims arising from hospitals' surreptitious use of tracking technologies. *Tenet*, 731 F. Supp. 3d at 149-51; *Baystate*, 2026 U.S. Dist. LEXIS 57677, at *21-24; *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *10-12; *Partners Healthcare* (margin order, previously filed at Doc. No. 27-3) (affirming breach of fiduciary duty claim); *Vita*, 494 Mass. at 849-50 (fiduciary duty claim "cognizable"). BCH's conduct reflects a particularly egregious breach, given its use of tracking technologies in its patient portal and its misrepresentations to patients about those technologies.

BCH's argument that it owes no duty "regardless of patient status [to] every person who used its website" ignores that Plaintiff's children are patients (¶¶ 17-18), she accessed the portal (confirming patient status) (¶¶ 19(a), 126-28), and tracking technologies are designed to identify individuals to serve targeted ads (that is the whole point of the technologies). ¶¶ 42-65, 70, 78-79, 93, 95-98, 102-04.

[28] *Wiley v. Universal Music Grp., Inc.*, 2025 U.S. Dist. LEXIS 261303, at *8-15 (N.D. Cal. Dec. 17, 2025) (affirming privacy claim where defendant "promise[d] that users would not be tracked"); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 864-65 (C.D. Cal. 2024) (tracking technologies deployed "surreptitiously" supports claim); *Meta Pixel Healthcare*, 647 F. Supp. 3d at 799-800 (violation of defendant's own "policies…tend[s] to support" a "fairly strong" intrusion claim); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1076 (N.D. Cal. 2021) (intrusion claim where "privacy disclosures…failed to acknowledge…tracking…[and] suggest[ed] that users' information would not be tracked"); *Medstar*, 2020 Md. Cir. Ct. LEXIS 139, at *6 (similar).

BCH's argument that its conduct does not relate to any fiduciary relationship (Mem. 30 & n.86)[29] is contradicted by all on-point Massachusetts authority. *Tenet Healthcare*, 731 F. Supp. 3d at 151 (patient "states a viable claim of breach of fiduciary duty against her healthcare provider for disclosing" website communications); *Baystate*, 2026 U.S. Dist. LEXIS 57677, at *23-24 (rejecting argument that patient communications on a hospital's website are insufficiently related to the doctor-patient relationship; *Emerson*, 2023 Mass. Super. LEXIS 673, at *5-7 (same).[30]

Furthermore, although Plaintiff alleges that her fiduciary duty claim arises not only from the disclosure of patient communications but also BCH's subsequent commercial exploitation of those communications (¶ 242; *see also* ¶¶ 2-8, 48-49, 52-54, 58-65, 77, 94, 102, 108-12, 115-16, 119, 121-22, 125, 130, 138), BCH disregards the latter allegations. Those allegations, however, are significant because a fiduciary's commercial exploitation of information entrusted to it additionally breaches the fiduciary duty it owes to its principal, apart from any disclosure. *See* Restat. 3d of Agency § 8.05 (fiduciary owes duty "not to use…confidential information of the principal for the [fiduciary's] own purposes").[31]

3. <u>Plaintiff States a Claim for Breach of Confidence</u>

"[A] duty of confidentiality arises from the physician-patient relationship and that a violation of that duty, resulting in damages, gives rise to a cause of action sounding in tort." *Alberts v. Devine*, 395 Mass. 59, 68-69 (1985). BCH's only argument (Mem. 16) is that it's "unclear" whether *Alberts* created a

---

[29] BCH's primary authority, *Korper v. Weinstein*, 57 Mass. App. Ct 433 (2003) (Mem. 28 & n. 80), is distant from the facts here; the conduct at issue—a patient-physician affair—had no logical connection to the fiduciary relationship. That is not so here, given the detailed allegations regarding Plaintiff's communications with BCH that reveal patient status (through her children), and the interception and disclosure of the identity of her children's doctors and medical conditions. ¶¶ 17, 19, 106-12, 117-19, 126-38.

[30] *See A.J.*, 2024 U.S. Dist. LEXIS 194480, at *10-12 (sustaining breach of fiduciary duty claim under Massachusetts law); *Vita*, 494 Mass. at 849-50 (fiduciary claim "cognizable" where "hospital website allegedly tracked and shared with third parties plaintiff's website browsing activities"); *see also Brahm*, 2024 U.S. Dist. LEXIS 114827, at *17-19 (fiduciary duty breached by eavesdropping via tracking technologies); *Lamarr*, 2024 Ind. Super. LEXIS 107, at *22-24 (same); *Cooper*, 742 F. Supp. 3d. at 385-86 (same).

[31] *See also United States v. O'Hagan*, 521 U.S. 642, 652 (1997) ("[A] fiduciary's undisclosed, self-serving use of a principal's information" for the fiduciary's financial interests is a "breach of a duty of loyalty and confidentiality"); *SEC v. Willis*, 787 F. Supp. 58, 61-62 (S.D.N.Y. 1992) (fiduciary "becomes duty-bound not to appropriate the [information] for his own use").

claim or described a type of fiduciary duty claim. *Alberts* grounded the claim not only in fiduciary concepts but also "public policy [that] favors the protection of a patient's right to confidentiality," and emphasized that the question presented "had not arisen and been answered" prior to *Alberts*, indicating a new claim. *Id.* at 68-69. Indeed, the Appeals Court in *Li v. Off. of Transcription Services*, 2016 Mass. App. Unpub. LEXIS 1079 (App. Ct. Nov. 8, 2016), and Judge Gorton's decision in *Weekes v. Choen Cleary P.C.*, 723 F. Supp. 3d 97, 103 (D. Mass. 2024), describe a claim for "breach of confidence" arising from "confidential relationship[s]," not just fiduciary ones, and the Superior Court explains: "it is reasonable to infer that a person who imparts private medical [information] expects that such information will be maintained in confidence" *Weld v. CVS Pharmacy*, 1999 Mass. Super. LEXIS 261, at * 17 (Super. Ct. June 1, 1999).

4. Plaintiff States a Claim for Negligence

Massachusetts courts have affirmed negligence claims on the same conduct that Plaintiff alleges here.[32] BCH's arguments (Mem. 16-18) also lack merit: As to duty, the duty BCH owes to patients is informed by state and federal privacy laws that reflect society's recognition of the importance of confidentiality of healthcare communications and consent to disclosure. *Bennett v. Eagle Brook County Store, Inc.*, 408 Mass. 355, 358-59 (1990) (statute may provide "'some evidence' of the defendant's negligence"). Contrary to BCH's argument (Mem. 17), Plaintiff's children were patients, not "member[s] of the general public"; her communications, including portal communications, were patient-provider communications. *See* n.6 & accompanying text. As to breach, BCH is wrong in asserting that Plaintiff's theory depends on a HIPAA violation. *See* ¶¶ 245-51. In any event, Plaintiff alleges such a violation. *See* § III-A, *supra*.

5. Plaintiff States a Claim for Breach of Contract.

BCH, through its privacy policy, made promises to patients that it failed to keep. Contrary to BCH's argument (Mem. 18-19), an implied contract may arise from the facts here to confer a remedy, as confirmed by all the Massachusetts authorities that have considered similar allegations and rejected the same

[32] *See Vita*, 494 Mass. at 849-50 (negligence claim "cognizable" based on undisclosed use of tracking technologies); *Tenet Healthcare*, 731 F. Supp. 3d at 149 (affirming negligence claim under Massachusetts law for undisclosed use of tracking technologies); *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *9 (same).

arguments BCH makes here. *Baystate*, 2026 U.S. Dist. LEXIS 57677, at *18-21 (rejecting exact same assent, consideration, and harm arguments); *Emerson*, 2023 Mass. Super. LEXIS 673, at *8-9; *Tenet*, 731 F. Supp. 3d at 149-50; *Vita*, 494 Mass. at 849-50 (implied contract claim "cognizable").

6. Plaintiff Alleges Harm and Damages.

Scattered throughout its brief (Mem. 16, 17-18, 20), BCH argues (with respect to fiduciary duty, negligence, and breach of contract) Plaintiff fails to plead "harm" or "damages." BCH ignores the SAC's detailed allegations, which describe an active market for the communications BCH intercepted and disclosed. ¶¶ 182-90. Such allegations are sufficient at this stage. *Baystate*, 2026 U.S. Dist. LEXIS 57677, at *21 ("Baystate's contention that Doe was not harmed by its alleged conduct is similarly contradicted by her allegation that Baystate 'took valuable information from' her without her consent and 'derived benefit therefrom' without 'sharing the benefits."); *Emerson*, 2023 Mass. Super. LEXIS 673, *5 (allegations that "private medical information was disclosed to Facebook" and defendant "and Facebook monetized [such] information without compensating him" sufficient); *Meta Pixel Tax*, 724 F. Supp. 3d at 1019-24 (allegations of "diminution in value," and "loss of the benefit of [the] bargain" sufficient).[33]

7. Plaintiff States a Claim for Unjust Enrichment

Contrary to BCH's argument (Mem 20), an unjust enrichment claim arises under the facts here. *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *13-14 (rejecting same arguments); *Tenet*, 731 F. Supp. 3d at 150-51. That Plaintiff has an adequate remedy at law provides no defense. *Tenet*, 731 F. Supp. 3d at 150-51 (affirming unjust enrichment claim, reasoning a plaintiff "may plead" unjust enrichment and legal remedies "in the alternative"); *Emerson*, 2023 Mass. Super. LEXIS 673, at *9-11 (affirming claim); *see also* *Vita*, 494 Mass. at 849-50 (unjust enrichment claim "cognizable" based on hidden tracking technologies).

## IV. CONCLUSION

For the reasons set forth herein, the Court should deny BCH's motion to dismiss.

---

[33] *See also In re Meta Pixel Healthcare Litig.*, 713 F. Supp. 3d 650, 655-56 (N.D. Cal. 2024) (allegation, even without quantification, that "Meta unjustly profited from the data taken," is sufficient); *Gay*, 2024 U.S. Dist. LEXIS 168515, at *17-18 (similar); *Lamarr*, 2024 Ind. Super. LEXIS 107, at *7-8 (similar).

Dated: April 16, 2026

Respectfully submitted,

*/s/ Patrick J. Vallely*
SHAPIRO HABER & URMY LLP
Edward F. Haber (BBO #215620)
Michelle H. Blauner (BBO #549049)
Patrick J. Vallely (BBO #663866)
One Boston Place
Suite 2600
Boston, MA 02108
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
ehaber@shulaw.com
mblauner@shulaw.com
pvallely@shulaw.com

***Counsel for Plaintiff***

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing pleading was filed electronically through the Court's electronic filing system and that notice of this filing will be sent to all counsel of record in this matter by operation of the Court's ECF system.

Dated: April 16, 2026

*/s/ Patrick J. Vallely*
Patrick J. Vallely