**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JAME DOE, individually and as a parent and guardian for her minor children, S.N., H.N., and B.N., on behalf of herself and classes of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE CHILDREN'S HOSPITAL, CORPORATION,<br><br>Defendant. | ) | Case No.: 1:25-cv-10343-PBS<br><br>**Leave to File Granted on May 1, 2026 Doc. No. 73** |

**DEFENDANT THE CHILDREN'S HOSPITAL CORPORATION'S**
**<u>REPLY IN SUPPORT OF ITS MOTION TO DISMISS</u>**

Lisa Oliver White, BBO# 666841
**SHOOK, HARDY & BACON L.L.P.**
One Federal Street, Suite 2620
Boston, MA 02110
Tel: (617) 531-1411
lowhite@shb.com

Tammy B. Webb (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900
twebb@shb.com

Jad Sheikali (*pro hac vice*)
Tara D. Kennedy (*pro hac vice*)
Avery Epstein (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
111 South Wacker Drive
Chicago, IL 60606
Tel: (312) 704-7700
jsheikali@shb.com
tkennedy@shb.com
aepstein@shb.com

***Attorneys for Defendant***

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

ARGUMENT .......... 1

I. Plaintiff Fails to Explain How Her Allegations Plausibly Support an Inference that Any of Her or Her Children's PHI Was Disclosed .......... 1

II. Plaintiff's Efforts to Salvage Her ECPA Claim Is Unavailing. .......... 4

A. Plaintiff Fails to Allege that BCH's Purpose Was Criminal or Tortious .......... 5

B. Plaintiff Fails to Plausibly Allege an Independent Crime or Tort. .......... 9

C. Plaintiff Fails to Plausibly Allege the Interception of "Contents." .......... 11

III. Plaintiff Fails to State A Massachusetts Privacy Act Claim .......... 11

IV. Plaintiff Fails to State a Claim for Breach of Fiduciary Duty or Confidence. .......... 13

V. Plaintiff's Negligence Claim Should Be Dismissed .......... 14

VI. Plaintiff Fails to State a Claim for Breach of Contract. .......... 15

VII. Plaintiff Fails to Allege any Damages to Support Her Common Law Claims .......... 15

VIII. Plaintiff Fails to State a Claim for Unjust Enrichment .......... 16

CONCLUSION .......... 17

# TABLE OF AUTHORITIES

Page

**Cases**

*Alberts v. Devine*,
479 N.E.2d 113 (Mass. 1985) ....................14

*Alves v. BJ's Wholesale Club, Inc.*,
2023 WL 4456956 (Mass. Super. June 21, 2023)....................12

*American Hospital Association v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ....................2

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................4

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ....................16

*Biszko v. RIHT Fin. Corp.*,
758 F.2d 769 (1st Cir. 1985)....................4

*Brahm v. Hosp. Sisters Health Sys.*,
2024 WL 3226135 (W.D. Wis. June 28, 2024) ....................12

*Branson v. Concord Hosp. Inc.*,
No. 217-2024-CV-00295 (N.H. Super. Apr. 28, 2025)....................13

*Caine v. Sturdy Mem'l Hosp., Inc.*,
2026 WL 673483 (D. Mass. Mar. 10, 2026)....................8

*Castillo v. Costco Wholesale Corp.*,
2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) ....................2, 11

*Conformis, Inc. v. Aetna, Inc.*,
58 F.4th 517 (1st Cir. 2023)....................7

*Doe v. Baystate Health Sys., Inc.*,
2026 WL 776861 (D. Mass. Mar. 19, 2026)....................6, 11, 12

*Doe v. Boston Medical Center Corp.*,
2023 WL 7105628 (Mass. Super. Sep. 14, 2023) ....................12

*Doe v. Deaconess Illinois Union Cnty. Hosp., Inc.*,
2025 WL 2771415 (S.D. Ill. Sept. 29, 2025) ....................2, 10

*Doe v. Emerson Hosp.*,
2023 WL 8869624 (Mass. Super. Nov. 22, 2023) ....................12, 15

*Doe v. Emerson Hosp.*,
No. 1:25-cv-13631-RGS (D. Mass. Feb. 11, 2026) ............................................................3, 15

*Doe v. Lawrence Gen. Hosp.*,
2025 WL 2808055 (D. Mass. Aug. 29, 2025), *report and recommendation adopted in part, rejected in part,* 2025 WL 2807673 (D. Mass. Sept. 30, 2025)............8, 9, 10

*Doe v. Post Acute Med., LLC*,
2025 WL 511069 (M.D. Pa. Feb. 14, 2024) ..................................................................11, 16

*Doe v. Partners Healthcare Sys.*,
No. 1984CV01651-BLS1 (Mass. Super. Nov. 20, 2020) ........................................................12

*Doe v. Tenet Healthcare Corp.*,
731 F. Supp. 3d 142 (D. Mass. 2024) ......................................................................12, 15

*Doyle v. Hasbro, Inc.*,
103 F.3d 186 (1st Cir. 1996).........................................................................................7

*Fernandes v. Havkin*,
731 F. Supp. 2d 103 (D. Mass. 2010) ...........................................................................16

*Gay v. Garnet Health*,
2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024)............................................................10, 16

*Goulart v. Cape Cod Healthcare, Inc.*,
2025 WL 1745732 (D. Mass. June 24, 2025).......................................................................8

*Grajales v. Puerto Rico Ports Auth.*,
682 F.3d 40 (1st Cir. 2012).............................................................................................7

*Hannant v. Culbertson Mem'l Hosp. Found.*,
2026 WL 777296 (C.D. Ill. Mar. 19, 2026)......................................................................10

*Hartley v. Univ. of Chicago Med. Ctr.*,
2025 WL 2802317 (N.D. Ill. Oct. 1, 2025)...................................................................2, 10

*I.T. v. ChoicePoint LLC*,
2025 WL 2495079 (W.D. Wash. Aug. 29, 2025) ..................................................................2

*In re Meta Healthcare Pixel Litig.*,
713 F. Supp. 3d 650 (N.D. Cal. 2024) ............................................................................16

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ............................................................................11

*Jarrett v. Upperline Health, Inc.*,
2025 WL 3067545 (S.D. Ind. Aug. 8, 2025) .......................................................................2

*Juenger v. Deaconess Health Sys., Inc.*,
2025 WL 2780221 (S.D. Ill. Sept. 30, 2025) ....................10

*Kurowski v. Rush Sys. for Health*,
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ....................10

*Li v. Off. of Transcription Servs.*,
2016 WL 6609796 (Mass. App. Ct. 2016)....................14

*Lugo v. Inova Health Care Servs.*,
2025 WL 905191 (E.D. Va. Mar. 25, 2025) ....................10

*M.G. v. Therapymatch*,
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) ....................11

*McClain v. Cap. Vision Servs., LLC*,
2026 WL 710926 (N.D. Ill. Mar. 13, 2026)....................10

*McManus v. Tufts Med. Ctr., Inc.*,
2025 WL 2778025 (D. Mass. Sept. 29, 2025) ....................5, 7

*Polay v. McMahon*,
468 Mass 379 (2014) ....................13

*Progin v. UMass Mem'l Health Care, Inc.*,
2026 WL 632770 (D. Mass. Mar. 6, 2026)....................5, 6

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ....................11, 12, 16

*Rodriguez v. Google LLC*,
2026 WL 252570 (N.D. Cal. Jan. 30, 2026). ....................3

*Smith v. Loyola Univ. Med. Ctr.*,
2024 WL 3338941 (N.D. Ill. July 9, 2024)....................11

*Stein v. Edward-Elmhurst Health*,
2026 WL 594752 (N.D. Ill. Mar. 3, 2026), *permission to appeal granted*, No. 26-8004 (7th Cir. Apr. 7, 2026). ....................6

*Stein v. Edward-Elmhurst Health*,
2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ....................10

*Tomasella v. Nestlé USA, Inc.*,
962 F.3d 60 (1st Cir. 2020)....................16

*Vita v. New England Baptist Hosp.*,
243 N.E.3d 1185 (Mass. 2024) ....................12, 15

*Weekes v. Cohen Cleary P.C.*,
723 F. Supp. 3d 97 (D. Mass. 2024) ....................14

*Weld v. CVS Pharm.*,
1999 Mass. Super. LEXIS 261 (Super. Ct. June 1, 1999) ....................14

**Statutes**

Electronic Communications Privacy Act ("ECPA") .................... *passim*

HIPAA .................... *passim*

Massachusetts Right to Privacy Act ("MRPA") .................... *passim*

**Rules**

Fed. R. Civ. P. 8 ....................7

**Other Authorities**

247 Code Mass. Regs. 9.01(19) ....................14

## INTRODUCTION

Plaintiff's Opposition (Doc. No. 67)[1] urges the Court to apply an expansive and untenable interpretation of the Electronic Communications Privacy Act ("ECPA") that would criminalize BCH and countless similarly situated businesses for using ubiquitous analytics technologies for permissible purposes. In doing so, Plaintiff ignores the text of the ECPA and the weight of case authority from this District, instead focusing on cases from other jurisdictions, and exaggerates her sparsely alleged use of BCH's website. Plaintiff also gives her state law claims short shrift. She fails to meaningfully respond to BCH's arguments and relies on boilerplate allegations, in the hopes of skirting by on the coattails of isolated cases that have allowed those claims to proceed past this stage. But Plaintiff fails to explain why *her* claims in *this* case sufficiently state a claim. They do not. Moreover, Plaintiff's argument that her and her children's protected health information or other private information ("PHI") was disclosed via her usage of BCH's website is not supported by the actual allegations in the SAC. Plaintiff has had three bites at the apple to plausibly allege her claims and has failed to do so. The SAC should be dismissed with prejudice.

## ARGUMENT

### I. Plaintiff Fails to Explain How Her Allegations Plausibly Support an Inference that Any of Her or Her Children's PHI Was Disclosed.

This case is about Plaintiff. Namely, her use of BCH's website and portal and whether her or her children's PHI was disclosed through marketing tools on those locations.[2] Plaintiff does not dispute that each of her claims requires plausible allegations that her or her children's PHI was

---

[1] Citations to record documents are to the docket page number, "Page x of xx" shown in the top right corner.

[2] Despite amending to include claims in her role as guardian of her minor children, Plaintiff's Opposition still inexplicably contains statements implying Plaintiff was a patient. *See* Doc. No. 67 at 11 ("Plaintiff was a BCH patient"); *id.* at 10 n.1 ("BCH website revealed the names of particular medical conditions for which patients (including Plaintiff) requested"). But, Plaintiff was never a patient of BCH, and Plaintiff confirms as much in other sections of her Opposition. *See, e.g.*, *id.* at 9.

disclosed. Instead, she argues that "none of Plaintiff's claims require proof *of a HIPAA violation*." Doc. No. 67 at 12 (emphasis added). But setting HIPAA aside, there is no question that each of Plaintiff's claims are based on the alleged disclosure of "private" information. SAC ¶ 216 (ECPA); *id.* ¶ 228 (MRPA); *id.* ¶ 240 (breach of fiduciary duty); *id.* ¶ 246 (negligence); *id.* ¶ 259 (breach of confidence); *id.* ¶ 270 (breach of contract); *id.* ¶ 276 (unjust enrichment).

Plaintiff ignores the meat of BCH's argument, which is that data disclosed by tracking technology on a public website is not "personal" nor "private." The court in *American Hospital Association v. Becerra,* 738 F. Supp. 3d 780 (N.D. Tex. 2024) explains why: a website operator like BCH cannot identify any particular user on its public website, and it does not know why any particular user visits a certain webpage, or clicks a certain button. *See* Doc. No. 64 at 12. Plaintiff has not alleged more than the "Proscribed Combination" addressed in *Becerra* as to her own public browsing activities. Indeed, the 87-page SAC is premised almost entirely on generic descriptions of technology and hypothetical information that has nothing to do with Plaintiff's specific activities, and she has not identified any specific piece of *her or her children's* PHI allegedly disclosed.[3] Numerous courts have granted motions to dismiss similar claims on this basis. *See* Doc. No. 64 at 13 (listing cases). This Court should do the same.

---

[3] Indeed, the cases Plaintiff uses to support her propositions that "publicly accessible" websites reveal patient status and that "[d]isclosing such information [on a public website] also violates HIPAA" (Doc. No. 67 at 15) all included allegations that specified what medical condition was disclosed to the defendant, that the individual was targeted by advertisements, or listed specific actions that they took on the defendant's website which led to the alleged disclosure. *See, e.g.*, *Jarrett v. Upperline Health, Inc.*, 2025 WL 3067545, at *2 (S.D. Ind. Aug. 8, 2025) (plaintiff alleged she received targeted advertisements related to her podiatry treatments); *Hartley v. Univ. of Chicago Med. Ctr.*, 2025 WL 2802317, at *2 (N.D. Ill. Oct. 1, 2025) (plaintiff alleged she scheduled an appointment and other webpages that she clicked and viewed); *Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at *1 (W.D. Wash. Nov. 14, 2024) (plaintiffs alleged they received targeted advertisements related to specific prescriptions); *Doe v. Deaconess Illinois Union Cnty. Hosp., Inc.*, 2025 WL 2771415, at *2 (S.D. Ill. Sept. 29, 2025) (plaintiff alleged she "began receiving medical advertisements in her Facebook feed"); *I.T. v. ChoicePoint LLC*, 2025 WL 2495079, at *7 (W.D. Wash. Aug. 29, 2025) (plaintiffs alleged they "sought an appointment for addiction treatment services and the outcome of their online assessment").

Plaintiff attempts to overcome these deficiencies by arguing that she alleged "specific categories of information" including "information about her children's doctors, conditions, and treatments," that users on BCH's website may access "appointment request pages and pages used to navigate to the portal," and that BCH "serve[d] targeted ads to patients." Doc. No. 67 at 15–16 (citing SAC ¶¶ 17, 19, 106–12, 117–27). But even after her third bite at the apple, Plaintiff's SAC fails to allege that *she received* targeted ads herself. *See* SAC ¶¶ 108–10, 118–19. Further, Plaintiff points to allegations related to the patient portal landing page and the "Find-a-Doctor" page, which allows a user to request an appointment. Doc. No. 67 at 15 (citing SAC ¶¶119–27). But the paragraphs she refers to do not reference any specific or concrete information that was allegedly transmitted about her or her children. Instead, the only paragraphs Plaintiff can point to solely refer to the categories of generic information allegedly transmitted from the "Find-A-Doctor" and patient portal landing pages. *See also id.* ¶¶ 106–12 (describing the types of pages *any individual* may visit on BCH's website and the alleged types of advertisements they may receive); *id.* ¶¶ 17, 19 (generally stating types of pages Plaintiff may have visited and actions she took).

Notably, Plaintiff entirely ignores recent precedent from Judge Stearns in this District that dismissed similar conclusory allegations in a healthcare tracking technology matter. There, Judge Stearns dismissed the plaintiffs' remaining state claims (after they did not oppose dismissal of their ECPA claim) because plaintiffs' allegations failed to "identify any *concrete* examples" of how they used defendant's website or portal and therefore failed to provide "adequate notice of the PHI [defendant] allegedly disclosed to third-party advertisers." *Doe v. Emerson Hosp.*, No. 1:25-cv-13631-RGS, Doc. No. 20 (D. Mass. Feb. 11, 2026) (Ex. C to Doc. 64, BCH's Mot.).

Moreover, Plaintiff cannot refute that her portal allegations are legal conclusions and insufficient to state a claim. She attempts to do so by stating that the SAC "describes the substance

Defendants intercepted and transmitted to Google and Facebook, including every step a patient *or family member* took in the portal." Doc. No. 67 at 14 (emphasis added) (citing SAC ¶¶ 126–38). But those paragraphs discuss the types of pages a user may visit in the patient portal, not the steps *she* took. Additionally, Plaintiff argues that status as "*a patient's family member*" is PHI. *Id.* But that claim rests on a flawed premise; patient status cannot be revealed here because Plaintiff is not a patient. Indeed, Plaintiff's assertion that she can represent a class of non-patients against a hospital is dubious, and she cites no case law where a class was certified for ECPA liability on such a theory. Further, Plaintiff's assertions that Facebook or Google can "connect" her allegedly intercepted communications with her "real-world identity" is unsupported. *Id.* Plaintiff does not assert that she was registered with or logged into a Google or Meta account, nor that Google or Meta actually connected any web browsing history to her. Instead, she speculates that Google or Meta *potentially* could mine her web browsing data and then *if* they could link her to a specific computer, computers at Google or Meta could guess her interactions in the patient portal, and from there theoretically determine she was the parent of a patient. Portal or not, conclusory allegations are not facts. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Biszko v. RIHT Fin. Corp.*, 758 F.2d 769, 771 (1st Cir. 1985) ("broad allegations of speculative injury will not suffice").

## II. Plaintiff's Efforts to Salvage Her ECPA Claim Is Unavailing.

It is undisputed that Plaintiff's ECPA claim cannot survive unless the crime-tort exception applies. Despite Plaintiff filing the SAC in an attempt to sufficiently plead an ECPA claim, Plaintiff still fails to allege any *plausible* facts that 1) BCH's *purpose* in deploying tracking technology was criminal or tortious, 2) that the alleged crime or tort was *separate and independent* from the interception itself, or 3) that BCH intercepted any contents. Her ECPA claim should be dismissed.

### A. Plaintiff Fails to Allege that BCH's Purpose Was Criminal or Tortious.

Plaintiff continues to muddy the waters when it comes to her allegation of BCH's supposed "purpose" in using tracking technology. As discussed in BCH's Motion, the SAC alleges that BCH's alleged purpose was to engage in advertising and to maximize its website performance. *See* Doc. No. 64 at 17–18. Yet, in Plaintiff's Opposition, she now changes her argument claiming BCH's purpose was "knowingly disclos[ing] patient communications" in violation of HIPAA and other laws. Doc. No. 67 at 9, 22–23. But either characterization of BCH's "purpose" is conclusory, unsupported, and fails to support the crime-tort exception, for multiple reasons.

***Plaintiff mischaracterizes case law from this District.*** First, the vast majority of decisions in this District have held that allegations like Plaintiff's are insufficient to support an ECPA claim. Rather than grapple with the ECPA's language or those well-reasoned decisions, Plaintiff relies heavily on case law from other jurisdictions and mischaracterizes certain District of Massachusetts cases; namely, *McManus v. Tufts Med. Ctr., Inc.*, 2025 WL 2778025 (D. Mass. Sept. 29, 2025) and *Progin v. UMass Mem'l Health Care, Inc.*, 2026 WL 632770 (D. Mass. Mar. 6, 2026). Plaintiff incorrectly contends that *Tufts* requires only the occurrence of a crime or tort, or an "act," for the crime-tort exception to apply. *See* Doc. No. 67 at 17–18. In *Tufts*, despite allegations that defendant's purpose in using tracking technologies was to "eavesdrop on healthcare consumers' communications" and send the information to third parties, the court not only dismissed plaintiffs' ECPA claim, but it held their allegations of HIPAA violations, FTC Act breaches, and use of advertising technology for profit were only incidental to Tufts' "primary motivation." 2025 WL 2778025, at *3. Second, in *UMass*, the court also held that although plaintiffs' allegations "support[ed] the inference that Defendants purposefully committed certain acts, such as the installation of the at-issue tracking tools or even the disclosure of certain forms of information to

Facebook and Google", the allegations did not support application of the crime-tort exception. *UMass*, 2026 WL 632770 *4–5 ("It is not enough that a crime or tort [may have been] a ... side-effect of the interception.") (internal quotations omitted). The court concluded that plaintiffs must "plead sufficient facts to satisfy th[e] heightened intent requirement under ECPA." *Id.* at *4 (internal quotations omitted).

This Court should look to these cases and the other numerous decisions in this District that have rejected the application of the crime-tort exception absent plausible allegations that the defendant's *purpose* was to commit a criminal or tortious act. *See* Doc. No. 64 at 16–17 (collecting cases). BCH acknowledges *Doe v. Baystate Health Sys., Inc.*, 2026 WL 776861, at *1 (D. Mass. Mar. 19, 2026), which was decided after submission of its Motion, but respectfully disagrees with its reasoning and urges this Court to follow the weight of authority in this District reaching the opposite result. BCH submits those cases are well-reasoned and avoid an interpretation of the crime-tort exception that ignores its scienter requirement, effectively swallowing the statute and finding hundreds of healthcare entities and other businesses criminally liable for using standard website analytics tools that serve a permissible commercial (and non-criminal or tortious) function. Further, Plaintiff relies heavily on *Stein v. Edward-Elmhurst Health*, but that matter was recently accepted for interlocutory appeal by the Seventh Circuit on this question: "Whether the crime-tort exception to the one-party consent rule in the Electronic Communications Privacy Act applies when a complaint alleges that the defendant acted with a lawful purpose, and does not allege that a defendant acted with a criminal or tortious purpose?" 2026 WL 594752, at *5 (N.D. Ill. Mar. 3, 2026), *permission to appeal granted*, No. 26-8004 (7th Cir. Apr. 7, 2026).

"***Targeted Advertising" is not criminal or tortious.*** Plaintiff's allegation that BCH's purpose was to engage in "targeted advertising" fails because advertising is not a criminal or

tortious act. *See* Doc. No. 64 at 18 (collecting cases). Plaintiff intentionally misconstrues BCH's argument regarding financial motives. BCH does not argue that "the presence of a primary financial motive inoculates a defendant from liability under the ECPA." Doc. No. 67 at 13–14. Instead, Plaintiff's own allegations demonstrate that BCH had a permissible and lawful purpose in using the tracking technology—to "maximize" its website and marketing, and for "commercial" advantage. SAC ¶¶ 35, 39, 52–53, 63. Plaintiff tries to circumvent this by arguing that HIPAA criminalizes the use of PHI for marketing (Doc. No. 67 at 20–22), but in doing so collapses the distinction between a violation and a *purpose* to violate.[4] While Plaintiff contends that "purpose" is a question of fact, the issue may properly be decided at the pleading stage if she fails to plausibly allege that BCH, a non-profit healthcare provider, installed tracking technologies on its public website with the purpose of committing a criminal or tortious act.[5] Plaintiff does not and cannot allege as much.

Plaintiff also cannot escape the reality that the overwhelming majority of cases in this District have held that the use of marketing practices *under this set of facts*, does not come close to meeting the crime-tort exception. *See, e.g*, *Tufts*, 2025 WL 2778025, at *3 (allegations of

---

[4] Moreover, Plaintiff's example of bank robbery is a red herring, as bank robbery is always a crime, unlike targeted advertising.

[5] Plaintiff further argues that Rule 8's liberal pleading standard should apply to her state of mind allegations. Doc. No. 67 at 18. Rule 8 may set a low bar, but it is "not entirely a toothless tiger." *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir. 1996) ("The threshold [for stating a claim] may be low, but it is real."). "[T]o survive a motion to dismiss, plaintiffs must set forth factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery. Although all inferences must be made in the plaintiffs' favor, this court need not accept bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Id.* (quotation marks omitted). Plaintiff's allegations regarding BCH's purported "criminal" or "tortious" purpose are precisely the type of bald, conclusory assertions that this Court can and should refuse to accept. Further, the cases Plaintiff cites in her attempt to plead a lower standard of "purpose" do not discuss ECPA, or the heightened pleading standard under ECPA. *See Grajales v. Puerto Rico Ports Auth.*, 682 F.3d 40, 49 (1st Cir. 2012) (discussing an individual's intent in relation to a Section 1983 claim); *Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 536 (1st Cir. 2023) (discussing knowledge in the context of product disparagement).

"increased[d] revenue" are not enough to invoke the crime-tort exception); *Goulart v. Cape Cod Healthcare, Inc.*, 2025 WL 1745732, at *4 (D. Mass. June 24, 2025) (same); *Caine v. Sturdy Mem'l Hosp., Inc.*, 2026 WL 673483, at *4 n.2 (D. Mass. Mar. 10, 2026) (financial gain allegations did not meet the criteria for the crime-tort exception); *Doe v. Lawrence Gen. Hosp.*, 2025 WL 2808055, at *7 (D. Mass. Aug. 29, 2025), *report and recommendation adopted in part, rejected in part,* 2025 WL 2807673 (D. Mass. Sept. 30, 2025) (dismissing where nothing in complaint suggested defendant "had a conscious purpose in deploying the web tracking tools to disclose information in violation of HIPAA").[6] Plaintiff's reliance on largely irrelevant non-healthcare pixel cases (*See* Doc. No. 67 at 22 n.14) does not overcome these cases.

***Plaintiff's allegations of knowledge are insufficient.*** Additionally, Plaintiff's allegations that BCH's purpose was to "knowingly disclose[]" patient information in violation of HIPAA or other laws lacks even the most basic support. Plaintiff claims that BCH "knew" that "deploying tracking technologies [] would disclose confidential communications . . . in violation of HIPAA, the MRPA, and its own promises to its patients" and that BCH "was on notice about how Google and Facebook would use the intercepted communications." Doc. No. 67 at 18–19, 21.

First, as discussed more in Section II.B below, to the extent Plaintiff alleges BCH's purpose was a criminal "disclosure," that purpose does not satisfy the "separate and independent" requirement of the crime-tort exception. Second, Plaintiff repeatedly alleges Google and Facebook "warned" or "directed" BCH not to use pixels on health-related websites, relying exclusively on a webpage titled "Meta Business Tools Terms" (SAC ¶¶ 54 n.9), and the allegation that "Google

---

[6] While Plaintiff states numerous times that plaintiffs in this District have been allowed to amend their complaint "to bolster allegations support the crime-tort exception" in connection to allegations of financial gain (Doc. No. 67 at 20–22), Plaintiff should not be allowed to amend her complaint for a third time. BCH made Plaintiff aware of these deficiencies in its Motion to Dismiss Plaintiff's First Amended Complaint (*see* Doc. No. 23) and Plaintiff has had ample opportunities to fix her pleading deficiencies but has failed to do so.

directed website owners like Boston Children's that they 'must disclose [to users] the use of Google Analytics, and how it collects and processes data'" with no citation included (*id.* ¶ 64). This argument is a red herring. Plaintiff alleges zero facts suggesting that BCH was aware of these so-called "warnings," or that Google or Facebook ever "directed" them to BCH. In fact, it does not appear the "Meta Business Tools Terms" webpage existed when BCH first implemented tracking technology. The webpage explicitly states it became effective on November 3, 2025, well after BCH first utilized tracking tools and this lawsuit was filed.[7]

### B. Plaintiff Fails to Plausibly Allege an Independent Crime or Tort.

Plaintiff contends that she has satisfied the "separate and independent" act element in two ways: by asserting that the alleged "interception and disclosure" were "separate acts" and that there was a "subsequent commercial exploitation of intercepted communications." Doc. No. 67 at 24–25 (internal quotations omitted). First, Plaintiff does not and cannot explain how BCH could have "intercepted" a communication between itself and Plaintiff in the first place, or how this act is separate from the disclosure itself when Plaintiff's own SAC alleges the acts occurred contemporaneously. *See, e.g.*, SAC ¶ 6 (communications "contemporaneously monitored, recorded, and transmitted to these third parties"); *id.* ¶ 77 ("interception and disclosure to the third party occur contemporaneously"). As Judge Levenson recognized in a similar matter, there is no separate act alleged because "the interception that provides the basis for the alleged ECPA violation is itself the disclosure that provides the basis for the HIPAA violation." *Lawrence*, 2025 WL 2808055, at *13; *id.* ("there is only one act: Deploying a web tracking tool that simultaneously provides analytic information to the website operator and shares data with Google or Meta.").

Furthermore, the cases Plaintiff cites largely do not grapple with this distinction, are not

[7] Available at https://www.facebook.com/legal/terms/businesstools.

grounded in the ECPA's language, and ignore First Circuit guidance that courts should construe the crime-tort exception narrowly. *See, e.g., Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *6 (N.D. Ill. Feb. 21, 2025) (not addressing issue of whether interception and disclosure occur simultaneously); *Hannant v. Culbertson Mem'l Hosp. Found.*, 2026 WL 777296, at *7 (C.D. Ill. Mar. 19, 2026) (same); *Doe v. Deaconess Illinois Union Cnty. Hosp., Inc.*, 2025 WL 2771415, at *10 (S.D. Ill. Sept. 29, 2025) (same); *Hartley v. Univ. of Chicago Med. Ctr.*, 2025 WL 2802317, at *9 (N.D. Ill. Oct. 1, 2025) (same); *Juenger v. Deaconess Health Sys., Inc.*, 2025 WL 2780221, at *9 (S.D. Ill. Sept. 30, 2025) (same).[8] Because Plaintiff alleges contemporaneous interception and transmission, her ECPA claim should be dismissed.

Second, to the extent "commercial exploitation" can be considered a separate act from the alleged disclosure, that act is not criminal or tortious. As discussed above, there are no plausible allegations suggesting that BCH's purpose in deploying the tracking technology was to violate HIPAA by using its patients' medical information to target them for advertising. To the contrary, the SAC confirms that BCH used tracking technology to "maximize" its website and marketing, and for "commercial" advantage. SAC ¶¶ 35, 39, 52–53, 63. Such acts do not support the crime-tort exception. *See Lawrence*, 2025 WL 2808055, at *17.[9] What's more, the SAC is devoid of any allegations explaining how BCH engaged in an additional step to commit this supposed "commercial exploitation" beyond the initial implementation of tracking technology.

---

[8] *See also McClain v. Cap. Vision Servs., LLC*, 2026 WL 710926, at *4 (N.D. Ill. Mar. 13, 2026) (not analyzing what "independent" interception of data means under the ECPA statute); *Lugo v. Inova Health Care Servs.*, 2025 WL 905191, at *6–8 (E.D. Va. Mar. 25, 2025) (same); *Kurowski v. Rush Sys. for Health*, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) (same); *Gay v. Garnet Health*, 2024 WL 4203263, at *4 (S.D.N.Y. Sept. 16, 2024) (relying on district court cases and failing to address Circuit's binding appellate authority set forth in *Caro v. Weintraub,* 618 F.3d 94 (2d Cir. 2010)).

[9] BCH maintains that should the Court find ambiguity in the ECPA, the rule of lenity applies. *See* Doc. No. 64 at 14 n.5; Amicus Br. Doc. No. 23 Ex. A. The cases Plaintiff cites (Doc. No. 67 at 26 n.20) do not change the rule's application.

### C. Plaintiff Fails to Plausibly Allege the Interception of "Contents."

Nor can Plaintiff establish that BCH intercepted the contents of any communication. Plaintiff cites to several cases for the proposition that "descriptive URLs" may constitute actionable contents, but nearly all of the cases cited by Plaintiff (Doc. No. 67 at 27 n. 23) involve complaints alleging the exact interactions plaintiffs had with the websites, information they provided to the websites, and/or that they received targeted advertising suggesting their information was disclosed. *See*, *e.g.*, *Baystate*, 2026 WL 776861, at *3 (plaintiff provided the website information about breast cancer).[10] In contrast, Plaintiff's allegations about her, or her children's, PHI do not allege any specific information she provided to BCH, nor that she took any actions that would result in transmission of anything more than search terms, views of a public page, or button clicks, which are not contents under the ECPA. *See* Doc. No. 64 at 19–20.

## III. Plaintiff Fails to State A Massachusetts Privacy Act Claim.

Plaintiff claims that her MRPA claim should survive because other courts in Massachusetts have allowed MRPA claims to proceed past the motion to dismiss stage. Doc. No. 67 at 28–29. Plaintiff boldly claims that judges in Massachusetts "have concluded that the surreptitious use of tracking technologies supports an MRPA claim." *Id.* at 28. This is an exaggeration. A cursory

[10] *See also Doe v. Post Acute Med., LLC*, 2025 WL 511069, at *7 (M.D. Pa. Feb. 14, 2024) ("[Plaintiff] now receives targeted health-related advertisements reflecting private medical treatment information, including those related to skin conditions, arthritis, geriatric medical conditions, as well as for clinical trials, and physicians."); *Castillo*, 2024 WL 4785136, at *4 (Plaintiffs allege that they searched for information about "patient status, prescriptions, [and] underlying health conditions" and later received targeted advertisements for specific prescriptions); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 886–87 (C.D. Cal. 2024) (plaintiffs claimed that tracking technologies were given information about certain products connected to yeast infections and diabetes); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 784 (N.D. Cal. 2022) (Plaintiffs "describ[ed] types of data transmitted by the Pixel"); *Smith v. Loyola Univ. Med. Ctr.*, 2024 WL 3338941, at *2 (N.D. Ill. July 9, 2024) ("Plaintiff Smith alleges that she scheduled a surgical appointment . . . Shortly thereafter, she began receiving targeted medical advertising related to said surgery"); *M.G. v. Therapymatch*, 2024 WL 4219992, at *4 (N.D. Cal. Sept. 16, 2024) (M.G. provided the website information about "mental health conditions for which he was seeking therapy, his provider preferences, and his appointment details").

review of the cases Plaintiff cites confirms that all of the cases either (1) were not presented with (and therefore did not rule on) the arguments BCH asserts here, (2) featured much more detailed allegations, (3) related to completely different technology, or (4) all of the above.

For instance, in *Tenet*, the plaintiff alleged she received targeted advertisements relating to her specific health conditions, including weight loss and diabetes. *Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 147–48 (D. Mass. 2024). Plaintiff makes no such allegations here.[11] Plaintiff also mischaracterizes the Supreme Judicial Court's holding in *Vita v. New England Baptist Hosp.*, 243 N.E.3d 1185 (Mass. 2024). The SJC did not find that the facts alleged by Vita were sufficient to state an MPRA claim, it merely noted such claims existed as possible alternatives to protect *private medical information*. *Id.* at 1206.[12] Nor did the Superior Court's ruling on Plaintiff's state-wiretap claim in her original complaint determine that Plaintiff validly stated an MRPA claim, as she did not raise an MRPA claim at that time. *See* Doc. No. 27 at 20, Ex. 2.

At bottom, Plaintiff's MRPA claim remains fatally deficient because she has not alleged

---

[11] Likewise, this reasoning applies to Plaintiff's other attempts to apply *Tenet* to her breach of fiduciary duty, negligence, breach of contract, and unjust enrichment claims, as Plaintiff's allegations are conclusory and unsupported. *See* Doc. No. 67 at 30, 32 n.32, 33. *See also Baystate*, 2026 WL 776861, at *3 (plaintiff alleged allegations "related to breast cancer screenings and schedule[ing] a mammogram"); *Doe v. Emerson Hosp.*, 2023 WL 8869624, at *1, 6 (Mass. Super. Nov. 22, 2023) (only issues presented to the court in opposing MRPA claim were consent and the technology was not a "device" and plaintiff specifically asserted that he searched "treatment[s] for a concussion"); *Doe v. Boston Medical Center Corp.*, 2023 WL 7105628, at *2 (Mass. Super. Sep. 14, 2023) (similar, and plaintiff alleged actions about a hernia); *Alves v. BJ's Wholesale Club, Inc*, 2023 WL 4456956, at *1 (Mass. Super. June 21, 2023) (similar, claims related to session replay technology, and court expressed skepticism that allegations were sufficient to state an MPRA claim but allowed claim to proceed because others survived dismissal); *Doe v. Partners Healthcare Sys.*, No. 1984CV01651-BLS1 (Mass. Super. Nov. 20, 2020) (Doc. No. 27-3) (only issue discussed in argument was whether the transmission was "contemporaneous"). Plaintiff's cases from other jurisdictions similarly require specific allegations about what type of condition the defendant allegedly disclosed. *See Brahm v. Hosp. Sisters Health Sys.*, 2024 WL 3226135, at *7 (W.D. Wis. June 28, 2024) (Plaintiff alleged "that defendants transferred information related to her infertility issues); *R.C.*, 733 F. Supp. 3d at 886–87 (plaintiffs alleged specific products related to yeast infections/diabetes were disclosed).

[12] Plaintiff makes this same mischaracterization of *Vita* with regards to her breach of fiduciary duty, negligence, breach of contract, and unjust enrichment claims. Doc. No. 67 at 30, 31 n.30, 32 n.32, 33. The SJC did not find that the facts alleged by Vita were sufficient to state any of those claims.

facts demonstrating that BCH's apparent "invasion" was "both unreasonable and substantial or serious." *Polay v. McMahon,* 468 Mass 379, 382 (2014). Here, Plaintiff fails to allege that anything she did on BCH's public website or patient portal could support such an invasion because her allegations lack any detail at all about the nature of her, or her children's, own information that was allegedly intercepted or disclosed by BCH. Plaintiff attempts to end-run this fatal pleading deficiency by claiming examples were provided in the SAC. Doc. No. 67 at 29. But her "examples" merely assert generic actions she allegedly took on BCH's website and demonstrate how the technology works. Plaintiff's reliance on *Rodriguez v. Google LLC* is unpersuasive. 2026 WL 252570 (N.D. Cal. Jan. 30, 2026). In *Rodriguez*, the intrusion was highly offensive because the plaintiffs took *active steps* to keep their data anonymized from Google. *Id.* at *1. Here, Plaintiff does not allege that she took actions to keep her interactions on BCH's public website private nor that her use of the portal could be linked to her children. Rather, Plaintiff's allegations are more analogous to other federal decisions finding routine medical searches and inquiries on a public website do not support invasion of privacy claims. *See Branson v. Concord Hosp. Inc.*, No. 217-2024-CV-00295, Order on Def.'s Mot. Dismiss, at 15 (N.H. Super. Apr. 28, 2025) (attached as **Ex. A**) (compiling federal cases and noting the "overwhelming weight of authority . . . supports Defendants' position that there is no intrusion upon privacy when a patient voluntarily provides PHI to their healthcare provider"); Doc. No. 64 at 21 (collecting cases).

**IV. Plaintiff Fails to State a Claim for Breach of Fiduciary Duty or Confidence.**

In arguing for her fiduciary duty claim, Plaintiff attempts to stretch the physician-patient relationship beyond recognition, suggesting it encompasses *any* visitor to BCH's public website. Extending a physician's fiduciary duty to all website visitors would create an untenable, limitless obligation on healthcare providers. To overcome the deficiency in her claim, she argues that her

"children are patients" and that "she accessed the portal." Doc. No. 67 at 30. But, once again, the cases Plaintiff relies on required plaintiffs to plead more than vague, conclusory allegations like Plaintiff has here. *See* Doc. No. 64 at 22–23.

Plaintiff's reliance on *Alberts v. Devine*, to establish a duty of confidentiality is likewise misplaced. 479 N.E.2d 113 (Mass. 1985). The *Alberts* court did not create a standalone cause action for breach of confidence. In fact, the SJC did not use the term "breach of confidence" a single time. Instead, the court merely recognized that "a duty of confidentiality arises from the physician-patient relationship" and is actionable through a breach of fiduciary duty claim. *Id.* at 120. Moreover, Plaintiff mischaracterizes each case she refers to in an attempt to show that *Alberts* "indicat[es] a new claim." Doc. No. 67 at 32. For instance, her cited cases do not explicitly recognize a claim for breach of confidence and indeed dismiss both plaintiffs' breach of confidence claims. *See Li v. Off. of Transcription Servs.*, 2016 WL 6609796, at *1 (Mass. App. Ct. 2016); *Weekes v. Cohen Cleary P.C.*, 723 F. Supp. 3d 97, 103 (D. Mass. 2024); *see also Weld v. CVS Pharm.*, 1999 Mass. Super. LEXIS 261, at *17 (Super. Ct. June 1, 1999) (examining pharmacist's duty of confidentiality in connection with 247 Code Mass. Regs. 9.01(19)). The simple truth is that no "breach of confidence" claim exists in Massachusetts.

**V. Plaintiff's Negligence Claim Should Be Dismissed.**

Plaintiff's Opposition does not meaningfully address BCH's arguments regarding her negligence claim and instead simply claims that because her children are patients, a duty of care must exist. Doc. No. 67 at 32. Here, Plaintiff's allegations are devoid of any facts to support that her PHI, or her children's PHI, has been transmitted to an unauthorized third party, either through BCH's public website or patient portal, and are therefore insufficient to establish a duty or breach of a duty. As to breach, Plaintiff yet again misconstrues BCH's argument, claiming BCH

"assumes" that her claim depends on a HIPAA violation. But BCH explicitly acknowledges her other theories. Doc. No. 64 at 24 n.7. Regardless, Plaintiff makes no effort to explain how those other theories support a breach, nor how the alleged disclosure of unprotected browsing information from BCH's public website could breach any duty. The Court should dismiss Plaintiff's negligence claim.

**VI. Plaintiff Fails to State a Claim for Breach of Contract.**

Plaintiff fails to allege the existence of a valid contract supported by mutual assent and consideration and fails to respond to BCH's arguments on her breach of contract claim. Doc. No. 67 at 32–33. Plaintiff's entire claim relates to the privacy policy on BCH's website, yet Plaintiff does not even allege that she ever read the policy or relied on it. *See* SAC ¶¶ 33–38. Plaintiff's inability to identify any contract that she herself *assented* to is dispositive; simply having a "mere possibility" that she entered into a contract is plainly insufficient. Regardless, even if Plaintiff did assent to the privacy policy that is not enough to create an enforceable contract; there must also be consideration and meeting of the minds. *See* Doc. No. 64 at 25–27. To the extent Plaintiff argues "Massachusetts authorities that have considered similar allegations" have allowed them (*id.* at 24) she again exaggerates the holdings. *Tenet*'s ruling was not based on the same conduct as here, because that plaintiff alleged specific interactions with the defendant's website. 731 F. Supp. 3d at 147–48. And the SJC did not rule on a breach of contract claim in *Vita*. Lastly, the *Emerson* court recognized that many jurisdictions have refused to allow breach of contract claims to proceed but allowed the claim to proceed with skepticism. 2023 WL 8869624, at *4.

**VII. Plaintiff Fails to Allege any Damages to Support Her Common Law Claims.**

BCH also moved to dismiss Plaintiff's claims for breach of fiduciary duty, negligence, and breach of contract (Counts III, IV, and VI) for failure to adequately allege damages. Plaintiff's

Opposition fails to establish any discrete concrete harm she has suffered under any of those claims, and instead vaguely refers to generic allegations about the "active market for the communications BCH intercepted and disclosed." Doc. No. 67 at 33. But she offers no well-pled facts in support of how those generic factors apply to her or her children, nor to support her laundry list of vague alleged harms. That deficiency merits dismissal. *See e.g.*, *Doe v. Post Acute Med., LLC*, 2025 WL 511069, at *8–9 (M.D. Pa. Feb. 14, 2024) (dismissing breach of contract, unjust enrichment, and breach of fiduciary duty claims for failure to allege actual damages); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 897–98 (C.D. Cal. 2024) (dismissing negligence claim with similar laundry list of harms as vague and conclusory). Further, Plaintiff's citations are distinguishable. *See In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 655 (N.D. Cal. 2024) (allegations that "Meta unjustly profited" sufficed for claims *against Meta* but Meta is not a defendant here); *Gay v. Garnet Health*, 2024 WL 4203263, at *5–6 (S.D.N.Y. Sept. 16, 2024) (dismissing negligence, invasion of privacy; and breach of implied contract claims). Simply put, Plaintiff failed to allege any actual harm she or her children has suffered as a result of the placement of tracking technologies on BCH's website warranting dismissal of her breach of fiduciary duty, negligence, and contract claims.

**VIII. Plaintiff Fails to State a Claim for Unjust Enrichment.**

It is well-established that a "party with an adequate remedy at law cannot claim unjust enrichment." *Tomasella v. Nestlé USA, Inc.*, 962 F.3d 60, 82 (1st Cir. 2020). This inquiry turns on "the availability of a remedy at law, not the viability of that remedy." *Id.* at 82–83. Here, Plaintiff has an adequate remedy available at law through her statutory and common law claims. *Fernandes v. Havkin*, 731 F. Supp. 2d 103, 114 (D. Mass. 2010) ("disposition of those claims is irrelevant"). What's more, Plaintiff's lack of factual allegations precludes any plausible basis to determine that Plaintiff conferred a benefit on BCH, or whether any purported benefit had value. *B.K. v.*

*Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1070 (C.D. Cal. 2024) ("Without specific allegations about the underlying information that was allegedly disclosed, it is unclear to the Court how, if at all, Defendant was unjustly enriched.").

## CONCLUSION

For the foregoing reasons and those included in The Children's Hospital Corporation's Motion to Dismiss and Memorandum in Support, BCH respectfully asks the Court to dismiss the Second Amended Complaint against it with prejudice.

Dated: May 7, 2026

Respectfully submitted,

THE CHILDREN'S HOSPITAL CORPORATION

By: */s/ Lisa Oliver White*
Lisa Oliver White, BBO# 666841
**SHOOK, HARDY & BACON L.L.P.**
One Federal Street, Suite 2620
Boston, MA 02110
Tel: (617) 531-1411
lowhite@shb.com

Tammy B. Webb (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900
twebb@shb.com

Jad Sheikali (*pro hac vice*)
Tara D. Kennedy (*pro hac vice*)
Avery Epstein (*pro hac vice*)
**SHOOK, HARDY & BACON L.L.P.**
111 South Wacker Drive
Chicago, IL 60606
Tel: (312) 704-7700
jsheikali@shb.com
tkennedy@shb.com
aepstein@shb.com
***Attorneys for Defendant***

**LOCAL RULE 7.1 CERTIFICATION**

The undersigned certifies that pursuant to Local Rule 7.1, counsel for Defendant conferred with counsel for Plaintiff by email concerning the filing of this reply, and Plaintiff's counsel have assented to the filing, as set forth in Doc. No. 72.

*/s/ Lisa Oliver White*
Lisa Oliver White

**CERTIFICATE OF SERVICE**

I, Lisa Oliver White, do hereby certify that on May 7, 2026, a true and correct copy of the foregoing document was served upon all counsel of record via the CM/ECF system of the United States District Court for the District of Massachusetts.

*/s/ Lisa Oliver White*
Lisa Oliver White